1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER CASTILLO and JASON CASTILLO,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A and DOES 1 through 100 inclusive<br><br>Defendants. | **JOINT DISCOVERY STATEMENT PURSUANT TO CIVIL STANDING ORDER**<br><br>Case No. 5:15-cv-01743-BLF |

**Plaintiffs' Statement:**

In this action, Plaintiffs challenge Nationstar's egregious mishandling of their home loan and attempted foreclosure. Plaintiffs entered into a mortgage modification as a result of litigation ("*Castillo I*") with previous servicer Bank of America ("BofA"). Servicing was transferred to Nationstar. Although the modification contract explicitly stated that any arrears were capitalized into the new principal balance, Nationstar started charged Plaintiffs for arrears of approximately $20,000 in escrow and other charges. Plaintiffs spent most of a year disputing the charges with phone calls and six detailed written disputes, including several "qualified written requests" pursuant to the Real Estate Settlement Procedures Act ("RESPA"). Nationstar provided non-responsive answers to the disputes, and continued to overbill, reject payments, dun the Plaintiffs, repeatedly photograph their home, make negative credit reports, and ultimately started foreclosure proceedings. Most of these actions have continued during this lawsuit. Plaintiffs' complaint alleges Nationstar and the investor Wells Fargo breached the modification contract, violated the Rosenthal Act, RESPA, Consumer Credit Reporting Act, Fair Credit Reporting Act, and the Unfair Competition Law, and negligently handled the loan. The complaint seeks actual and punitive damages for willful conduct.

Plaintiffs served the first set of Requests for Production ("RFP") and interrogatories ("ROG") on July 7-8, 2015. (Exh. 1) Nationstar responded on September 8, 2015. (Exhs. 2, 3, 4). Plaintiffs "met and conferred" by letter on September 16, 2015 (Exh. 5), Defendants responded on September 25, 2015 (Exh. 6), and Plaintiffs replied on September 29, 2015 (Exh. 7). The parties discussed the discovery issues by email, and by phone on September 22, September 29, and October 19, 2015. Defendants agreed to provide amended responses and additional documents on November 10, 2015, but failed to do so. Plaintiffs prepared an earlier version of this joint letter and forwarded it to Defendants on November 16, 2015. Nationstar served amended responses and additional documents on Wednesday November 25, 2015 (Exhs. 8, 9). Plaintiffs sent a further "meet and confer" email on December 11, 2015 (Exh. 10) and received a response on December 21, 2015 (Exh. 11). Many issues remain unresolved.

Defendants agreed to produce documents responsive to **RFP 24**, as narrowed, which solicits policies for complying with certain Homeowners' Bill of Rights ("HBOR") provisions (Exh. 6, p. 8), but now refuses. (Exh. 11). The HBOR, Cal. Civil Code § 2924.11(f) requires new servicers to honor loan modifications entered into by prior servicers. Section 2924.17(b) prohibits servicers from commencing foreclosure unless and until they have "reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Nationstar claims the documents are irrelevant because the HBOR claim was dismissed when Nationstar discontinued its foreclosure. However, Nationstar's start of foreclosure in violation of HBOR is part of Plaintiffs' damages pursuant to the negligence and other claims. The HBOR "sets forth policy considerations that should affect the assessment whether a duty of care was owed to [plaintiffs]." *Alvarez v. BAC Home Loans Servicing, L.P.,* 228 Cal. App. 4th 941, 951(2014) (quoting *Jolley v. Chase Home Finance,* 213 Cal.App.4th 872, 905). Accordingly, Defendant's procedures for complying with the HBOR are directly relevant to Plaintiffs' negligence claim. Plaintiffs have narrowed the request to only solicit documents related to California Civil Code §§ 2924.11(f) and 2924.17(b).

**Interrogatory 2** is directed at learning how much Nationstar believes the Plaintiffs owed each month since 2013. In response, Nationstar set out the amounts it sought *in the past*, then explained those amounts were incorrect. But Plaintiffs are trying to get to bottom of the real dispute: how much does Nationstar contend Plaintiffs owed each month *now* – since it has recognized its original position was wrong? (*See* Exh. 5, p. 13, Exh. 6, pp. 8-9, Exh. 7, p. 7.). Nationstar has promised revised responses for months, but none have been forthcoming.

**RFP No. 1** seeks all documents relating to the Castillos' loan. In its amended

responses, Nationstar has agreed to comply with this request. However, many documents referred to in servicing notes are still plainly missing from the production. Most notably, Nationstar has not produced all of the "Sharepoint requests" and attachments thereto which are referred to in service records which have been produced. Sharepoint requests are a means by which Nationstar employees communicate and instruct each other. Nationstar employee Binu Poudel testified that Sharepoint requests could be located by searching the loan number (Exh. 12, 15:8-11), but without them, she could not understand transactions on the loan or even interpret her own notes in Nationstar's records. (Exh. 12, 89:5-7). Sharepoint requests are crucial to understanding why Nationstar has failed to implement the modification or correct its errors. Nationstar claims that additional documents don't exist, but has not explained what happened to them, and why they were not preserved -- especially in light of Plaintiff's letter at the onset of this litigation instructing Nationstar not to destroy documents related to the Castillos' loan. (Exh. 13). Plaintiffs request an order requiring Nationstar to explain what happened to such documents.

**RFP No. 3** seeks a key to the many codes and abbreviations used in Nationstar's servicing records. Nationstar employees have testified as to the existence of such keys. (Exh. 14) It is difficult to believe that Nationstar would not have such a key for the use of its own employees. Nationstar claims that no documents exist (Exh. 6, p. 3), but has not explained why its employee testified otherwise.

**RFP No. 4** seeks documents that reflect Plaintiffs' payments, including records relating to the Castillos' many payments that were rejected by Nationstar and returned to them. Nationstar produced an accounting, but its records have no entries showing several payments which plaintiffs know were returned. As Plaintiffs contend they have made all required monthly payments, many of which were returned, and Nationstar contends Plaintiffs are in default, such records are important.

**RFP No. 14** seeks the documents "*conveyed from Bank of America, N.A. to Nationstar as part of the service transfer, in the format and order in which they were conveyed.*" Nationstar produced a single PDF document. Plaintiffs explained that electronic data was likely conferred as well, and that the PDF was likely many documents. (Exh. 5, p. 8-9, Exh. 7, p. 5). Nationstar represented it only received hard copy or pdf documents from BofA (Exh. 6, p. 6). Accordingly, Plaintiffs were required to depose a Nationstar employee (Kelsey Grimm) to establish that an entire department converts data files received from BofA to multiple templates in Nationstar's servicing system. The next day, Nationstar produced a single data file. Plaintiffs seek production of *all* documents about the Castillos' loan Nationstar received from BofA, including limited metadata – document name, upload date, and any folder organization – for the imaged documents Nationstar received. Whether the modification documents, analysis, and BofA notes about the modification were clearly labeled or buried in a 700 page document is relevant to Plaintiffs' claim that Nationstar's investigation of Plaintiffs' disputes was inadequate. Nationstar has also not produced BofA payment histories or servicing notes. (NSR 2104, Exh. 15).

**Interrogatories Propounded to Nationstar:**

California Civil Code, § 2923.55(f) requires mortgage servicers to contact borrowers to explore options for avoiding foreclosure before commencing foreclosure. **Interrogatory No. 9** asks Nationstar to describe its attempts to contact Plaintiffs under this statute before recording the Notice of Default. Any such communication would have provided an opportunity for Nationstar to correct its errors, and so is relevant to many of Plaintiffs' claims.

**Interrogatory No. 16** asks Nationstar to "Describe YOUR credit reporting on the MORTGAGE ACCOUNT every month, including each field reported using Consider Data

2

Industry Association or Metro 2 field formats reported to any credit reporting agency, for every month from September, 2013 to the present." **Interrogatory 20** similarly seeks information on credit reporting updates. Nationstar's initial response only provided cursory information concerning its credit reporting. Nationstar's amended responses provide more information, but do not convey reporting for all fields after November, 2014, and do not provide any information as to whether and when it reported the account as disputed. Nationstar claims that no credit reporting occurred after November 2014 (three months before this litigation was commenced) (Exh. 11, p. 2), but its own discovery responses state it updated the account in 2015. (Exh.3, ROG 20). In addition, Plaintiff's credit report shows that Nationstar derogatory information remains as late as July 2015, and that Nationstar updated such derogatory information to Equifax in June 2015 (Exh. 16).

**Request for Sanctions:** Fed. R. Civ. Pro. 26(g) provides that by signing discovery responses, the attorney certifies that the responses are complete and correct after reasonable inquiry. Nationstar's responses have been false, based on insufficient inquiry, and even internally inconsistent. *Compare* Response to ROG 3 (Exh. 3), RFA 14 (Exh. 4), and NSR2808, 5324, 4810, 3702-03 (Exh. 15). Because Nationstar has regularly misrepresented what documents exist and are available, from emails to data files to contracts, Plaintiffs believe an appropriate sanction is to allow a separate deposition under FRCP30(b)(6) of Nationstar's document custodian about existence of documents sought in contested RFPs. Plaintiffs also seek the opportunity to reopen the deposition, by telephone, of Kelsey Grimm. Plaintiffs request an opportunity to brief these issues further if necessary.

**Nationstar's Statement**:

There are numerous aspects of Plaintiffs' introductory statement that are inaccurate or erroneous.

First, Plaintiffs contend that "Defendants agreed to provide amended responses and additional documents on November 10, 2015, but failed to do so." This is not accurate. As a preliminary matter, Defendants produced documents labeled NSR 0001 through NSR 2050 and audio files labeled NSR 2051 through NSR 2060 on September 9, 2015. Next, Defendants provided two sets of additional documents *before* November 10, 2015: documents labeled NSR 2091 through NSR 2318 on October 28 and documents labeled NSR 2319 through NSR 2342 on October 30. Defendants produced the remaining documents in its possession, custody or control (after a diligent search and reasonable inquiry) labeled as NSR 2343 through NSR 5849 on November 24, 2015. As the sheer volume of document production illustrates, Plaintiffs have run amok with discovery in this relatively simple contract dispute case.

Second, Plaintiffs contend they are entitled to production of documents regarding the HBOR as requested in **RFP 24**. Their pursuit of discovery regarding the HBOR is another example of the demonstrably unnecessary discovery that Plaintiffs have pursued. Here, the parties entered into a stipulation for voluntary dismissal of the only HBOR cause of action asserted in the case. (See Doc # 15 entered on May 15, 2015.) Plaintiffs attempt to revive their HBOR claim through the damages element of their "negligence and other claims" but this approach is utterly without merit. As a matter of law, Nationstar owes no duty to Plaintiffs. (*Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 68 (2013).) The limited duty of care recognized by one Court of Appeal in the case of *Alvarez v. BAC Home Loans Servicing, L.P.* does not apply here because Nationstar has never agreed to *review* Plaintiffs for a loan modification.

3

Third, Plaintiffs contend they are entitled to an accounting via **Interrogatory 2**. However, they are not entitled to such information. (See *Lester v. J.P. Morgan Chase Bank*, 926 F.Supp.2d 1081, 1098 (N.D. Cal. 2013).) Indeed, the answer to Interrogatory 2 as posited in Plaintiffs' letter is simple: Plaintiffs owe what the loan modification says they owe; that is, $2,334.74 in principal and interest and 1/12 of the total taxes and insurance costs that are incurred each year in relation to the property. (See October 2013 Modification at p. 4 [attached as Exhibit A hereto].) Nationstar has never contested the validity or enforceability of the October 2013 Modification. Moreover, Nationstar has already offered to amend its response and will do so.

Plaintiffs next raise a series of issues with discovery requests they characterize as "disputed."

**RFP No. 1**: Nationstar has produced all documents relating to the Castillos' loan. By way of example, Plaintiffs argue that Nationstar has not produced all "Sharepoint requests," speculating that there should be corresponding "Sharepoint requests" for each entry in the servicing notes. In support of this theory, they rely on testimony by employee, Binu Poudel. However, Ms. Poudel *was not* produced as a Rule 30(b)(6) witness. Indeed, Nationstar interposed numerous objections on the grounds that Ms. Poudel was being asked to speculate as to various topics well beyond her first-hand knowledge. Plaintiffs failed to establish any foundation to establish what, if any, first-hand knowledge Ms. Poudel has regarding Nationstar's business records or what "Sharepoint requests" exist. Nationstar cannot explain what happened to documents that never existed during the pendency of this action. Throughout discovery, Nationstar has offered to provide a Rule 30(b)(6) witness. Of course, a witness produced under Rule 30(b)(6) would be required to become knowledgeable on all appropriate topics designated in the notice of deposition.

**RFP No. 3**: No key exists for the codes and abbreviations used in Nationstar's servicing records. Although this is not an uncommon request by plaintiffs in foreclosure avoidance lawsuits such as this one, Nationstar cannot provide what it does not have in its possession, custody or control. Understanding that Plaintiffs would want an explanation as to the meaning of codes and abbreviations, Nationstar offered to produce a Rule 30(b)(6) witness. Plaintiffs have not yet requested one. Again, Plaintiffs rely on testimony of a non-Rule 30(b)(6) witness at deposition to suggest that such a key exists. However, like their examination of Ms. Poudel, Plaintiffs failed to establish foundation for first-hand knowledge regarding such a key and Nationstar interposed numerous objections because Plaintiffs' questioning called for speculation.

**RFP No. 4**: As plaintiffs acknowledge, Nationstar has produced an accounting. That the parties disagree as to what payments were received and what payments were not is not a discovery dispute. Put another way, Nationstar has already provided all information on its receipt of payments from the Castillos and there is no additional information to compel. Moreover, in addition to the account produced as NSR 0197 through NSR 0234, Nationstar also produced its Detail Transaction History that contains every transaction on the account as NSR 0151 through NSR 0196 and the monthly mortgage statements issued each month as NSR 0517 through NSR 0594. There is simply nothing more Nationstar can produce. Nationstar's amended responses to this request for production confirms no further documents exist. (See Exhibit A.)

**RFP No. 14**: Nationstar has produced all documents it received concerning Plaintiffs' loan from Bank of America. These documents were produced labeled NSR 0595 through NSR 1857. Nationstar received these documents at one time when the loan transferred in 2013. There is no basis to ascertain an order to discrete documents within this set as they were conveyed as one set

4

of documents. Separate and apart from the logistically impossibility of appeasing Plaintiffs' request for information on the format and order of the original transfer of documents, there is no discernable reason for going through the exercise now. Plaintiffs contend that they could surmise the adequacy of Nationstar's investigation of their disputes if they could know the format and order in which Nationstar received the loan file from Bank of America. However, this rationale is simple not cogent. Indeed, Nationstar received the loan file from Bank of America in September 2013 but Plaintiffs did not make their first dispute until May 2014. If certain documents were received after May 2014, then Plaintiffs' position would make more sense; however, that is not the case.

Plaintiffs also take issue with Nationstar's responses to certain Interrogatories. But again, their position lacks merit.

**Interrogatory No. 9**: This Interrogatory exceeds the scope of discovery because the notice of default has been rescinded. Under the Homeowner Bill of Rights (of which Civil Code section 2923.55(f) is a constitute part), there is no monetary remedy for violating of the statute unless and until a trustee's deed has been recorded. Prior to that, the only remedy is injunctive relief. however, the rescission of a notice of default extinguishes the foreclosure and moots the need for injunctive relief. Further, section 2923.55(f) is not an error correction protocol. Moreover, as the call recordings produced by Nationstar show, when Nationstar spoke to Plaintiffs before recording of the notice of default, each plaintiff said to talk to their lawyers. Pursuant to this, Nationstar directed all communications to Plaintiffs' counsel.

**Interrogatory No. 16**: Nationstar's amended response to Interrogatory 16 sets forth verbatim its Metro II reporting on the account. There is no further information Nationstar can provide. (See Exhibit B.)

**Interrogatory No. 20**: Nationstar's response describes the corrections or changes it made to its credit reporting. Further, Nationstar has produced the ACDVs by which it communicated to the credit reporting agencies any corrections and/or changes. These documents were labeled NSR 2061 through NSR 2090 and NSR 2487 through NSR 2493. Either through its response to Interrogatory 20 or through the documentary evidence provided in production, Plaintiffs have access to the facts regarding any corrections and/or changes Nationstar requested on the reporting for this loan. There is simply nothing further Nationstar can add on this point.

**Request for Sanctions**: Nationstar believes it has fully complied with the rules governing discovery. Nationstar's responses have *not* been false, are *not* based on insufficient inquiry, and are *not* internally inconsistent. Plaintiffs' interrogatories have been imprecise, if not patently ambiguous or unclear. Moreover, Nationstar has produced 5849 pages of documents consisting of, inter alia, its system of record for the loan account, policies and procedures, call recordings, and written communications. Nationstar has also produced out-of-state fact witnesses for deposition. That plaintiffs cannot convert this straightforward dispute into a more complex case is not because Nationstar failed its obligations in discovery. Rather, it is because this case is about a straightforward dispute.[1]

---

[1] Indeed, prior to their filing of this lawsuit Nationstar acknowledged errors in its implementation of the Bank of America modification by letter dated February 20, 2015. (See Exhibit B.) As such, there is little that is actually in dispute in this action. Moreover, Nationstar has never disputed the validity or enforceability of the modification either.