MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
THOMAS N. ABBOTT (State Bar No. 245568)
tna@severson.com
MEGAN E. GRUBER (State Bar No. 246122)
meg@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
NATIONSTAR MORTGAGE LLC and WELLS FARGO BANK, N.A. AS TRUSTEE FOR BANK OF AMERICA MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER CASTILLO and JASON CASTILLO,<br><br>             Plaintiffs,<br><br>   vs.<br><br>NATIONSTAR MORTGAGE LLC, WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR BANK OF AMERICA MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A and DOES 1 through 100 inclusive,<br><br>             Defendants. | Case No. 5:15-cv-01743-BLF<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Date:       August 4, 2016<br>Time:      9:00 a.m.<br>Crtrm.:    3, 5th Floor<br>Judge:    Hon. Beth Labson-Freeman<br><br>Action Filed:    March 19, 2015<br>Trial Date:      February 13, 2017 |

**I.  INTRODUCTION**

The motion to amend filed by Jennifer and Jason Castillo ("Plaintiffs") relies upon entirely the wrong rule and the wrong standard.  The standard is not Rule 15(a)'s "extreme liberality" standard, as plaintiffs pretend, but instead Rule 16(b)'s "good cause" standard, which the Ninth Circuit has stated is concerned primarily with a movant's diligence. *Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Because the facts underlying the proposed amendments were known to plaintiffs years ago, because these amendments are not brought in good faith, because they are futile and because plaintiffs' motion would create a never-ending cycle of amendments based on routine discovery responses by an opposing party during litigation, this motion should be denied.

Plaintiffs do not even once mention in their motion that when this Court entered its scheduling order in July 2015, they stated that they did "not anticipate further amendment of the pleadings."  Dkt. # 23, pp. 4-5.  The only exception was that "if Nationstar records a second Notice of Default, Plaintiffs will add a claim under California's Homeowner Bill of Rights." Given plaintiffs' statement, the Court's case management order stated that the deadline for amendment was "n/a." Once a scheduling order is in place, a party seeking to change it under Federal Rule of Civil Procedure 16(b) can only do so for "good cause."

Nationstar has not recorded a second notice of default, nor are plaintiffs seeking to add a claim under HBOR. Instead, the Castillos' motion is something completely different. It is a motion seeking to squelch Nationstar's attempts to defend itself and add claims based solely upon Nationstar's asserted defenses to their claims. There is no good cause to grant the motion.

If the Castillos' motion is granted, it would create a loop by which plaintiffs can take Nationstar's defenses – defenses which are based upon information learned by Nationstar during litigation and based upon facts which were *already known* to the plaintiffs – and claim that these defenses form potential new claims. Further, the plaintiffs take discussions with Nationstar over the amounts due and seek to use the disagreements over current amounts due – which are already at issue in this matter – to amend the complaint and try to strong-arm Nationstar and prevent it from responding honestly and thoroughly to discovery and to correspondence.

Regardless of plaintiffs' interpretation of the facts of this case or any admissions made by Nationstar up to this point, Nationstar has a right to defend itself vigorously. Plaintiffs' motion appears *offended* that Nationstar has sought to assert certain defenses. They take these defenses and disagreements about damages and seek to turn around and amend the complaint to gain advantage.

## II.  BACKGROUND

As discussed in the plaintiffs' motion for leave to amend, the original complaint in this matter was filed in state court on March 19, 2015. Dkt. # 1, Ex. A. Defendants removed the action to this Court on April 17, 2015. *Id*. In their first amended complaint, filed May 29, 2015, the Castillos asserted causes of action for breach of contract; violation of the Rosenthal Act; violation of the Real Estate Settlement Procedures Acts (12 U.S.C. § 2605) ("RESPA"); negligence; violation of the CCRA; violation of the FCRA; and violation of Business and Professions Code § 17200. Dkt. # 18. Nationstar and Wells Fargo Bank, N.A, as trustee for Bank of America Mortgage Securities, Inc. Mortgage Pass-Through Certificates, Series 2006-A ("Wells Fargo") answered the complaint shortly thereafter. Dkt. # 19.

Discovery began in early 2016, and has continued throughout the year. See, e.g., Dkt. #s 32, 35, 39. As discussed in plaintiffs' motion, on February 19, 2016, plaintiffs sent counsel for Nationstar a "Notice of Error and Request for Information," which discussed amounts due under the plaintiffs' loan modification, and discussed plaintiffs' view of the amounts due as well as the disagreements between the parties regarding those amounts. Motion to Amend Complaint ("Motion"), Declaration of Elizabeth Letcher ("Letcher Decl."), Ex. 4. These amounts due had been previously discussed in discovery responses served by Nationstar in September 2015. Letcher Decl., Ex. 3. They had also been discussed in a prior "Notice of Error and Request for Information" sent by Ms. Letcher to Natiosntar in 2015.

On March 3, 2016, Nationstar responded to plaintiffs' third set of requests for admission. Letcher Decl. Ex. 7. The request which seems to form a large part of the instant motion is RFA No. 23, which states: "Admit that YOU are required to honor the 2013 LOAN MODIFICATION." Nationstar responded that it was unable to admit or deny, and that the requirement to honor the modification would depend upon whether the modification was actually enforceable. "Recent discovery of facts by Defendants indicate that plaintiffs' representations in Section 1 of the 2013 loan modification were not true in all material respects when the 2013 LOAN MODIFICATION was signed." *Ibid*.

This information relates to plaintiffs' income – which has been known to plaintiffs all

1  along – and whether the plaintiffs provided Nationstar with accurate financial information in
2  applying for their loan modification in 2013. Deposition testimony from this matter has indicated
3  that, in fact, their income may have been much higher than stated in their application. Declaration
4  of Megan E. Gruber, Exhibits A, B. In the loan modification, plaintiffs stated under penalty of
5  perjury that all documents and information provided to the lender are true and correct. Letcher
6  Decl., Ex. 6, NSR 0278, Section 1(C). Whether or not the Castillos falsified their application has
7  been known to the Castillo since the beginning.
8    Nationstar has never stated to plaintiffs that it intends to repudiate the modification.
9  Instead, plaintiffs seek to use the response to RFA 23 as a tactic to amend the complaint to add a
10  new cause of action and many more facts – even though that response asserted by Nationstar was
11  only based upon facts that it learned *from the plaintiffs*.

## III.  STANDARDS GOVERNING THIS MOTION

13    Once a scheduling order is in place, as it is here, a party seeking to modify that scheduling
14  order must show "good cause."  Fed. R. Civ. P. 16(b)(4).  See *Zivkovic v. S. Cal. Edison Co.*, 302
15  F.3d 1080, 1087 (9th Cir. 2002).  Good cause has been interpreted by the Ninth Circuit as an
16  inquiry into the diligence of the party seeking to modify the scheduling order.  *Johnson v.*
17  *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  And this is not a standard to be
18  taken lightly – in fact, good cause is actually a close correlate to extraordinary circumstance –
19  something the plaintiffs certainly cannot show here. *Id., citing Parkway Gallery Furniture, Inc. v.*
20  *Kittinger/Pennsylvania House Group, Inc*., 116 F.R.D. 363, 365-66 (M.D.N.C.1987) ("Good
21  cause" shown when there are "extenuating circumstances.").
22    And as the Ninth Circuit has made clear, the liberality in allowing amendments under Rule
23  15(a) is simply not applicable once a scheduling order is in place:

> A court's evaluation of good cause is not coextensive with an
> inquiry into the propriety of the amendment under ... Rule 15…
> Unlike Rule 15(a)'s liberal amendment policy, which focuses on
> the bad faith of the party seeking to interpose an amendment and
> the prejudice to the opposing party, Rule 16(b)'s 'good cause'
> standard primarily considers the diligence of the party seeking the
> amendment. The district court may modify the pretrial schedule if it
> cannot reasonably be met despite the diligence of the party seeking

the extension.

*Id.* at 609 (citation and quotation marks omitted).

"The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action." *In re Western States Wholesale Natural Gas Antitrust Litigation,* 715 F.3d 716, 2013 WL 1449919, *14 (9th Cir. 2013). Indeed, where a party knows the information before the scheduling deadline has passed and does not act on that information, that party is "presumptively not diligent" for purposes of Rule 16(b). *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (E.D. Pa. 2010) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2nd Cir. 2000)).

## IV.  EACH OF PLAINTIFFS' REASONS THEY SEEK LEAVE TO AMEND FAIL

The Castillos assert that they wants to amend their complaint to 1) allege "additional unlawful conduct that has occurred since the complaint was filed; 2) allege facts responding to "Nationstar's newly alleged defense"; 3) to add a new cause of action alleging breach of a service transfer agreement; and 4) to "respond[] to Nationstar's possible repudiation of the entire modification by reasserting certain damages Plaintiffs had previously withdrawn."

**A.     Plaintiffs' Request to Amend Based on Nationstar's "New Defense" Should Not Be Granted**

Plaintiffs seek to amend based both on "Nationstar's newly alleged defense" and to "respond" to the potential "repudiation" of the loan modification. The key element of this request relies upon a response to a request for admission in which the plaintiffs seek an unqualified admission that the loan modification agreement from 2013 is valid. Nationstar's response does not deny that the modification is valid, nor does Nationstar state that the modification would not be honored. Instead, Nationstar's response states that it cannot admit or deny the request, because facts uncovered in discovery – specifically, the fact that the Castillos made far more money in 2011 and 2012 than they told Nationstar – might mean that the modification was offered based upon false information.

Plaintiffs seek to amend on this basis, arguing strenuously that Nationstar has suddenly

1  changed the course of the case and that now they must add more facts related to damages and
2  provide alternate theories to prove their case. What this truly is, however, is an attempt to create a
3  cycle in which Nationstar uncovers facts in discovery – unfavorable facts known to plaintiffs the
4  entire time – and then based on that discovery, seek to move the goal post and change their
5  theories.

6  Simply put, as discussed above, plaintiffs cannot show they were diligent in waiting to
7  bring these allegations. *See Johnson, supra*, 975 F.2d at 609. The *Johnson* case found that the
8  diligence standard is as far as the analysis needs to go – if the plaintiffs haven't been diligent, the
9  analysis simply stops there.  "Although the existence or degree of prejudice to the party opposing
10 the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon
11 the moving party's reasons for seeking modification." *Id* at 609. Plaintiffs knew their own income.
12 Their displeasure or surprise  at Nationstar having uncovered the fact that their income may have
13 been $100,000 less than claimed on their application and cannot show diligence. Indeed,
14 "carelessness is not compatible with a finding of diligence and offers no reason for a grant of
15 relief." *Ibid*.

16 With regard to good faith, the Castillos must show good faith under Rule 16(b) before the
17 Court analyzes the motion under Rule 15(a). *United States v. Boyce*, 148 F. Supp. 2d 1069, 1078
18 (S.D. Cal. 2001), *amended* (Apr. 27, 2001), *aff'd*, 36 F. App'x 612 (9th Cir. 2002); citing *Johnson,*
19 *supra,* 975 F.2d 604, 607–08 (9th Cir.1992). "'If [the court] considered only Rule 15(a) without
20 regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read
21 Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" *Jackson*
22 *v. Laureate, Inc.,* 186 F.R.D. 605, 607 (E.D.Cal.1999) (*quoting Sosa v. Airprint Systems, Inc.,* 133
23 F.3d 1417, 1419 (11th Cir.1998)).

24 As noted above, the Court's scheduling order does not even contemplate an amendment of
25 the pleadings, since the plaintiffs indicated that they only anticipated amendment if another notice
26 of default was recorded. Instead, they have decided to amend based on a host of reasons that boil
27 down to a simple point: the Castillos are unhappy that unfavorable facts have been uncovered in
28 routine discovery.

1       Here, they implausibly allege that Nationstar has had a "bewildering change in position," because it did not respond to an RFA which demanded an unqualified admission about the validity of the loan modification. In deposition, Mr. Castillo indicated that his income was far greater than the amount provided to Nationstar in the borrowers' modification application. Gruber Decl., Exs. A, B. In fact, while the modification application indicated that the Castillos made approximately $100,000 per year, in deposition, Mr. Castillo testified that he made approximately $200,000 per year. Gruber Decl., Ex. B, pp. 192-193, 196, 212. Furthermore, he indicated that he may have had up to $100,000 in a savings account as of October 2013. Gruber Decl., Ex. B, pp. 219-220. On that basis, Nationstar's discovery responses indicated that it might defend itself in part based upon untruthful information provided in the borrowers' application.

      Plaintiffs claim that this is an "about face." Nothing could be further from the truth. Nationstar's responses are based on facts known to plaintiffs the *entire time*, which were only uncovered by the deposition of the plaintiff himself. There is no possibility that plaintiffs can show diligence in bringing this motion. That they did not anticipate certain defenses, and that they are unhappy with Nationstar's discovery of unfavorable information, is *not* a showing of diligence – it is a showing of carelessness in drafting their prior pleadings. *Johnson, supra,* 975 F.2d at 609. Plaintiffs could easily have been honest from the get-go, and included the facts sought in amendment in the original pleading. Nothing would have prevented them from doing so.

      Further, plaintiffs now seek to claim that the 2013 modification was a "correction" of the earlier 2010 modification offered by Bank of America, and that the 2013 modification should have been offered without regard to financial situation – an allegation which would moot any issues related to the discrepencies in the borrowers' stated income. Plaintiffs cannot show "diligence" with regard to their request to amend this claim, either. *Ibid*. Again, this amendment is based on *Nationstar's* discovery of facts – not theirs. It is a transparent attempt to prevent Nationstar from being able to defend itself by using the new information it obtained regarding plaintiffs' understated income.

      The Castillos always knew how much money they made, how much money they told Bank of America they made, and how much money they told Nationstar they made. They knew the

1  circumstances regarding the 2010 modification offer as well as the circumstances regarding the
2  2013 modification offer. They have known these facts the entire time, and the fact that Nationstar
3  uncovered new facts does not mean that now, after the scheduling order, they can change their
4  theories in order to explain away Nationstar's defenses.  *Johnson, supra*, 975 F.2d at 609.

5        Finally, it must be noted that not only have plaintiffs failed to show diligence, but they lack
6  good faith in bringing this motion. They are using Nationstar's discovery of their own untruths to
7  seek to amend their complaint. If plaintiffs' motion is granted, it would create a never ending loop,
8  whereby if Nationstar obtains information in discovery and then crafts any "unexpected" defense
9  at all, the plaintiffs will seek to explain their actions away through amendment to the complaint. It
10 is a tactic meant to prevent Nationstar from vigorously defending itself, and a tactic used to try to
11 box Nationstar into a set of facts crafted deliberately, over the course of discovery, to advantage
12 the Castillos. This is improper, and should not be condoned.

**B.     Plaintiffs' Request to Amend to Add a Claim Based on the Service Transfer Agreement Should Not Be Granted**

15       Plaintiffs allege in their motion that "the new cause of action…alleging Nationstar's breach
16 of the purchase and sale contract that requires it to honor modifications entered into by Bank of
17 America, similarly responds to Nationstar's about-face by providing an alternate contract theory."
18 (Motion p. 8:17-19.) This request goes to the same arguments made above. And as with the
19 amendments discussed above, Nationstar's purported "about-face" is based upon a routine
20 discovery response in which Nationstar stated that if the plaintiffs lied on their loan modification
21 application, Nationstar might be forced to evaluate whether or not the modification was actually
22 valid and contained the correct amounts owed monthly.

23       In any event, the time to bring a claim related to the "service transfer agreement" has long
24 since passed. Such that any such "agreement" exists, plaintiffs have known about the servicing
25 transfer throughout the entirety of the litigation. And moreover, not only have they failed to
26 produce any "service transfer agreement" which would support their claims, but in discovery, the
27 defendants actually informed the plaintiffs that no such agreement could be found, and that it did
28 not exist. (Gruber Decl., Ex. C.) Without the existence of a "servicing transfer agreement" to

1 prove that there was a breach of a servicing transfer agreement, amendment is futile.

2 Finally, amendment would also be futile because the transfer from Bank of America to
3 Nationstar was on September 1, 2013. The modification was signed on October 20, 2013 – after
4 servicing had transferred to Nationstar. Letcher Decl., Ex. 6.

5 If plaintiffs are alleging that Nationstar was obligated to honor the 2010 Bank of America
6 modification, that too has been known to plaintiffs throughout the entirety of litigation, and they
7 cannot show diligence. The issue is only raised now because the Castillos are seeking to avoid the
8 entrance of any evidence which would show that the 2013 modification contained untrue
9 statements relating plaintiffs' income. The plaintiffs want to amend to allege that the only income
10 that mattered was the income provided to Bank of America in 2010. The fact that this is raised
11 only *after* Nationstar asserted defenses to plaintiffs' claims shows that the plaintiffs have lacked
12 diligence and the request is a result of carelessness. As such, they cannot show good cause, and the
13 motion should be denied.

14 **C.    Plainitffs' Request to Amend Based on the RESPA Letter Fails**

15 The Castillos also seek to amend their complaint based on what they believe to be
16 continuing wrongful conduct by Nationstar. *See* Letcher Decl., Ex. 1, paras 190-230.

17 Again, the Castillos' request does not show diligence or good cause.

18 Throughout litigation, plaintiffs have been alleging inaccurate accounting by Nationstar,
19 and the Castillos have been fully aware that Nationstar has not yet "corrected" the modification to
20 fit their own beliefs regarding the amounts due. And yet, the scheduling order does not
21 contemplate adding a claim based on so-called "continuing conduct." The likely reason for that is
22 because this information goes to potential damages and does not add substantive new allegations
23 to the complaint. Indeed, the plaintiffs expressly told this Court that they did not anticipate
24 amendment unless a new notice of default was recorded or if they could add HBOR claims.

25 The Castillos' allegations show that throughout litigation, Nationstar has been in contact
26 with the plaintiffs regarding their claims (see, e.g., Letcher Decl., Ex. 1, para. 223). This is not
27 new. All along, Nationstar has been working to determine the merit of plaintiffs' claims and it has
28 charged plaintiffs the fees and charges that it believes to be accurate. Now, these actions are being

1 used against Nationstar.

2 It should also be noted that this request actually contains several paragraphs based on credit reporting that occurred *before* the scheduling order was even in place. *See* Letcher Decl., Ex. 1, paras 227-230; see also Dkt. # 26. The scheduling order did not indicate that plaintiffs might amend based on these allegations, and the fact that they are adding them now, nearly a year later, shows prima facie lack of diligence – and likely a lack of good faith, as well, considering that these requested amendment have come only after Nationstar stated that Mr. Castillo's inconsistent testimony could be used as a defense to plaintiffs' claims.

Nearly a year ago, the Castillos represented to the Court that they would only amend for certain very specific reasons. They have not shown any diligence in bringing these new allegations against Nationstar and Wells Fargo. They have not shown good faith. Under the law, where the plaintiffs lack diligence and good faith, regardless of prejudice, the motion must be denied.

## V. CONCLUSION

Plaintiffs are playing fast and loose with the Court's scheduling order. The *Johnson* court made clear that amendment after the scheduling order is in place is not something that can be granted with "extreme liberality." Instead, amendment is to be granted only after careful analysis to ensure that the amendment is not for an improper purpose (as here – where it is, in large part, being requested to prevent Nationstar from asserting legal defenses) and based upon information that could not have been learned sooner.

> "A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp.*, 108 F.R.D. at 141. …Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15…. *Riofrio Anda v. Ralston Purina Co.*, 959 F.2d 1149, 1155 (1st Cir.1992) (permitting amendment under Rule 15(a) in violation of district court scheduling order "would have nullified the purpose of rule 16(b)(1)")."
> *Johnson*, 975 F.2d 604, most citations omitted.

For all the reasons discussed above, the defendants respectfully request that plaintiffs' motion for leave to amend be denied.

DATED: May 11, 2016

SEVERSON & WERSON
A Professional Corporation

By:     */s/ Megan E. Gruber*
               Megan E. Gruber

Attorneys for Defendants NATIONSTAR MORTGAGE LLC and WELLS FARGO BANK, N.A. AS TRUSTEE FOR BANK OF AMERICA MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A