MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
THOMAS N. ABBOTT (State Bar No. 245568)
tna@severson.com
MEGAN E. GRUBER (State Bar No. 246122)
meg@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
NATIONSTAR MORTGAGE LLC and WELLS
FARGO BANK, N.A. AS TRUSTEE FOR
BANK OF AMERICA MORTGAGE
SECURITIES, INC. MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER CASTILLO and JASON CASTILLO,<br><br>            Plaintiffs,<br><br>    vs.<br><br>NATIONSTAR MORTGAGE LLC, WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR BANK OF AMERICA MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A and DOES 1 through 100 inclusive,<br><br>            Defendants. | Case No. 5:15-cv-01743-BLF<br><br>**DECLARATION OF MEGAN E. GRUBER IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>*Filed concurrently with Opposition to Plaintiffs' Motion for Leave to Amend*<br><br>Date:      August 4, 2016<br>Time:      9:00 a.m.<br>Crtrm.:    Courtroom 3, 5th Floor<br>Judge:     Hon. Beth Labson-Freeman<br><br>Action Filed:    March 19, 2015<br>Trial Date:      February 13, 2017 |

## DECLARATION OF MEGAN E. GRUBER

I, Megan E. Gruber, declare and state as follows:

1.     I am an attorney licensed to practice before this Court.

DECLARATION OF MEGAN E. GRUBER IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR
LEAVE TO AMEND THE COMPLAINT

2.     I am an attorney employed by Severson & Werson, P.C., attorneys of record for defendants NATIONSTAR MORTGAGE LLC and WELLS FARGO BANK, N.A. AS TRUSTEE FOR BANK OF AMERICA MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A in this action.

3.     I make this Declaration in support of the Defendants' Opposition To Plaintiffs' Motion For Leave To Amend The Complaint.  I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so, I could and would testify competently to same.

4.     Plaintiffs' first document production contained a document entitled "Modification Analysis," which provided the monetary figures used in calculating the borrowers' modification. The borrowers' gross monthly income was listed as $9,629.67, for a yearly income of approximately $115,500. A true and correct copy of this document, numbered as Castillo 000220, is attached hereto as **Exhibit A**.

5.     In plaintiff Jason Castillo's deposition, he testified that his yearly income was approximately $200,000. He also testified that he had a significant amount of money in savings. A true and correct copy of the pertinent portions of the deposition is attached hereto as **Exhibit B**.

6.     On or about November 23, 2015, Nationstar served Amended Responses to Plaintiff Jennifer Castillo's First Set of Requests for Production of Documents. Request No. 13 requested "the Servicing Transfer Agreement between Bank of America, N.A. and Nationstar under which Nationstar began servicing PLAINTIFFS' LOAN." In its amended response, Nationstar stated that it had conducted "a diligent and reasonable inquiry" in an attempt to "locate the item requested and it is unable to comply because the item requested does not exist." A true and correct copy of the amended response is attached hereto as **Exhibit C**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This Declaration was executed on May 11, 2016, in San Francisco, California.

_____
Megan E. Gruber

DECLARATION OF MEGAN E. GRUBER IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

# EXHIBIT A

# MODIFICATION ANALYSIS

**Tuesday, August 13, 2013    1:27:05 PM**

| Loan Information | | Foreclosure Status |
|---|---|---|

**Prepared by** Gabriela Ramos Suarez
**CHL Loan No:**
**Investor:** Wells Fargo
**Delegation:** Limited
**Investor Number:**
**Investor Loan #:**
**Borrower:** JASON S CASTILLO
**Co-Borrower:** JENNIFER CASTILLO
**Loan Type:** 1C CV-JMB-ARM
**Current Due Date:** 5/1/2009
**Maturity Date:** 1/1/2036

**Property Address**
920 VIA VIVALDI
MORGAN HILL, CA 96037
**Mailing Address**
920 VIA VIVALDI
MORGAN HILL      CA  95037 - 5862
**# Properties owned?:**
**Does Bor has a 2nd?:**
**Bor 2nd Pmt?:**
**Combine 1st & 2nd PTI**

**Foreclosure Sale Date:** N/A

Postpone Sale Date, Place on hold $50 on day of sale

**Property History**
**Most Recent BPO:** $693,000.00
**Loss/Gain:** $0.00
**Current LTV** 85.85%

| Delinquency | Origination | Financial Information | Securitization Information |
|---|---|---|---|

**Orig FICO Score:** 0
**Dot History:** 44FFFFFF
**Payments Made:** 39
**Current Term:** 321
**Remaning Term:** 268

**Origination Appr:** $850,000.00
**Original UPB:** $594,965.00
**Origination Date:** 12/7/2005
**Branch Code:** 21615
**Purpose Code:** 111

**Monthly Gross Income:** $9,628.67
**Monthly Net Income:** $8,764.17
**Total Debt:** $4,564.56
**Total Expenditures:** $8,529.56
**Unencumbered:** $234.61

**Principal Bal:** $504,965.00
**Interest Rate:** 5.500%
**P&I Payment:** $2,726.92
**Pmt W/Escrow** $3,411.72
**Current DTI:** 47.41%
**Current PTI:** 35.43%

| Loan Fees | | Modification |
|---|---|---|

**Late Fee**
**Property Inspection** $135.00
**Foreclosure Fees** $0.00
**Foreclosure Exp** $0.00
**Recording Fees** $63.00
**Title Fees** $863.00
**Court Costs** $0.00
**Oth. Fees/ NSF/POD** $1,758.86
**Bankruptcy Fees** $0.00
**Bankruptcy Int** $0.00
**Total Fees** $22,280.63

**Partial Fees:** $128,112.11
**CLRD PARTIAL:** $0.00
**Deferred Principal:** $0.00
**Bor. Contribution:** $0.00
**Total UFFs/Partial** $128,112.11

**P & I Payment** $0.00
**Delinq. Escrow** $19,460.77
**Late Fees** $0.00
**Inspection Fees** $135.00
**Atty Fees** $926.00
**Delinq. Int.** $105,831.48
**Fees/NSF/POD** $1,758.86
**Total** $128,112.11

**New Escrow Pmt:** $712.06
**Delinq. Escrow:** $19,460.77
**Principal Forgiveness Amt:** $81,887.89
**Tier:** No Tier
**Forgiveness amount at 12 months $0.00**
**Forgiveness amount at 24 months $0.00**

**Capitalizing** $0.00
**# of payments capped** 53
**Months Capping** May-09 To Sep-13
**New Effective Date** 10/1/2013
**New UPB** $513,077.11
**Capped over Orig. UPB** ($81,887.89)
**Total Cap Fees** $0.00
**Total Cap Escrow** $0.00
**Total Fees & Escrow** $0.00
**Delinquent Interest** $0.00

**Cutoff date End of the Month**
**Use Un-Recorded Documents**
**Next Arm Change** 1/1/2014
**2.250% Ceiling 10.500%**

| Modification | Modified Combined PTI | Detail for Modification |
|---|---|---|

**Modified Rate** 5.500%
**Modified P&I** $3,329.01
**Payment W/ Escrow** $4,041.07
**Modified LTV** 74.04%

**Rate:** 2.000%
**P&I Payment:** $2,375.32
**Total P&I Payment:** $3,087.38
**Modified LTV** 74.04%

**Rate:**
**Interest Payment:**
**Total P&I Payment:**
**Modified LTV**

**Debt to Income:** 53.94%
**Payment to Income:** 41.97%
**Combine 1st & 2nd PTI:**
**Post Unencumbered:** ($394.74) Int.

**Debt to Income:** 44.04%
**Payment to Income:** 32.06%
**Combine 1st & 2nd PTI:**
**Post Unencumbered:** $558.95 Int.

**Debt to Income:**
**Payment to Income:**
**Combine 1st & 2nd PTI:**
**Post Unencumbered:** In

| # | Rate | Payment | Modified | Recording Index |
|---|---|---|---|---|
| 1 | 5.5 | 2726.92 | 2726.92 | 2726.92 Y |
| 2 | 5.5 | 2726.92 | 2726.92 | 5453.84 Y |
| 3 | 5.5 | 2726.92 | 2726.92 | 8180.76 Y |
| 4 | 5.5 | 2726.92 | 2726.92 | 10907.68 Y |
| 5 | 5.5 | 2726.92 | 2726.92 | 13634.6 Y |
| 6 | 5.5 | 2726.92 | 2726.92 | 16361.52 Y |
| 7 | 5.5 | 2726.92 | 2726.92 | 19088.44 Y |
| 8 | 5.5 | 2726.92 | 2726.92 | 21815.36 Y |
| 9 | 5.5 | 2726.92 | 2726.92 | 24542.28 Y |
| 10 | 5.5 | 2726.92 | 2726.92 | 27269.2 Y |
| 11 | 5.5 | 2726.92 | 2726.92 | 29996.12 Y |
| 12 | 5.5 | 2726.92 | 2726.92 | 32723.04 Y |
| 13 | 5.5 | 2726.92 | 2726.92 | 35449.96 Y |
| 14 | 5.5 | 2726.92 | 2726.92 | 38176.88 Y |
| 15 | 5.5 | 2726.92 | 2726.92 | 40903.8 Y |
| 16 | 5.5 | 2726.92 | 2726.92 | 43630.72 Y |
| 17 | 5.5 | 2726.92 | 2726.92 | 46357.64 Y |
| 18 | 5.5 | 2726.92 | 2726.92 | 49084.56 Y |
| 19 | 5.5 | 2726.92 | 2726.92 | 51811.48 Y |
| 20 | 5.5 | 2726.92 | 2726.92 | 54538.4 Y |
| 21 | 5.5 | 2726.92 | 2726.92 | 57265.32 Y |
| 22 | 3.125 | 2860.22 | 1549.39 | 58814.71 N |
| 23 | 3.125 | 2860.22 | 1545.97 | 60360.68 N |
| 24 | 3.125 | 2860.22 | 1542.55 | 61903.23 N |
| 25 | 3.125 | 2860.22 | 1539.12 | 63442.35 N |
| 26 | 3.125 | 2860.22 | 1535.68 | 64978.03 N |
| 27 | 3.125 | 2860.22 | 1532.23 | 66510.26 N |
| 28 | 3.125 | 2860.22 | 1528.77 | 68039.03 N |
| 29 | 3.125 | 2860.22 | 1525.31 | 69564.34 N |

**Management Approval Level**

| | | Date |
|---|---|---|
| Team Leader: | | Date |
| Manager: | | Date |
| AVP: | | Date |
| VP: g | | Date |
| 1st VP: | | Date |

| | Step P&I | Total Payment | Effective Date | PTI | I/O |
|---|---|---|---|---|---|
| Step 1 | 2.000% | $2,375.32 | $3,087.38 | 10/1/2013 | 32.06% | No |
| Step 2 | 3.000% | $2,596.81 | $3,308.87 | 10/1/2016 | 34.36% | No |
| Step 3 | 3.125% | $2,624.01 | $3,336.07 | 10/1/2017 | 34.65% | No |

*JASON S CASTILLO*      Account No:  872290897

Castillo 000220

# EXHIBIT B

Case 5:15-cv-01743-BLF   Document 48-1   Filed 05/11/16   Page 6 of 17

JASON CASTILLO                                      February 04, 2016
CASTILLO vs. NATIONSTAR, ET AL                                      1

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

3

4   JENNIFER CASTILLO and JASON          ) No. 5:15-cv-01743-BLF
    CASTILLO,                            )
5                                        )
                 Plaintiffs,             )
6                                        )
         vs.                             )
7                                        )
    NATIONSTAR MORTGAGE LLC, WELLS       )
8   FARGO BANK, NATIONAL ASSOCIATION,    )
    AS TRUSTEE FOR BANK OF AMERICA       )
9   MORTGAGE SECURITIES, INC.,           )
    MORTGAGE PASS-THROUGH                )
10  CERTIFICATE, SERIES 2006-A, and      )
    DOES 1 through 100, inclusive,       )
11                                       )
                 Defendants.             )
12  _____)

13

14

15               VIDEOTAPED DEPOSITION OF

16               JASON SHANE CASTILLO

17             SAN FRANCISCO, CALIFORNIA

18                 FEBRUARY 4, 2016

19

20

21

22

23

24

25  REPORTED BY:  MICHAEL CUNDY, CSR 12271



JASON CASTILLO
CASTILLO vs. NATIONSTAR, ET AL

February 04, 2016
189–192

Page 189

1    MS. LETCHER: Objection. That misstates the
2  testimony.
3  BY MR. ABBOTT:
4    Q   Does that misstate your testimony?
5    A   I'm not actually sure.
6    Q   Okay. Let's go to the first page here, what's
7  page one on the bottom footer.
8    A   We're on the same document?
9    Q   Yes. And I'm looking for the effective date. I'm
10  not sure if it's on page one or page three, actually. Oh,
11  okay. Let's go to page three. My apologies. And let's go
12  back to paragraph three.
13    A   Okay.
14    Q   So the modification, again, would you mind just
15  reading this paragraph that starts right after the title
16  "The Modification," and not too fast, please?
17    A   If all of my representations in section one
18  continue to be true in all material respects and all
19  preconditions to the modification set forth in section two
20  above have met -- have been met, the loan documents will
21  automatically become modified on October 1, 2013, the
22  modification effective date. The maturity date will be
23  January 1, 2036.
24    Q   Okay. And then if we go to page four, back to
25  that table, that seems to be consistent with that row for

Page 190

1  years one through three, because it says, your payment
2  begins on October 1, 2013.
3        Do you see that?
4    A   Yes, I do.
5    Q   Okay. All right. So do you recall what
6  representations and preconditions were involved with this
7  modification?
8        And I'm referring just to what you just read from
9  the document where it says, if all of my representations in
10  section one continue to be true, and then there's a
11  reference to all preconditions to the modification set
12  forth in section two above have been met.
13        Do you -- what representations and preconditions
14  were there?
15    MS. LETCHER: Objection. That calls for a legal
16  conclusion because this was concluded as part of a
17  settlement negotiation.
18    THE WITNESS: Am I still supposed to answer?
19  BY MR. ABBOTT:
20    Q   Yes.
21    A   I'm not exactly sure what you are asking, to be
22  honest.
23    Q   Well, do you know what's referred to here as my
24  representations?
25    A   No. Actually, no.

Page 191

1    Q   Okay. Let's go to page two, and that's where the
2  section one appears, and there's a section here says, My
3  representations and covenants.
4    A   Uh-huh.
5    Q   Do you see that?
6    A   I see that.
7    Q   Okay. Do you want to take just a minute to read
8  that to yourself, please?
9    A   Okay.
10    Q   Okay. So going to this -- do you understand these
11  three paragraphs -- you know, 1-A, 1-B, 1-C, and I guess,
12  the preface paragraph -- that that consists of the
13  representations and covenants?
14    MS. LETCHER: I'm going to object to the extent
15  that it calls for a legal conclusion.
16    THE WITNESS: Yes.
17  BY MR. ABBOTT:
18    Q   Okay. Did you read this document before you
19  signed it?
20    A   Yes.
21    Q   Okay. And when I say that or ask that, I mean,
22  did you look at every page?
23    A   Yes.
24    Q   Okay. So in October 2013, were you experiencing a
25  financial hardship?

Page 192

1    A   October 2013, what do you mean by "a financial
2  hardship"?
3    Q   I would ask you what you mean by that, because
4  these are your representations and covenants.
5    A   I'm sure we were going through some type of
6  financial hardship, yeah.
7    Q   Okay. I want to just understand that better.
8        So from your prior testimony, you stated that you
9  were working as a contractor at AT&T and that your income
10  was approximately $170,000, and that's -- and you were --
11  in 2013, you were getting income from VC Restaurant Group
12  LLC. I think your testimony earlier was that you started
13  getting income sometime in 2012; correct?
14    A   Yes.
15    Q   And so you couldn't state -- you had no
16  recollection about what your income from VC Restaurant
17  Group was in connection with your 50 percent ownership
18  interest; right?
19    A   Correct.
20    Q   But you did testify that you were -- you were
21  receiving between 800 and $1,100, twice a month --
22    A   Yes.
23    Q   -- sort of for the time that you put in at the
24  restaurant?
25    A   That's correct.



JASON CASTILLO
CASTILLO vs. NATIONSTAR, ET AL

February 04, 2016
193–196

Page 193

1    Q    And I'm just going to use the low range of 800.
2    800 times 24 is $19,000.
3        Do you agree?
4    A    Yes.
5    Q    You know, just sort of spitballing here.
6        And I think -- had you started working at -- let's
7    see here -- yes.
8        In 2013, your income from Iconic Sports, LLC, was
9    $10,000. That's what your testimony was. Do you recall
10   that?
11   A    Yes.
12   Q    Okay. So that brings your income to approximately
13   200,000.
14       And then, if we look at Exhibit 3, which was the
15   loan modification from 2010, in August 2013, which is
16   paragraph D on page -- the third page of Exhibit 3, your
17   monthly payment was going to be 2,000 -- excuse me --
18   $3,532.65.
19       Do you see that?
20   A    Yes.
21   Q    I think that was to begin on the first day of
22   September 2013 and continue to the first day of August
23   2014.
24       Do you see that?
25   A    Which document are you looking at, again?

Page 194

1    Q    That's Exhibit 3. It's the third page of
2    Exhibit 3.
3    A    What paragraph?
4    Q    D.
5    A    Yeah. I see that.
6    Q    Okay. So your -- your expense there for the house
7    was $3,532.65, according to Exhibit -- Exhibit 3.
8        Do you agree?
9    A    Yes.
10   Q    What other expenses did you have in October 2013?
11   A    I can't recall. I mean, I'm sure, home expenses,
12   and -- but I don't know for sure without looking at my
13   monthly expense --
14   Q    Okay. And you hadn't gotten the car loans yet
15   until 2014. Because your testimony earlier was that you --
16   you took out almost a hundred thousand dollars in car
17   loans, one in March, one in September, so the aggregate
18   was, like, 90,000 or something.
19   A    Yes.
20   Q    Is that correct?
21   A    Uh-huh.
22   Q    So besides the $3,532.65 for the mortgage pursuant
23   to the 2010 loan modification agreement, do you recall any
24   other expenses? I don't mean -- you know, it doesn't have
25   to be to the penny, but do you -- do you recall what was

Page 195

1    going on there that you would make a representation that
2    you had -- you were experiencing a financial hardship?
3        MS. LETCHER: I'm going to object that that calls
4    for a legal conclusion as to this representation about
5    financial hardship, because this was taking place in the
6    context of a settlement. So I'm going to object to this
7    entire line of questioning on that grounds.
8        MR. ABBOTT: And you can -- I can stipulate to
9    that being a standing objection.
10       MS. LETCHER: Okay.
11       MR. ABBOTT: I understand.
12   BY MR. ABBOTT:
13   Q    You can answer the question, Mr. Castillo?
14   A    No, I don't recall.
15   Q    In 2013, you were married at that time?
16   A    Yes, I was.
17   Q    Okay. And did you have dependents, you know, in
18   the terms -- in terms of the tax lexicon, did you have
19   dependents --
20   A    Yes.
21   Q    -- children?
22   A    I'm sure I did, yes.
23   Q    Do you have children?
24   A    I do.
25   Q    Okay. How many children do you have?

Page 196

1    A    Three.
2    Q    And how old are they?
3    A    Six, eight, and 12.
4    Q    Okay. So you had three children back in 2013
5    then; right?
6    A    Yes.
7    Q    Okay. Do you have any other dependents?
8    A    Just my wife.
9    Q    Okay. Well, you guys file jointly; right?
10   A    Yes.
11   Q    So that's a yes, okay. So I'm just getting a
12   sense of this because I know that when income is 200,000 --
13   I have heard this from people -- that there's a big chunk
14   that comes out for taxes, so I'm trying to figure out the
15   difference.
16       But you don't recall any other expenses. Do you
17   pay for -- did you have medical expenses in 2013?
18   A    I don't know without looking at my -- I'm sure
19   there's expenses that we had -- medical. I do have --
20   there's a big chunk that comes out for -- monthly for
21   medical. We pay $1,300 a month just for our family --
22   living expenses, so -- I mean, you know, yeah, we do have
23   quite a bit of expenses.
24   Q    I thought I wouldn't say this, but you were
25   talking too fast, because I was trying to -- you said,

JASON CASTILLO
CASTILLO vs. NATIONSTAR, ET AL

February 04, 2016
209—212

Page 209

1    for this boat, and you are not sure about that, but you
2    think that might be possible.
3        A    Yes.
4        Q    And then you -- when I say, "you," I mean, your
5    family, by the way -- had at least 400 but possibly 800 as
6    a tuition expense at that time.
7        A    Yes.
8        Q    Okay.  And since -- currently, has that tuition
9    sort of gone up to 1,200?  Would I be -- would that be
10   accurate for me to extrapolate your youngest has now gotten
11   old enough where they are going, too, and you have to --
12   you have an extra $400 monthly expense?
13       A    No.
14       Q    Okay.  Why not?
15       A    They are not in preschool anymore.
16       Q    Oh, that was just for preschool?
17       A    Preschool and K -- and kindergarten, but they are
18   not in that anymore.
19       Q    Okay.  So once they got to grade one, they were
20   put in public school?
21       A    Yes.
22       Q    Okay.  So how -- how many years is preschool?
23       A    Kindergarten -- once they got in kindergarten,
24   they were put in public school.
25       Q    So how many years is preschool?

Page 210

1        A    Just depends on -- on how -- how many you want to
2    put there.  I think they went -- they went for at least one
3    year, I think a couple -- one of them went for two.  I'm
4    not --
5        Q    Okay.  And this --
6        A    They each went there when they were -- at that --
7    at that age.
8        Q    So, what, when they were three and four years old
9    or something?
10       A    Yeah.
11       Q    Okay.
12       A    My oldest one went there as well.
13       Q    Okay.
14       A    All three of them did.
15       Q    And when you say, $400 a month, is that just
16   during the term, or is that throughout the 12 months?
17       A    Just during the term.
18       Q    And then what's the term for preschool?
19       A    It's just like regular school year.
20       Q    I kind of forgot what that was.  What is that,
21   like -- how many months a year?
22       A    August, September to May.
23       Q    So -- so you are not having to pay any tuition in
24   June and July?
25       A    No.

Page 211

1        Q    Okay.  So 10 months, is that what you are saying?
2        A    Yes.
3        Q    Okay.  So it's 800 times 10 or 400 times 10 --
4        A    Yes.
5        Q    -- for that year; is that right?  Okay.
6            Anything else?  As we're talking about this, is
7    anything else coming to mind for you, a major medical issue
8    occurred where someone had to go to the hospital
9    unexpectedly and it wasn't covered by your health
10   insurance, a family member's health and you had to cover
11   it, anything just that happened in 2013?
12       A    Not that I can recall at this time.
13       Q    So I guess if I can use the term "reverse
14   engineer," sort of -- it's a technical term.  Maybe you
15   understand it.  But when we don't remember, sort of, the
16   conclusion but we have enough of the premise, we can figure
17   out what the conclusion's supposed to be or we have the
18   conclusion but we don't have one of the premises.
19           If I added up these expenses and compared it to
20   your $200,000 a year salary in 2013, is it your testimony
21   that that is, for you, a financial hardship?  Just not in
22   terms of legal term or some -- you know, just for, you
23   know, the Castillos, is that what --
24       A    Yes.
25       Q    -- what you view as a financial hardship?

Page 212

1        A    It has been a hardship since this process began.
2        Q    I don't know what that means, and I'm focusing at
3    this point on 2013, and October specifically, when you
4    signed this.
5        A    We have been in hardship since 2000- -- when did
6    they cancel the modification on us?  Actually, no, before
7    that.  We haven't been out of a hardship.
8        Q    Okay.  I appreciate that.  I do.  My question
9    maybe isn't nuanced.  I don't know.  I didn't think it was,
10   but my question is a little more specific.
11           If we take the numbers, the numbers you have
12   testified to, which is that your aggregate income's at
13   least $200,000 because you don't know how much your
14   ownership -- your income from the ownership of the
15   VC Restaurant Group was, so that's a variable we don't
16   know, but at least 200,000 in the year 2013, and your
17   monthly expenses are something about a little bit less than
18   6,000, maybe 7,000 or so, based on the numbers you have
19   given me --
20       A    Yes.
21       Q    -- in your testimony.
22       A    Yes.
23       Q    By my question to you is:  Does that constitute
24   financial hardship to you?
25       A    Yes, it does.



JASON CASTILLO
CASTILLO vs. NATIONSTAR, ET AL

February 04, 2016
213–216

Page 213

1    Q    Okay. I just want to know what that means to you.
2    A    Yeah. There's lots of living expenses that aren't
3  included in that number.
4    Q    Like what?
5    A    Groceries, everything -- everything it costs to
6  live.
7    Q    Well, I don't know -- I mean, I know what you
8  mean --
9    A    Bills.
10   Q    -- sort of. I definitely know what you mean in a
11  colloquial sense, absolutely, but in the sense of this, I'm
12  not sure what to include and what not to, so --
13   A    No. That's fine.
14   Q    And that's why I'm asking. I don't mean to be
15  kind of delving into details unnecessarily or giving you a
16  hard time, but --
17   A    I understand.
18   Q    -- everyone has a slightly different view on it.
19  I mean, I've talked to people who have -- you know, they
20  spend hundreds of dollars on cable because it's important
21  to them and other people who don't have a TV, and it's --
22  you know what I mean, and I don't know what it is for you.
23       So for groceries, how much is that a month? Do
24  you know?
25   A    I don't do the grocery shopping, but -- I don't

Page 214

1  know.
2    Q    Okay. So you don't know. So is it fair to say
3  you are not -- you don't feel you recall right now, as you
4  sit here, other expenses that you can articulate them in a
5  dollar amount?
6    A    Not -- not at this moment, no.
7    Q    Okay. You are not prepared to even give me a best
8  estimate?
9    A    I couldn't tell you without looking at my monthly
10  expenses and reviewing some type of document or at least
11  our statement for banks and our bank statements and such
12  and how much we spend on a monthly average, at least back
13  in 2013.
14   Q    Okay. And that, when you say you can't say, are
15  you saying that you can't give me the exact number or that
16  you can't give me your best estimate?
17   A    I couldn't even give you an estimate right now.
18   Q    Okay. All right. Let's go back to Exhibit 6.
19       In October 2013, were you in default under the
20  loan documents, which I think is defined somewhere, because
21  that's a capitalized term? Were you in default on your
22  home loan for 920 Via Vivaldi in October 2013?
23   A    October 2013, honestly, I don't know what the
24  status of our loan was then. To be honest, I don't -- I
25  don't know. In October 2013, I don't know if I know

Page 215

1  exactly what status our loan was in.
2    Q    Okay. And did you have any liquid -- well, do you
3  know what liquid assets are?
4    A    Yes.
5    Q    What does that mean to you?
6    A    Assets that are readily available.
7    Q    And I just want to -- I think I understand.
8  Again, colloquially, I understand what you are saying, so I
9  want to understand a little more precisely.
10       Cash in the bank account, is that a liquid asset
11  to you?
12   A    Yes.
13   Q    Okay. How about a stock?
14   A    It could be.
15   Q    And can you explain what you mean by that?
16   A    Well, if you cashed out on it.
17   Q    Okay. So let me change it.
18       A stock where there is no -- there is nothing
19  stopping you from cashing out on it, there's no contractual
20  bar for you -- you know, like options, you can't cash out
21  on them until they've vested; right?
22   A    Yes.
23   Q    A stock or mutual fund or anything you have in a
24  retirement account, is that liquid asset to you?
25   A    Yes.

Page 216

1    Q    Okay. It's nothing tricky. It's sort of like you
2  can convert to cash quickly. That's my understanding of
3  it.
4        Is that your understanding?
5    A    Yes.
6    Q    Okay. Is a house a liquid asset?
7    A    You can't convert that to cash very quickly --
8    Q    Okay.
9    A    -- especially if you owe on it.
10   Q    So that's a no, then; right?
11   A    No.
12   Q    Okay. Is a boat a liquid asset?
13   A    Yeah.
14   Q    Okay. I think, when you say that, too, it's a
15  more or less a boat that you have had for 13 years where
16  you have probably paid down a majority of the debt; right?
17   A    Right.
18   Q    Okay. Did you have any vehicles in 2013?
19   A    Yes.
20   Q    When I say that, I mean, like, motor vehicles
21  used -- that would be proper to drive on the highway or a
22  road.
23   A    Yeah. We had -- yes, we did.
24   Q    What did you have back then?
25   A    I believe we had an Escalade -- 2003 Escalade, and

JASON CASTILLO
CASTILLO vs. NATIONSTAR, ET AL

February 04, 2016
217–220

Page 217

1    2013 -- and I had my -- I had a BMW, I think, at that time.
2        Q    What kind of BMW?
3        A    The one that we were discussing earlier, the 5- --
4    the 550.
5        Q    Okay.  How did you get that when your lease was --
6    your application for lease was denied?
7        A    I had to get a co-signer.
8        Q    Oh, I see.  What year was that?  2011?
9        A    Yes.
10       Q    It was relatively new at that time.
11            Well, did you have a payment on that lease in
12   2013?
13       A    Yes.
14       Q    Okay.  There's another expense.  What was that?
15   Do you recall approximately?
16       A    High sevens, low eights, somewhere in there.
17       Q    Why don't we just say 800?  Is that fair?
18       A    That's fair.
19       Q    For spitballing, okay.
20            So the BWM, if it's leased, it's not a liquid
21   asset.  The 2003 -- was that a Cadillac Escalade?  It that
22   what you were referring to?
23       A    Yes.
24       Q    Was that paid off?
25       A    I don't know if that was paid off in 2013.  We're

Page 218

1    still talking about October 2013 --
2        Q    Yes.
3        A    -- correct?
4        Q    Yes.  So this was a 2003 Escalade?
5        A    Yes.  It probably was, yes.
6        Q    I am unaware of any auto loan that would exceed
7    sort of five or six -- well, I think they are seven years
8    now, but --
9        A    It probably was.  I think it's safe to say it was.
10       Q    All right.  Do you still have that vehicle?
11       A    No.
12       Q    Okay.  When did you get rid of it?
13       A    When we purchased the -- the GMC Yukon.
14       Q    Okay.  Did you trade it in or sell it?
15       A    Yeah, we did.
16       Q    What value did you get for it when you traded it
17   in?
18       A    I want to say 4,000.
19       Q    How many miles was on it, approximately?  Your
20   best estimate.
21       A    Quite a bit.  At least 200,000 miles.
22       Q    Okay.  So that's a liquid asset, I suppose; right?
23   Would you agree that a car that's paid off is a liquid
24   asset?
25       A    Yes.

Page 219

1        Q    Okay.  Did you have any retirement accounts in
2    October 2013?
3        A    No, I don't think so.
4        Q    Did you have any savings accounts?
5        A    I'm sure we had something in 2013, yeah.
6        Q    Let me rephrase this.
7            Did you have any depository accounts, meaning
8    savings account, checking accounts, CDs, things like that?
9        A    Yeah.  We must have, yes.
10       Q    And just your best estimate of what the aggregate
11   you had on deposit, again, late 2013.
12       A    I'm not sure.
13       Q    Okay.  Was it more or less than a hundred
14   thousand?
15       A    I'm not sure.
16       Q    Okay.  You can't estimate that?
17       A    I'm thinking -- I'm assuming it was less than a
18   hundred thousand, but I don't know exactly.
19            MS. LETCHER:  Don't guess.
20   BY MR. ABBOTT:
21       Q    No.  We've admonished you many times not to guess.
22            But why would you assume it's less than a hundred
23   thousand?
24       A    Because I don't recall having more than a hundred
25   thousand in there.

Page 220

1        Q    Okay.  How about, more or less than 75,000?
2        A    I'm not sure.  I can't recall.
3        Q    You can't recall.  And bear in mind that that
4    question -- my question that -- your answer is not
5    responsive, so I want to make sure you understand my
6    question, which is your best estimate.  I'm not asking for
7    your recollection of a dollar amount.  I'm asking for your
8    best estimate.
9        A    If I gave you an answer, I would be guessing.
10       Q    Okay.  That's fine.  I just want to make sure that
11   you understand that I'm -- I'm fine with getting your best
12   estimate.
13            More or less than 50,000?
14       A    If I gave you an answer, I would be guessing.
15       Q    Okay.  So you have no idea how much money you had
16   in depository accounts in October 2013?
17       A    No.
18       Q    Okay.  Do you think, in October 2013, you had an
19   idea about how much you had in depository accounts, or was
20   it the same thing, just something where you don't keep
21   track of it in a way where it's something you have, you
22   know, an idea of, if that makes sense?
23       A    That doesn't really make sense to me.
24       Q    So when you signed this document on October 30,
25   2013, and sitting here now, do you recall whether or not



JASON CASTILLO
CASTILLO vs. NATIONSTAR, ET AL

February 04, 2016
331

```
1   STATE OF CALIFORNIA          )
                                 )   SS:
2   CITY AND COUNTY OF SAN FRANCISCO  )

3

4            I, Michael Cundy, CSR NO. 12271, a

5   Certified Shorthand Reporter of the State of California,

6   do hereby certify:

7            That the foregoing proceedings were

8   taken before me at the time and place herein set forth;

9   that any witnesses in the foregoing proceedings, prior to

10  testifying, were placed under oath; that a verbatim record

11  of the proceedings was made by me using machine shorthand

12  which was thereafter transcribed under my direction;

13  further, that the foregoing is an accurate transcription

14  thereof.

15           I further certify that I am neither

16  financially interested in the action nor a relative or

17  employee of any attorney or any of the parties.

18           IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: February 17, 2016

22

23

24                    Michael Cundy, CSR NO. 12271

25
```



ESQUIRE
SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

# EXHIBIT C

1 │ MARY KATE SULLIVAN (State Bar No. 180203)
   │ mks@severson.com
2 │ THOMAS N. ABBOTT (State Bar No. 245568)
   │ tna@severson.com
3 │ GREGORY L. HUBER (State Bar No. 287865)
   │ glh@severson.com
4 │ SEVERSON & WERSON
   │ A Professional Corporation
5 │ One Embarcadero Center, Suite 2600
   │ San Francisco, California 94111
6 │ Telephone: (415) 398-3344
   │ Facsimile: (415) 956-0439
7 │
   │ Attorneys for Defendants
8 │ NATIONSTAR MORTGAGE LLC and WELLS
   │ FARGO BANK, N.A. AS TRUSTEE FOR
9 │ BANK OF AMERICA MORTGAGE
   │ SECURITIES, INC. MORTGAGE PASS-
10 │ THROUGH CERTIFICATES, SERIES 2006-A

11 │                UNITED STATES DISTRICT COURT

12 │       NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION

13 │

14 │ JENNIFER CASTILLO and JASON            Case No. 5:15-cv-01743-BLF
15 │ CASTILLO,
                                           **DEFENDANT NATIONSTAR**
16 │          Plaintiffs,                  **MORTGAGE LLC'S** AMENDED
                                           **RESPONSES TO PLAINTIFF**
17 │     vs.                               **JENNIFER CASTILLO'S FIRST SET**
                                           **OF REQUESTS FOR PRODUCTION**
18 │ NATIONSTAR MORTGAGE LLC, WELLS         **OF DOCUMENTS**
   │ FARGO BANK, NATIONAL
19 │ ASSOCIATION, AS TRUSTEE FOR BANK       Ctrm 3 – 5th Floor
   │ OF AMERICA MORTGAGE SECURITIES,
20 │ INC. MORTGAGE PASS-THROUGH            Action Filed:   March 19, 2015
   │ CERTIFICATES, SERIES 2006-A and DOES  Trial Date:     February 13, 2017
21 │ 1 through 100 inclusive,
22 │          Defendants.

23 │

24 │ PROPOUNDING PARTY:        Plaintiff JENNIFER CASTILLO

25 │ RESPONDING PARTY:         Defendant NATIONSTAR MORTGAGE LLC

26 │ SET NO.:                  ONE

27 │        Pursuant to Federal Rules of Civil Procedure, Rule 34, defendant Nationstar Mortgage LLC

28 │ ("Nationstar") hereby amends its responses to plaintiff Jennifer Castillo's First Request for Production
   │ 11951.0598/5189585.1                                              5:15-cv-01743-BLF
   │ ─────────────────────────────────────────────────────────────────────
   │              Nationstar Mortgage LLC's Amended Responses To Jennifer Castillo's
   │                    First Set Of Requests For Production Of Documents

1    Nationstar further objects to this request as overly broad because it is not relevant to a party's

2    claims or defenses.  Nationstar will not comply with this request.

3    <u>AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 12:</u>

4    Nationstar objects to this request on the ground that it is overly broad, unduly burdensome and

5    oppressive when considered in conjunction with the 23 other requests contained in this set.  Indeed,

6    many of plaintiff's 24 requests include numerous subparts that bring the true number of requests to

7    well over 24.  This number of requests is excessive considering the straightforward factual and legal

8    issues involved in this case, the needs of the case, and the amount in controversy.

9    Nationstar further objects to this request as overly broad because it is not relevant to a party's claims

10   or defenses.

11   Subject to and without waiving the foregoing objection(s), Nationstar responds that it will

12   comply with this request.

13   <u>REQUEST FOR PRODUCTION NO. 13:</u>

14   Produce the Servicing Transfer Agreement between Bank of America, N.A and Nationstar un-

15   der which Nationstar began servicing PLAINTIFFS' LOAN.

16   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 13:</u>

17   Nationstar objects to this request on the ground that it is overly broad, unduly burdensome and

18   oppressive when considered in conjunction with the 23 other requests contained in this set.  Indeed,

19   many of plaintiff's 24 requests include numerous subparts that bring the true number of requests to

20   well over 24.  This number of requests is excessive considering the straightforward factual and legal

21   issues involved in this case, the needs of the case, and the amount in controversy.

22   Nationstar further objects to this request as overly broad because it is not relevant to a party's

23   claims or defenses.  Nationstar will not comply with this request.

24   <u>AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 13:</u>

25   Nationstar objects to this request on the ground that it is overly broad, unduly burdensome and

26   oppressive when considered in conjunction with the 23 other requests contained in this set.  Indeed,

27   many of plaintiff's 24 requests include numerous subparts that bring the true number of requests to

28   well over 24.  This number of requests is excessive considering the straightforward factual and legal

1  issues involved in this case, the needs of the case, and the amount in controversy.

2        Nationstar further objects to this request as overly broad because it is not relevant to a party's

3  claims or defenses.

4        Nationstar further objects to this request on the ground that the term "Servicing Transfer

5  Agreement" is vague and ambiguous.

6        Subject to, and without waiving, the foregoing objection(s), Nationstar responds that a diligent

7  and reasonable inquiry has been made in an effort to locate the item requested and it is unable to com-

8  ply because the item requested does not exist.

9  **REQUEST FOR PRODUCTION NO. 14:**

10        Produce all DOCUMENTS conveyed from Bank of America, N.A. to Nationstar as part of the

11  servicing transfer, in the format and order in which they were conveyed.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

13        Nationstar objects to this request on the ground that it is overly broad, unduly burdensome and

14  oppressive when considered in conjunction with the 23 other requests contained in this set.  Indeed,

15  many of plaintiff's 24 requests include numerous subparts that bring the true number of requests to

16  well over 24.  This number of requests is excessive considering the straightforward factual and legal

17  issues involved in this case, the needs of the case, and the amount in controversy.

18        Subject to, and without waiving, the foregoing objection(s), Nationstar responds as follows:

19  Nationstar has produced a copy of its Collection History Profile, LoanSphere BK/FC Notes, Detail

20  Transaction History, and a spreadsheet setting for all account activity, payments, reversals, and modi-

21  fication activity for the subject loan and will produce its remaining loan file.

22  **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

23        Nationstar objects to this request on the ground that it is overly broad, unduly burdensome and

24  oppressive when considered in conjunction with the 23 other requests contained in this set.  Indeed,

25  many of plaintiff's 24 requests include numerous subparts that bring the true number of requests to

26  well over 24.  This number of requests is excessive considering the straightforward factual and legal

27  issues involved in this case, the needs of the case, and the amount in controversy.

28        Notwithstanding the foregoing objections, Nationstar agrees to comply with this request.  A

**VERIFICATION**

I have read the foregoing NATIONSTAR MORTGAGE LLC'S AMENDED RESPONSES TO PLAINTIFF JENNIFER CASTILLO'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS and know its contents.

I am Litigation Resolution Analyst of NATIONSTAR MORTGAGE LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 23, 2015, at Coppell, Texas.

Edward Hyne
Print Name of Signatory

Signature