Exhibit 73
Andrew J. Loll
08-17-16
CSR: ARG

**EXHIBIT PAGE 1**

| **Subject:** | Castillo/BANA – Modification Offer |
|---|---|
| **From:** | Keller, George (KellerG@bryancave.com) |
| **To:** | wkennedy@kennedyconsumerlaw.com; eletcher@heraca.org; csingerman@heraca.org; |
| **Date:** | Friday, November 9, 2012 10:51 AM |

*Castillo v. Bank of America, N.A. et al.*
Santa Clara Sup. Ct. Case No. 112 CV 233256

Greetings all:

Bank of America, N.A. (BANA) has prepared the following modification offer for your clients, the Castillos. Please be advised that the figures may change slightly, however, they should be close if not exact; and this modification offer is contingent to final approval.

The proposed modification plan with related details is as follows:

- ... The bank will forgive $47,000 for fees and interest charged.
- ... Principal & Interest step payment will be offered:
  - o 2% for 3 years;
  - o 3% for 1 year following;
  - o Then fixed at 3.375% for the term.
- ... Principal & interest payment will be started at $1,530, which is the 2% rate.
- ... Escrow monthly payment is currently calculated at $618, therefore, the initial monthly payment per above would be $1,530 plus $618 appr. escrow totaling $2,148.
- ... The term will be extended to 480 months.
- ... Also $150,000 will be deferred with no charged interest, however, that amount will remain due at the end of term.
- ... The bank will fix credit from September 2010 to present.

If the Castillos agree to the terms, BANA will need to repurchase the loan from the current investor, defendant Wells Fargo Bank; however, BANA we will not do that until we have confirmed an agreement to the modification.

Of course, please do let me know of any questions, etc. and I look forward to hearing back from you when you have had an opportunity to review the above modification offer with the Castillos.

Best regards,
George Keller

---

**George H. Keller**
**Bryan Cave, LLP**
333 Market Street | 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2012

Castillo 000001

**EXHIBIT PAGE 3**

| Subject: | RE: Castillo/BANA - Modification Offer |
| From: | Keller, George (KellerG@bryancave.com) |
| To: | eletcher@heraca.org; |
| Cc: | wkennedy@kennedyconsumerlaw.com; csingerman@heraca.org; |
| Date: | Thursday, November 15, 2012 11:35 AM |

*Castillo v. Bank of America , N.A. et al.*
Santa Clara Sup. Ct. Case No. 112 CV 233256

Greetings all:

As I am still waiting for clarifications from the bank on points raised below, I cannot yet respond with "dollars and cents" substance, however, I did not want to let too long go by without communicating back to you. I would expect that I get that information shortly, within the day or next.

However, I did want to at least respond to the one question at the conclusion of your e-mail below. *The modification proposal is not presented on the condition that it be accepted as a settlement of all causes of action of the suit.* (Please also note that my e-mail was not labeled as a settlement communication.) To state it most simply, it is presented in order to provide the Castillos with a modification plan that resolves the inconsistencies apparent in the initial plan, namely, between the loan mod agreement and the addendum, as well as on some additionally revised terms, starting with the balance-out for accrued fees and charges, interest rates, and so forth.

Having said that, once I can provide you with the clarifications below, and you have had a chance to review the modification proposal with the Castillos, I would be more than happy to also discuss resolution of the entire suit, but that certainly would appear to be premature at this time as we have not yet even ironed out some of the modification's proposed calculations from the bank nor, certainly understandably, have the Castillos made any decision.

I do look forward to further contact with you in the near future regarding the above and, as always, please do let me know of any additional questions or concerns that may arise in the meantime.

Best regards,
George Keller

George H. Keller
Bryan Cave LLP

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Tuesday, November 13, 2012 4:54 PM
**To:** Keller, George
**Cc:** 'William Kennedy'; 'Cynthia Singerman'
**Subject:** RE: Castillo/BANA - Modification Offer

Thanks for conveying the below.  I'd like to get clarification on a few points (set out in bold) before we discuss the modification with the client:

**EXHIBIT 5 PAGE 4**

- The bank will forgive $47,000 for fees and interest charged. **What will be the total prinicipal balance?**
- Principal & Interest step payment will be offered:
  - 2% for 3 years;
  - 3% for 1 year following;  **can you give P&I monthly payment amounts for this year?**
  - Then fixed at 3.375% for the term.  **Can you give P&I amount for this period as well?    Also, what is the effective date of this proposed modification?**
- Principal & interest payment will be started at $1,530, which is the 2% rate.
- Escrow monthly payment is currently calculated at $618, therefore, the initial monthly payment per above would be $1,530 plus $618 appr. escrow totaling $2,148.
- The term will be extended to 480 months.
- Also $150,000 will be deferred with no charged interest, however, that amount will remain due at the end of term.
- The bank will fix credit from September 2010 to present.

Finally, are these terms being proposed as a settlement of all causes of action of the suit, or as a means of mitigating damages?

Thanks, Elizabeth

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel.  (510) 271-8443, ext. 302
fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Friday, November 09, 2012 10:51 AM
**To:** 'William Kennedy'; Elizabeth Letcher; Cynthia Singerman
**Subject:** Castillo/BANA - Modification Offer
**Importance:** High

*Castillo v. Bank of America , N.A. et al.*
Santa Clara Sup. Ct. Case No. 112 CV 233256

Greetings all:

Bank of America, N.A. (BANA) has prepared the following modification offer for your clients, the Castillos. Please be advised that the figures may change slightly, however, they should be close if not exact; and this modification offer is contingent to final approval.

The proposed modification plan with related details is as follows:

- The bank will forgive $47,000 for fees and interest charged.
- Principal & Interest step payment will be offered:
  - 2% for 3 years;
  - 3% for 1 year following;
  - Then fixed at 3.375% for the term.
- Principal & interest payment will be started at $1,530, which is the 2% rate.
- Escrow monthly payment is currently calculated at $618, therefore, the initial monthly payment per above would be $1,530 plus $618 appr. escrow totaling $2,148.
- The term will be extended to 480 months.

- Also $150,000 will be deferred with no charged interest, however, that amount will remain due at the end of term.
- The bank will fix credit from September 2010 to present.

If the Castillos agree to the terms, BANA will need to repurchase the loan from the current investor, defendant Wells Fargo Bank; however, BANA we will not do that until we have confirmed an agreement to the modification.

Of course, please do let me know of any questions, etc. and I look forward to hearing back from you when you have had an opportunity to review the above modification offer with the Castillos.

Best regards,
George Keller

**George H. Keller**
**Bryan Cave, LLP**
333 Market Street | 25th Floor
San Francisco , CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2012

**EXHIBIT PAGE 7**

mail - RE: C\    LOBANA - Proposed Mod Questions    ◯ https://mail.google.com/mail/u/0/?ui=2&ik=80a5977cf9&view=pt&q=Castillo&qs=true&sec....   /uery&th=13b



RE: CASTILLO/BANA - Proposed Mod Questions
1 message

Elizabeth Letcher <elizabethathera@gmail.com>

**Keller, George** <KellerG@bryancave.com>    Tue, Nov 20, 2012 at 1:30 PM
To: Elizabeth Letcher <eletcher@heraca.org>, William Kennedy <wkennedy@kennedyconsumerlaw.com>, Cynthia Singerman <csingerman@heraca.org>

Greetings all –

Elizabeth, thanks for the response. On a quick initial point, earlier today I already started looking into the escrow issue you mentioned to at least clear up that point and apparently that will take a bit more time -- one question already jotted is if you could obtain and provide a currently Updated Certificate of Taxes Paid at your convenience. Now putting that aside in the meantime, I will also work along towards the general summary as suggested below regarding the accounting.

Please also continue to let me know of any additional points of concern or question with regard to yesterday's accounting as well.

Best regards,
George Keller

George H. Keller
Bryan Cave LLP

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Monday, November 19, 2012 4:39 PM
**To:** Keller, George; 'William Kennedy'; 'Cynthia Singerman'
**Subject:** RE: CASTILLO/BANA - Proposed Mod Questions

George,

Thanks for your prompt and detailed response below.

I haven't had time to review it in full, but I suspect that we will have to have a more extensive discussion of the accounting.  For example, to the Castillos' knowledge, their loan was never escrowed.  They have in fact consistently paid their own property taxes and insurance, with one exception (as reflected in the attached escrow analysis, page 4, and certificate of tax payment from Santa Clara County).

I would prefer to resolve these accounting disputes informally, if at all possible.  In the past, we have been able to work with opposing counsel on a side-by-side, month by month accounting to resolve similar accounting disputes.    I therefore propose the following:  that Bank of America prepare an easy-to-read accounting of the loan, which shows its understanding of accrued interest since the inception of the loan, how it has applied (or returned) payments on the loan, and fees and charges, and that we set a time to review and discuss it.   I attach a redacted model which Bank of America's counsel (paralegal) in another case produced, which we were able to use to cooperatively resolve the matter.

**EXHIBIT PAGE 8**

I know that this might take some time and effort, but in my experience it is well worth the effort to find an informal and cooperative means of resolving accounting disputes which are not particularly suited to the adversarial process.   Please let me know your thoughts.   If we could aim for some time after Thanksgiving or early December, with a discussion set a few days later, that would be great.

Sincerely yours,

Elizabeth

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel. (510) 271-8443, ext. 302

fax (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Monday, November 19, 2012 1:44 PM
**To:** 'Elizabeth Letcher'; 'William Kennedy'; 'Cynthia Singerman'
**Subject:** CASTILLO/BANA - Proposed Mod Questions

*Castillo v. Bank of America, N.A. et al.*

Santa Clara Sup. Ct. Case No. 112 CV 233256

Greetings all:

The following addressees the questions from the two prior prior e-mails regarding BANA's proposed modification.  Please bear in mind that some of the amounts below might change slightly, for example the stated rate of 3.375% which might be slightly higher, or lower, depending on the final confirmation date for the proposal.

You asked what will be the total principal balance: $505,417.00.  The initial $594,000 loan amount plus, with some approximation, $91,000 in delinquent interest, $16,000 in delinquent escrow, and $1,000 in delinquent fees, amounts to a total $702,000, from which is then deducted (a) the $150,000 forbearance with no interest, remaining due as a balloon payment at the end of the term, and (b) $47,000 forgiveness for fees and charges incurred from the time of the initial 2010 modification, thus getting down to the $505,417.00.

The effective date of the modification is December 1, 2012. However, following the Castillos' acceptance, BANA will need to repurchase the modification from current investor Well Fargo. That will likely take at least thirty days, pushing off the date of their first payment to January 1 or, quite frankly most likely, February 1, 2013. Assuming that is the case, the bank will also include these prior months (December 2012, likely January 2113) as a book loss under the forgiveness (in addition to the $47,000 noted above).

P&I calculations are as follows: At 2% = $1,530; at 3% = $1,790; and at 3.375% = $1,891. To those will be added escrow monthly payments, e.g. currently calculated at $618 under the example in my earlier e-mail.

While this proposed modification could be described as mirroring a HAMP mod in some respects, the bank does not look at it that way but, rather, simply as a unique in-house mod designed specifically in order to honor the Castillos' 2010 modification as closely as possible, while eating up fees and so forth due to servicing error and the earlier mod's inoperability. In addition, the 2010 mod was interest only, while this proposal is of course principal and interest.

On a last question, the modification is not eligible for principal reduction under the AG settlement because it does not fall into any of the categories of loans that the settlement covered. In particular, it was not a fully delegated loan.

I trust that the above makes good headway into the questions raised in the earlier e-mails, but of course if there is any more specific questions raised, as always just let me know.

Best regards,

George Keller

**George H. Keller**
**Bryan Cave, LLP**
333 Market Street | 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2012

📄 **2012.06.22 Certificate of Taxes Paid r.pdf**

**EXHIBIT PAGE 10**

**EXHIBIT PAGE 11**

Gmail - Castill...ification    https://mail.google.com/mail/u/0/?ui=2&ik=8f3a5977c9&view=pt&q=Castillo&qs=true&sea...query&th=13d...

## GMail
by Google

Elizabeth Letcher <elizabethathera@gmail.com>

## Castillo Modification
1 message

**Keller, George** <KellerG@bryancave.com>                           Mon, Mar 25, 2013 at 11:13 AM
To: Elizabeth Letcher <eletcher@heraca.org>

Castillo v. Bank of America, N.A. et al.
Santa Clara Superior Court Case No. 112CV233256
Loan # 872290897

Greetings Elizabeth -

This is simply to follow up briefly on our telephone conversation of this past Friday - I have informed the bank that the Castillos have decided to accept the modification proposal presented to them this past November 2012. Now initially the bank needs to repurchase the loan from Fannie Mae, and the bank today has therefore already instructed that processing team to proceed. The time frame I was given is that the repurchase can usually can take 30 day or so to be concluded, at which point the bank can then proceed with implementing the proposed modification, etc. (Following our loose discussions on Friday about time frame, I then realized I had not also factored in this repurchase issue so I was certainly already waaay too short for this one.)

Just wanted to update you on that -- we can discuss other and additional items for the matter later as the week progresses.

Eest regards for now, George

**George H. Keller**
Bryan Cave, LLP
333 Market Street | 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

**EXHIBIT PAGE 12**

| **Subject:** | RE: Castillo v. BANA - Checking in on modification |
| --- | --- |
| **From:** | Keller, George (KellerG@bryancave.com) |
| **To:** | eletcher@heraca.org; |
| **Cc:** | wkennedy@kennedyconsumerlaw.com; csingerman@heraca.org; |
| **Date:** | Wednesday, May 1, 2013 9:31 AM |

Good morning Elizabeth - As of Monday, my first check to start the week, it was still in repurchase team process, so I am certainly continuing with following along.  Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Wednesday, May 01, 2013 9:25 AM
**To:** Keller, George
**Cc:** 'William Kennedy'; 'Cynthia L. Singerman'
**Subject:** RE: Castillo v. BANA - Checking in on modification

Good Morning!   Checking in on the progress of the modification.  Any news?

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel.  (510) 271-8443, ext. 302
fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Friday, April 19, 2013 12:05 PM
**To:** 'Elizabeth Letcher'
**Cc:** William Kennedy; 'Cynthia L. Singerman'
**Subject:** RE: Castillo v. BANA - Checking in on modification

Greetings Elizabeth, I myself checked yesterday and it appears we will have a clearer picture in the next week, as it has been with the repurchase team.  I will advise once I do.  Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Friday, April 19, 2013 11:54 AM
**To:** Keller, George

Castillo 000003

**Cc:** William Kennedy; 'Cynthia L. Singerman'
**Subject:** Castillo v. BANA - Checking in on modification

George,

I wanted to check in on the progress of the modification.   We're coming up on a month since the Castillos
agreed to accept.   What is the ETA?

Elizabeth

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel.  (510) 271-8443, ext. 302
fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee),
you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the
message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

_____

This electronic message is from a law firm. It may contain confidential or privileged information. If you received
this transmission in error, please reply to the sender to advise of the error and delete this transmission and any
attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this communication (including any attachments) is not intended or
written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed
herein.
bcllp2013

Castillo 000004

**Subject:**   RE: Castillo - Loan Mod

**From:**    Elizabeth Letcher (eletcher@heraca.org)

**To:**      KellerG@bryancave.com; csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com;

**Date:**    Thursday, May 9, 2013 4:11 PM

Thanks, I appreciate it.  We will await further news.

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Thursday, May 9, 2013 4:05 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo - Loan Mod

Good afternoon Elizabeth and all,

I do not have any "documents" as such, yet, but have asked as well since this news in the last days.  Having said that, as I raised it again in an e-mail today, I wanted to also let you know that the reply from the bank indicated that they are still making some progress with the modification, apologies for delay, and should have more information next week - hence the "while the bank is still working on this to move along" at the end of my e-mail below (along with the caveat following that of course).

I will let you all, as well, know the developments with progress efforts to indeed still move along the modification as we know it, as I am informed about them over the week.  As well on follow up on the information requested.  Regards, George

Castillo 000006

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Thursday, May 09, 2013 2:04 PM
**To:** Keller, George; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo - Loan Mod

George:


Could you send me a copy of the PSA or other document containing the restrictions on modification and resale you mention below?  Thanks.


Elizabeth


Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

---

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Wednesday, May 8, 2013 12:32 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** Castillo - Loan Mod


*Castillo v. Bank of America, N.A. et al.*

Castillo 000007

Santa Clara Superior Court Case No. 112CV233256

Loan # 872290897


Greetings again Elizabeth,


Following our telephone discussion, this is to summarize the problem that has arisen with the modification presented to the Castillos.


Following notification of the Castillos' acceptance, the loan proceeded to the repurchase team.  Unfortunately, the repurchase team has been informed that loan is in private loan servicing tied to a pool which does not allow repurchase of an individual loan but rather only the entire whole pool.  Thus, the bank cannot go forward with repurchasing the loan in order to implement the modification.


As a result, under investor guidelines for implementation of the modification the loan needs to be brought current.  However, two conditions of the modification presently prevent that:


(1) The total past due (interest, principal, escrow, fees) is now appr. $160k, of which $100k is operative after forgiveness of fees and interest running from the time of the earlier September 2010 modification to present.  That $100k was to be incorporated into the new modification as extended out, but the investor will not accept a modification with past due amounts.


(To backtrack these numbers, at the time when the modification was offered in Nov. 2012 the past due was appr. $147 and one of the terms of the modification was forgiveness of $47k representing all fees and interest running from the time of the previous September 2010 modification; running that number up through April 2013 that amount is now appr. $60k, and that $60k total continues along under forgiveness.  Thus, there remains the appr. $100k past due on the loan which was to be incorporated and extended out for the 480 month term.)


(2) There is the $150k balloon payment moved to the end of the term under the modification, and that also is not allowed under the present investor.


Thus, of the $310k total needed, there still remains a shortfall of appr. $250k to bring the loan current under investor guidelines in order to implement the modification as offered.


The above is a summary of what the bank is now informing me and, while the bank is still working on this to move along, it does appear that it is reaching this conclusion.  Of course, I will let you know about any developments once informed.

Castillo 000008

Please do let me know of questions that you or your clients may also have for discussion.


Best regards for now, George


**Please note the new street address:**

George H. Keller
Bryan Cave, LLP
**560 Mission Street, 25th Floor**
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com


This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

**EXHIBIT PAGE 19**

**Subject:**  RE: Castillo - Loan Mod

**From:**  Keller, George (KellerG@bryancave.com)

**To:**  eletcher@heraca.org;

**Cc:**  csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com;

**Date:**  Friday, May 10, 2013 9:10 AM

Good morning Elizabeth - **You are correct as I have bolded/underlined below.**  And, yes, if you had any confusion it was just due to my semantics and the use of "current".  Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Thursday, May 09, 2013 5:08 PM
**To:** Keller, George; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo - Loan Mod

George:

I'd like to thank you in advance for your patience with me as I try to understand the restrictions on modification loans in this pool.   We might be having just a difference of semantics here, but on a third reading, I have some questions about your description below of the $310K needed to "bring the loan current in order to implement the modification as offered."

As I understood the original offer, it was:

Unpaid principal balance = $702K =  $594,000 + 91,000 interest + $16,000 escrow + $1000 Fees  (now, approximately $13K more in accrued interest etc.)
$702,000  - $47,000 principal forgiveness (now, around 60K) to be paid by BANA = $655,000
$150K principal forbearance = $505,000 interest bearing principal.

From what I read below, the investor would require the loan to be brought current in order to modify.  $160K would represent the arrears to 2010 ($100K) and since ($60K).

I'm not clear on how the additional $150K is required to bring the loan "current."  **It would make sense if the pool prohibits principal forbearance, and therefore the principal would have to actually be reduced by an additional $150K to arrive at affordable payments based on a $505K interest bearing principal.**   But that would not result in "the modification as offered."   **If $310K of the full unpaid balance were paid down, the resulting modification would be for a *complete* unpaid balance of $505K, rather than $505K interest bearing and $150K non-interest bearing, correct?**

I appreciate any clarifications you can offer.

Elizabeth S. Letcher
Director of Litigation

**EXHIBIT PAGE 20**

| **Subject:** | Castillo v. BANA |
| **From:** | Elizabeth Letcher (eletcher@heraca.org) |
| **To:** | KellerG@bryancave.com; |
| **Cc:** | wkennedy@kennedyconsumerlaw.com; csingerman@heraca.org; |
| **Date:** | Monday, May 20, 2013 1:57 PM |

George:

Ms. Castillo received the attached modification agreement today, with a 5 day turnaround time.

It appears to mirror the previous offer in some respects (e.g., the UPB is nearly the same, as are the step-up interest rates) but includes no principal forbearance. It also makes no mention of escrow, and I'm not clear on how the monthly payments were calculated (for instance, the first payment is over $3,000, but a 2% mortgage on $657,000 amortized over 40 years is under $2,000 a month, and we had spoken of a $618 per month escrow payment).

Can you provide an explanation?

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel. (510) 271-8443, ext. 302

fax (650) 392-8255

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

## Attachments

- 2013.05.20 Loan Mod Agreement.pdf (2.93MB)



**Bank of America, N.A.**
**Attn Home Retention Division: CA6-919-01-43**
**400 National Way**
**Simi Valley, CA 93065**

May 10, 2013

JENNIFER CASTILLO
JASON S CASTILLO
920 VIA VIVALDI
MORGAN HILL        CA  95037 - 5862

| Loan# | 872290897 |
|---|---|
| Property Address: | 920 VIA VIVALDI MORGAN HILL, CA 95037 |

### IMPORTANT MESSAGE ABOUT YOUR LOAN

We are pleased to advise you that your loan modification has been approved.  In order for the modification to be valid, the enclosed documents need to be signed, notarized, and returned with the requested certified funds.

The following amounts will be added to your current principal balance, resulting in a modified principal balance of $657,162.88 prior to your first payment date.  The amount added to your loan is:

| | |
|---|---|
| Interest: | $62,197.88 |
| Fees: | $0.00 |
| Escrow: | $0.00 |
| Total: | $62,197.88 |

Your new modified monthly payment will be $4,901.47, effective with your June 1, 2013 payment.  This payment is subject to change if your escrow account is reanalyzed or if you have a step rate or adjustable rate loan type.

A breakdown of your payment is as follows:

| | |
|---|---|
| Principal and Interest | $4,232.00 |
| Escrow / Option Ins: | $669.47 |
| Total Payment | $4,901.47 |

### WHAT YOU SHOULD DO

The following amount must be paid in CERTIFIED FUNDS in order for the modification to become effective:

| | |
|---|---|
| Modification Fees: | $0.00 |
| Title and Recording Fees: | $0.00 |
| Delinquent Escrow: | $19,460.77 |
| Foreclosure Fees: | $926.00 |
| Bankruptcy Fees: | $0.00 |
| Field Inspection Fees: | $90.00 |
| Outstanding Late Charges: | $0.00 |
| NSF/Misc. Fees: | $1,758.86 |
| Delinquent Mortgage Payment(s): | $37,851.47 |
| Modified Mortgage Payment(s): | $0.00 |
| Partial Payment: | ($60,087.10) |
| Total Amount Due: | $0.00 |

This offer is contingent on the following:

• Copy of your most recent supporting income receipts (pay stubs). If you are self-employed, please include the last 2 quarters of your Profit and Loss Statements (PL Statements).  If you have recently secured new employment, please include a letter from your employer verifying net and gross income.  Please do not send originals.

• A lender's title insurance policy or endorsement, which insures the Modified Mortgage as a valid lien in accordance with our requirements. If you have any other encumbrances on the property, then you may be required to obtain agreemens by which other secured creditors subordinate their interest to the Modified Mortgage.

This offer is contingent upon Bank of America, N.A. receiving relief from the Automatic Stay for any bankruptcy in which the property referred to in the Loan Modification Agreement is included at the time of the modification.

If any issues arise between the date of this commitment and the date on which all of the terms and conditions of this letter are finalized, including, but not limited to, deterioration in the condition of the property, lawsuits, liens, additional expenses and defaulted amount, then we may terminate this offer and pursue all collection action, including foreclosure.

Bank of America, N.A.                                    BA2 Loan#    872290897                Page 1 of 2

Castillo 000018

**EXHIBIT PAGE 23**



This letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property.  In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than May 25, 2013, we will continue our collections actions without giving you additional notices or response periods.

You agree that Bank of America, N.A. will hold funds, not already applied, in a non-interest bearing account until the modification process is complete. Any amounts held in this account during the modification process will be applied to any outstanding balance that you owe, reducing the amount that would otherwise be added to your modified principal balance.

The following documents have been enclosed:

**Modification Agreement**
Must be signed in the presence of a Notary.  The notary acknowledgment must be in recordable form.  All parties who own an interest in the property must sign the modification agreement as their name appears.

**California All Purpose Acknowledgment**
This document will only be used if the loan modification agreement is being executed in the state of California.  It will be utilized by a notary of the state of California in place of the notary section contained in the Loan Modification Agreement.

The following documents may have been included if applicable to your loan:

**PayOption Loan Disclosure**
All parties who own an interest in the property must sign the PayOption Loan Disclosure as their name appears.

**Bankruptcy Disclosure**
All parties who own an interest in the property must sign the Bankrutpcy Disclosure as their name appears.

**Please return all of the enclosed documents to us in the enclosed pre-paid FED EX envelope no later than May 25, 2013 together with a certified check or money order (with loan number on the check) in the amount of $0.00 to the following address:**

> Bank of America, N.A.
> Bank of America
> PO Box 515503
> Los Angeles, CA 90051-6803

**THANK YOU FOR YOUR BUSINESS**

Heather Richardson
Customer Relationship Manager
Home Loan Team
Bank of America, N.A.

Castillo 000019

**EXHIBIT PAGE 24**

RECORDING REQUESTED BY:
**Bank of America, N.A.**
**Attn Home Retention Division: CA6-919-01-43**
**400 National Way**
**Simi Valley, CA 93065**

Loan #:  872290897

----------------------------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE----------------------------------------

## LOAN MODIFICATION AGREEMENT
### (Adjustable Interest Rate-Recorded)

This Loan Modification Agreement ("Agreement"), made this 10th day of May 2013, between JASON S CASTILLO, JENNIFER  CASTILLO  and Bank of America, N.A. (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 7th day of December 2005 and recorded on the 23rd day of December 2005 in Book No. None, Page No. None as Document No. 18741835 in the Official Records of Santa Clara County, in the State of  CALIFORNIA , and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 920 VIA VIVALDI, MORGAN HILL, CA  95037.

Legal

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1  As of the 1st day of June 2013, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $657,162.88, consisting of the amount(s) loaned to the Borrower by Lender, which may include, but are not limited to, any past due principal payments, interest, fees and/or costs capitalized to date. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

2  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance from the 1st day of May 2013 of the modified term at the yearly rate of (See Below Schedule).  The Borrower promises to make monthly payments of (See Below Schedule) beginning on the 1st day of June 2013. If on the 1st day of January 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

**The payment schedule for this modified Loan is as follows:**

| Years | Interest Rate | Interest Rate Change Date | Type of Payment | Monthly Payment | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 1-3 | 2.000% | 5/1/2013 | Principal and Interest | $3,006.89 | 6/1/2013 | 36 |
| 4 | 3.000% | 5/1/2016 | Principal and Interest | $3,291.86 | 6/1/2016 | 12 |
| 5 | 3.125% | 5/1/2017 | Principal and Interest | $3,326.90 | 6/1/2017 | 224 |

3  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above.

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5  The Borrower will make such payments at PO Box 515503, Los Angeles, CA 90051-6803 or at such other place as the Lender may require.

**EXHIBIT PAGE 25**

Castillo 000020

6   Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

7   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

JASON S CASTILLO                                                                  Date

JENNIFER  CASTILLO                                                               Date

STATE OF
County OF
On                                          Before me,                                          Notary Public, personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.                    Signature

*Do Not Write Below This Line.*

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

THIS SECTION IS FOR INTERNAL BANK OF AMERICA, N.A. USE ONLY

By:                                                    Dated:

_____

STATE OF

County OF

On                                        Before me, _____ Notary Public, personally appeare

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.
Signature

**EXHIBIT PAGE 27**

Castillo 000022

Bank of America, N.A.
Attn Home Retention Division: CA6-919-01-43
400 National Way
Simi Valley, CA 93065

Loan #:  872290897

---

## Acknowledgment

State of California

County of

On _____ before me _____
                                    (insert name & title of the officer)

personally appeared

who proved to me on the basis of satisfactory evidence to be person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____   **(Seal)**

---

BA2  Loan#      872290897

Gmail - RE: Castillo v. BANA                                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



**Elizabeth Letcher <elizabethathera@gmail.com>**

## RE: Castillo v. BANA
1 message

**Keller, George** <KellerG@bryancave.com>                              Mon, May 20, 2013 at 4:07 PM
To: Elizabeth Letcher <eletcher@heraca.org>

Good afternoon Elizabeth, as this is - umh - the first that I have seen/heard of the attached modification since our last
e-mails (that they were still working on modification), I will certainly have to first back track, find out the
explanations/status, and then of course get back to you.  Regards for now, George

**George H. Keller**

**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Monday, May 20, 2013 1:56 PM
**To:** Keller, George
**Cc:** William Kennedy; 'Cynthia L. Singerman'
**Subject:** Castillo v. BANA

George:

Ms. Castillo received  the attached modification agreement today, with a 5 day turnaround time.

It appears to mirror the previous offer in some respects (e.g., the UPB is nearly the same, as are the step-up interest
rates) but includes no principal forbearance.   It also makes no mention of escrow, and I'm not clear on how the
monthly payments were calculated (for instance, the first payment is over $3,000, but a 2% mortgage on $657,000
amortized over 40 years is under $2,000 a month, and we had spoken of a $618 per month escrow payment).

Can you provide an explanation?

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

Castillo 000013

**EXHIBIT PAGE 29**

**EXHIBIT PAGE 30**

| **Subject:** | RE: Castillo/BANA - Modification |
| --- | --- |
| **From:** | Elizabeth Letcher (eletcher@heraca.org) |
| **To:** | KellerG@bryancave.com; csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com; |
| **Date:** | Tuesday, May 28, 2013 2:54 PM |

Thanks.   I'm still not quite clear on what the escrow charges would be, so if you could clarify those as well that would be great.   (My apologies if you went over this with Cynthia).

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Tuesday, May 28, 2013 2:15 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo/BANA - Modification

Greetings all, following on the voicemail I just left with you, Elizabeth, and my call with Cynthia, the top cover letter is **wrong**, and a new letter and permanent modification will be issued and sent today via FedEx.  The response deadline is moved to June 7, 2013, as is discovery.  Regards for now, George

The incorrect cover letter had been generated.  A correct cover letter has been generated and will be sent out via FedEx tonight along with the permanent loan docs tonight.

Correct terms are:

Castillo 000038

Since this is going to be a step rate, the monthly P&I payments are calculated as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Payment | Payment begins on | Number of monthly payments |
|-------|---------------|---------------------------|-----------------|-------------------|----------------------------|
| 1-3   | 2%            | 5/1/13                    | **3005.89**     | 6/1/13            | 36                         |

We apologize for the confusion and you will be receiving the cover letter that matches to modification documents shortly.

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Tuesday, May 28, 2013 10:02 AM
**To:** Keller, George; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo/BANA - Modification

George:

I'm completely confused by the description of escrow payments.

If $638 is the regular escrow payment, which will cover the ordinary $7665 per year, then I don't see how $669 per month could cover a $19K escrow shortage.

Are you saying there would be an additional $540 per month beyond the ordinary escrow payments?  An additional $669 per month?   Is there some reason the escrow shortage isn't recapitalized (other than a simple failure to do so before the deadline that Bank of America has set for itself)?

Elizabeth

Elizabeth S. Letcher

Castillo 000039

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

---

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Friday, May 24, 2013 1:15 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** Castillo/BANA - Modification

**Greetings all, I have received the following explanations concerning the modification proposal.**

The attached perm mod docs show a breakdown of the payments (for P&I and escrow). The Castillos' total payment would be $4901.47 effective June 1, 2013. The payment is broken down as follows:

Principal & Interest: $4,232

Escrow: $669.47

Total Payment: $4901.47

Escrow shortage: 19,460.77

Modified Principal Balance: 657,162.88

The current escrow payment does not include some of the shortage and was calculated to be $638.80 monthly based off of the following insurance and county tax payments:

4/12/13 – Hazard Insurance Payment $710

3/1/13 – County Tax Payment $3,477.81

11/5/12 – County Tax Payment $3,477.81

Castillo 000040

**EXHIBIT 5 PAGE 33**

The total escrow amount is $7665.62 and is divided over 12 months (equaling $638.80). The attached perm mod docs state that the escrow payment will be $669.47 however this will most likely change once the perm mod is implemented and escrow is reanalyzed since the $638.80 does not include the remaining $11,795.15. If the bank were to stretch the escrow payment over 36 months, the Castillos' new payment would be approximately $540.58. (That may be done as an available option. However, the bank would need to wait until the perm mod is complete before reviewing to have the payment adjusted.)  The escrow payment of $669.47 (as stated in the perm mod docs) is from the $19,460.77 shortage being spread out over 30 months.

Since this is going to be a step rate, the monthly P&I payments are calculated as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Payment | Payment begins on | Number of monthly payments |
|-------|---------------|---------------------------|-----------------|-------------------|----------------------------|
| 1-3   | 2%            | 5/1/13                    | 3005.89         | 6/1/13            | 36                         |
| 4     | 3%            | 5/1/16                    | 3291.86         | 6/1/16            | 12                         |
| 5     | 3.125%        | 5/1/17                    | 3326.90         | 6/1/17            | 224                        |

Compared to the prior mod proposal, the investor will not allow the bank to permanently reduce the interest rate or forbear any interest.  The term of the prior mod was also extended to 480 months, while this remains under the initial 360 month term concluding in 2036 (22 years and remaining months).

**Please let me know should you or the Castillos need any additional clarifications.**

**Best regards, George**

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

Castillo 000041

**Subject:** RE: Castillo/BANA

**From:** Keller, George (KellerG@bryancave.com)

**To:** eletcher@heraca.org; csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com;

**Date:** Tuesday, June 4, 2013 10:15 AM

I will move that proposal along of course.

**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Tuesday, June 04, 2013 10:15 AM
**To:** Keller, George; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo/BANA

George,

My concern with the below is that a cash payment to the Castillos, apart from modification, would not lower their monthly payment. They could make a payment to their account before modification, but they would possibly incur significant tax liability from a lump sum payment.

To my knowledge, servicers don't care who pays the mortgage bill so long as it gets paid. What precisely would keep Bank of America from writing a check to say, the investor, and the investor sending a check to the mortgage payment address with a payment coupon for the Castillos, and then modifying the loan after the principal is reduced?

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel. (510) 271-8443, ext. 302
fax (650) 392-8255

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Tuesday, June 4, 2013 9:33 AM
**To:** 'Cynthia L. Singerman'; 'Elizabeth Letcher'; 'William Kennedy'
**Subject:** Castillo/BANA
**Importance:** High

Good morning all,

I am confirming that the pending modification offer remains open until June 14, 2013, and this will also confirm the discovery extension to the same date. I left messages with both of you Cynthia and Elizabeth, and if you have the opportunity to call me to very briefly to discuss that would be great, particularly before the case

Castillo 000042

management conference as it concerns the modification and settlement issues that will be the focus as we move along.

Let me frankly sum up where we are now on this side - due to investor restrictions which cannot be altered, there can be little change to the modification itself.  Therefore, as to forgiveness, any settlement will need to be in the form of cash payment from Bank of America, N.A. to the Castillos, which the Castillos can of course then turn around and pay back into the loan to reduce principal - effectively achieving the forgiveness and other results sought.  This is presently moving in discussion on this side.

I will end by proposing that we continue our efforts along the line of settlement, rather then ramping up the litigation.  In addition, we can address any additional informal discovery if needed.

Best regards, George

---

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

Castillo 000043

**EXHIBIT PAGE 38**



Elizabeth Letcher <elizabethathera@gmail.com>

## FW: Castillo v. BANA

1 message

**Cynthia L. Singerman** <csingerman@heraca.org>                     Mon, Aug 12, 2013 at 5:52 PM
To: Elizabeth Letcher <eletcher@heraca.org>

Just got this.


Cynthia Singerman

Staff Attorney
Housing and Economic Rights Advocates (HERA)
Phone: (510) 271 8443
Fax: (707) 204 6358

This message contains information that is confidential and privileged. Unless you are the addressee (or
authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any
information contained in or attached to the message. If you have received the message in error, please
advise the sender by reply e-mail to csingerman@heraca.org, and delete the message.


**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Monday, August 12, 2013 3:46 PM
**To:** 'Cynthia L. Singerman'
**Subject:** RE: Castillo v. BANA


Cynthia, I just got an e-mail, as the bank mod dept is working on running a mock mod to look at payment
estimates after what will be a proposed reduction, and just let me know that I should get it by tomorrow
(midday) – this is on a rush there so working it up as quickly as possible.  Regards for now, George


George H. Keller
**Bryan Cave, LLP**


**From:** Cynthia L. Singerman [mailto:csingerman@heraca.org]
**Sent:** Monday, August 12, 2013 9:47 AM
**To:** Keller, George

Castillo 000054

**EXHIBIT PAGE 39**

**Subject:** RE: Castillo v. BANA

Hi George,

Do you have any breakdown of the offer to send to us at this point?

Thanks,

Cynthia Singerman

Staff Attorney
Housing and Economic Rights Advocates (HERA)
Phone: (510) 271 8443
Fax: (707) 204 6358

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to csingerman@heraca.org, and delete the message.

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

11/12/15, 7:13 AM

Castillo 000055

**EXHIBIT PAGE 40**

Gmail - Castillo/BANA                                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



Elizabeth Letcher <elizabethathera@gmail.com>

## Castillo/BANA
1 message

**Keller, George** <KellerG@bryancave.com>                          Tue, Aug 13, 2013 at 6:36 PM
To: Elizabeth Letcher <eletcher@heraca.org>

|        | Interest Rate | Step P&I   | Total Pmt (+ $712.06 escrow) | Effective Date |                        |
|--------|---------------|------------|------------------------------|----------------|------------------------|
| Step 1 | 2.000%        | $2,375.32  | $3,087.38                    | 10/1/2013      | 3 years                |
| Step 2 | 3.000%        | $2,596.81  | $3,308.87                    | 10/1/2016      | 1 year                 |
| Step 3 | 3.125%        | $2,624.01  | $3,336.07                    | 10/1/2017      | Remainder 18 yrs 4 mnths |

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

11/12/15, 7:13 AM

Castillo 000056

**EXHIBIT PAGE 42**

Gmail - Castillo/BANA                                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

11/12/15, 7:13 AM

Castillo 000057

**EXHIBIT PAGE 43**

**EXHIBIT PAGE 44**

Gmail - Castillo - Mods                                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



Elizabeth Letcher <elizabethathera@gmail.com>

## Castillo - Mods
1 message

**Keller, George** <KellerG@bryancave.com>                    Tue, Aug 13, 2013 at 7:16 PM
To: Elizabeth Letcher <eletcher@heraca.org>

Elizabeth – Here are pdfs of the prior mods (re only payment schedule) as well as run-throughs as they are working on
proposed calculations for this mod, in these, an application of an amount of $150,000 paid in (in addition to $60,000).
Regards for now, George

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this
transmission in error, please reply to the sender to advise of the error and delete this transmission and any
attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S.
federal tax advice contained in this communication (including any attachments) is not intended or written to be used,
and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

**4 attachments**

📎 **Castillo 2010 Mod.PDF**
    134K

📎 **Castillo 2012 Mod.PDF**
    28K

📎 **Castillo 2013 Mod.PDF**
    104K

Castillo 000058

**EXHIBIT PAGE 45**

https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



**Castillo Mock-Up Mods.PDF**
199K

11/12/15, 7:09 AM

Castillo 000059

**EXHIBIT PAGE 46**

Date:              July 2, 2010
RE: BA2 Loan#      872290897
Mortgagor:         JASON S CASTILLO
Property Address:  920 VIA VIVALDI
                   MORGAN HILL, CA 95037

Please Return to:
BAC Home Loans Servicing, LP
Attn Home Retention Division
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

## STEP RATE LOAN MODIFICATION ADDENDUM
## TO LOAN MODIFICATION AGREEMENT

The Step Rate Loan Modification Agreement Addendum (the "Addendum") is made this 2nd day of July 2010, and is incorporated into and shall be deemed a part of that certain Loan Modification Agreement of even date herewith (the "Agreement") between JASON CASTILLO, JENNIFER CASTILLO and BAC Home Loans Servicing, LP ("Lender"), which agreement amends and supplements that certain Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument").

### THIS ADDENDUM CONTAINS PROVISIONS PROVIDING FOR SCHEDULED INCREASES IN THE INTEREST RATE AND MONTHLY PAYMENT

In consideration of the mutual promises and agreements exchanged and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Agreement, Security Instrument or the promissory note (the "Note"), except as specifically provided for herein):

**I.  Interest Rate and Monthly Payment Increases.**

Notwithstanding anything to the contrary contained in the Note or referenced in the Agreement, the monthly principal and interest payment shall be calculated as follows:

The interest rate used to determine the monthly Interest payment shall change on the 1st day of August 2010 and on that day of every twelfth month thereafter (each such date, a "Change Date"), with the last such change date occurring on the 1st day of August 2016.

a)  The First Change Date shall occur on the 1st day of August 2010 at which time the interest rate shall be 3.000%. The monthly interest shall be $1,656.16 and shall be due and payable on 1st day of September 2010 and continuing thereafter on the same day of each succeeding month until 1st day of August 2011.

b)  The Second Change Date shall occur on the 1st day of August 2011 at which time the interest rate shall be 3.000%. The monthly interest shall be $1,656.16 and shall be due and payable on 1st day of September 2011 and continuing thereafter on the same day of each succeeding month until 1st day of August 2012.

c)  The Third Change Date shall occur on the 1st day of August 2012 at which time the interest rate shall be 4.000%. The monthly interest shall be $2,208.22 and shall be due and payable on 1st day of September 2012 and continuing thereafter on the same day of each succeeding month until 1st day of August 2013.

d)  The Fourth Change Date shall occur on the 1st day of August 2013 at which time the interest rate shall be 4.000%. The monthly Principal and Interest shall be $3,532.65 and shall be due and payable on 1st day of September 2013 and continuing thereafter on the same day of each succeeding month until 1st day of August 2014.

e)  The Fifth Change Date shall occur on the 1st day of August 2014 at which time the interest rate shall be 5.000%. The monthly Principal and Interest shall be $3,866.33 and shall be due and payable on 1st day of September 2014 and continuing thereafter on the same day of each succeeding month until 1st day of August 2015.

f)  The Sixth Change Date shall occur on the 1st day of August 2015 at which time the interest rate shall be 5.000%. The monthly Principal and Interest shall be $3,866.33 and shall be due and payable on 1st day of September 2015 and continuing thereafter on the same day of each succeeding month until 1st day of August 2016.


Castillo 000060

**EXHIBIT PAGE 47**

a) 3.000%. The monthly Interest shall be $1,656.16 and shall be due and payable on 1st day of September 2010 and continuing thereafter on the same day of each succeeding month until 1st day of August 2011.

b) The Second Change Date shall occur on the 1st day of August 2011 at which time the interest rate shall be 3.000%. The monthly Interest shall be $1,656.16 and shall be due and payable on 1st day of September 2011 and continuing thereafter on the same day of each succeeding month until 1st day of August 2012.

c) The Third Change Date shall occur on the 1st day of August 2012 at which time the interest rate shall be 4.000%. The monthly Interest shall be $2,208.22 and shall be due and payable on 1st day of September 2012 and continuing thereafter on the same day of each succeeding month until 1st day of August 2013.

d) The Fourth Change Date shall occur on the 1st day of August 2013 at which time the interest rate shall be 4.000%. The monthly Principal and Interest shall be $3,532.65 and shall be due and payable on 1st day of September 2013 and continuing thereafter on the same day of each succeeding month until 1st day of August 2014.

e) The Fifth Change Date shall occur on the 1st day of August 2014 at which time the interest rate shall be 5.000%. The monthly Principal and Interest shall be $3,866.33 and shall be due and payable on 1st day of September 2014 and continuing thereafter on the same day of each succeeding month until 1st day of August 2015.

f) The Sixth Change Date shall occur on the 1st day of August 2015 at which time the interest rate shall be 5.000%. The monthly Principal and Interest shall be $3,866.33 and shall be due and payable on 1st day of September 2015 and continuing thereafter on the same day of each succeeding month until 1st day of August 2016.

Thereafter, monthly principal and interest payment shall remain the same until such time as the principal and interest due under the Note are paid in full. If on 1st day of January 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by the Agreement and this Addendum, the Borrower shall pay these amounts in full on the Maturity Date.

BAC Home Loans Servicing, LP

By _____

Date   7/14/10

JASON CASTILLO

JENNIFER CASTILLO

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.     BA2 Loan# 872290897     Page 1 of 1

Castillo 000061

**EXHIBIT PAGE 48**

## Keller, George

| | |
|---|---|
| **From:** | Keller, George |
| **Sent:** | Monday, November 19, 2012 1:44 PM |
| **To:** | 'Elizabeth Letcher'; 'William Kennedy'; 'Cynthia Singerman' |
| **Subject:** | CASTILLO/BANA - Proposed  Mod Questions |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

| | |
|---|---|
| **Categories:** | Blue Category |

*Castillo v. Bank of America, N.A. et al.*
Santa Clara Sup. Ct. Case No. 112 CV 233256

Greetings all:

The following addresses the questions from the two prior prior e-mails regarding BANA's proposed modification.  Please bear in mind that some of the amounts below might change slightly, for example the stated rate of 3.375% which might be slightly higher, or lower, depending on the final confirmation date for the proposal.

You asked what will be the total principal balance: $505,417.00.  The initial $594,000 loan amount plus, with some approximation, $91,000 in delinquent interest, $16,000 in delinquent escrow, and $1,000 in delinquent fees, amounts to a total $702,000, from which is then deducted (a) the $150,000 forbearance with no interest, remaining due as a balloon payment at the end of the term, and (b) $47,000 forgiveness for fees and charges incurred from the time of the initial 2010 modification, thus getting down to the $505,417.00.

The effective date of the modification is December 1, 2012.  However, following the Castillos' acceptance, BANA will need to repurchase the modification from current investor Well Fargo.  That will likely take at least thirty days, pushing the date of their first payment to January 1 or, quite frankly most likely, February 1, 2013.  Assuming that is the case, the bank will also include these prior months (December 2012, likely January 2113) as a book loss under the forgiveness (in addition to the $47,000 noted above).

P&I calculations are as follows: At 2% = $1,530; at 3% = $1,790; and at 3.375% = $1,891.  To those will be added escrow monthly payments, e.g. currently calculated at $618 under the example in my earlier e-mail.

While this proposed modification could be described as mirroring a HAMP mod in some respects, the bank does not look at it that way but, rather, simply as a unique in-house mod designed specifically in order to honor the Castillos' 2010 modification as closely as possible, while eating up fees and so forth due to servicing error and the earlier mod's inoperability.  In addition, the 2010 mod was interest only, while this proposal is of course principal and interest.

On a last question, the modification is not eligible for principal reduction under the AG settlement because it does not fall into any of the categories of loans that the settlement covered.  In particular, it was not a fully delegated loan.

I trust that the above makes good headway into the questions raised in the earlier e-mails, but of course if there is any more specific questions raised, as always just let me know.


Best regards,
George Keller

---

**George H. Keller**
**Bryan Cave, LLP**
333 Market Street | 25th Floor

1

Castillo 000062

**EXHIBIT PAGE 49**

## Keller, George

| | |
|---|---|
| **From:** | Keller, George |
| **Sent:** | Friday, November 09, 2012 10:51 AM |
| **To:** | 'William Kennedy'; Elizabeth Letcher; Cynthia Singerman |
| **Subject:** | Castillo/BANA - Modification Offer |

| | |
|---|---|
| **Importance:** | High |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

*Castillo v. Bank of America, N.A. et al.*
Santa Clara Sup. Ct. Case No. 112 CV 233256
Greetings all:

Bank of America, N.A. (BANA) has prepared the following modification offer for your clients, the Castillos.  Please be advised that the figures may change slightly, however, they should be close if not exact; and this modification offer is contingent to final approval.

The proposed modification plan with related details is as follows:

- The bank will forgive $47,000 for fees and interest charged.
- Principal & Interest step payment will be offered:
  - 2% for 3 years;
  - 3% for 1 year following;
  - Then fixed at 3.375% for the term.
- Principal & interest payment will be started at $1,530, which is the 2% rate.
- Escrow monthly payment is currently calculated at $618, therefore, the initial monthly payment per above would be $1,530 plus $618 appr. escrow totaling $2,148.
- The term will be extended to 480 months.
- Also $150,000 will be deferred with no charged interest, however, that amount will remain due at the end of term.
- The bank will fix credit from September 2010 to present.

If the Castillos agree to the terms, BANA will need to repurchase the loan from the current investor, defendant Wells Fargo Bank; however, BANA we will not do that until we have confirmed an agreement to the modification.

Of course, please do let me know of any questions, etc.and I look forward to hearing back from you when you have had an opportunity to review the above modification offer with the Castillos.

Best regards,
George Keller

**George H. Keller**
**Bryan Cave, LLP**
333 Market Street | 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

1

Castillo 000063

**EXHIBIT PAGE 50**

RECORDING REQUESTED BY:
Bank of America, N.A.
**Attn Home Retention Division: CA6-919-01-43**
**400 National Way**
**Simi Valley, CA 93065**

Loan #:  872290897

-----SPACE ABOVE THIS LINE FOR RECORDER'S USE-----

## LOAN MODIFICATION AGREEMENT
### (Adjustable Interest Rate-Recorded)

This Loan Modification Agreement ("Agreement"), made this 10th day of May 2013, between JASON S CASTILLO, JENNIFER CASTILLO and Bank of America, N.A. (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 7th day of December 2005 and recorded on the 23rd day of December 2005 in Book No. None, Page No. None as Document No. 18741835 in the Official Records of Santa Clara County, in the State of  CALIFORNIA , and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 920 VIA VIVALDI, MORGAN HILL, CA  95037.

Legal

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1  As of the 1st day of June 2013, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $657,162.88, consisting of the amount(s) loaned to the Borrower by Lender, which may include, but are not limited to, any past due principal payments, interest, fees and/or costs capitalized to date. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

2  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance from the 1st day of May 2013 of the modified term at the yearly rate of (See Below Schedule).  The Borrower promises to make monthly payments of (See Below Schedule) beginning on the 1st day of June 2013. If on the 1st day of January 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

**The payment schedule for this modified Loan is as follows:**

| Years | Interest Rate | Interest Rate Change Date | Type of Payment | Monthly Payment | Payment Begins on | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------|-----------------|-------------------|----------------------------|
| 1-3 | 2.000% | 6/1/2013 | Principal and Interest | $3,006.89 | 6/1/2013 | 36 |
| 4 | 3.000% | 6/1/2016 | Principal and Interest | $3,291.86 | 6/1/2016 | 12 |
| 5 | 3.125% | 6/1/2017 | Principal and Interest | $3,326.90 | 6/1/2017 | 224 |

3  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5  The Borrower will make such payments at PO Box 515503, Los Angeles, CA 90051-6803 or at such other place as the Lender may require.

Castillo 000064

**EXHIBIT PAGE 51**

## MODIFICATION ANALYSIS



### Loan Information

| | |
|---|---|
| Tuesday, August 13, 2013 | 11:24:39 AM |

**Foreclosure Status**

Foreclosure Sale Date: N/A

**Postponement or Restart state:**

| | |
|---|---|
| Prepared by | Gabriela Ramos Suarez |
| CHL Loan No: | 872290897 |
| Investor: | Wells Fargo |
| Delegation: | Limited |
| Investor Number: | 7021933 |
| Investor Loan #: | 6746039210 |
| Borrower | JASON S CASTILLO |
| Co-Borrower: | JENNIFER CASTILLO |
| Loan Type: | 1C CV-JMB-ARM |
| Current Due Date: | 5/1/2013 |
| Maturity Date: | 1/1/2036 |

**Property Address**
920 VIA VIVALDI
MORGAN HILL, CA 95037

**Mailing Address**
920 VIA VIVALDI
MORGAN HILL   CA  95037 - 5862

# Properties owned?:
Does Bor has a 2nd?:
Bor 2nd Pmt?:
Combine 1st & 2nd PTI

Postpone Sale Date, Place on hold $50 on day of sale

**Property Values**

| | |
|---|---|
| Most Recent BPO: | $693,000.00 |
| Loss/Gain: | $0.00 |
| Current LTV | 85.85% |

**Current Loan Information**

| | |
|---|---|
| Principal Bal: | $594,965.00 |
| Interest Rate: | 5.500% |
| P&I Payment: | $2,726.92 |
| Pmt W/Escrow | $3,411.72 |
| Current DTI: | 47.41% |
| Current PTI: | 35.43% |

### Loan Quality

| | |
|---|---|
| Orig FICO Score: | 0 |
| Dot History: | 44FFFFFF |
| Payments Made: | 39 |
| Current Term: | 321 |
| Remaning Term: | 268 |

### Origination

| | |
|---|---|
| Origination Appr: | $850,000.00 |
| Original UPB: | $594,965.00 |
| Origination Date: | 12/7/2005 |
| Branch Code: | 21615 |
| Purpose Code: | 111 |

### Financial Information

| | |
|---|---|
| Monthly Gross income: | $9,628.67 |
| Monthly Net income: | $8,764.17 |
| Total Debt: | $4,554.56 |
| Total Expenditures: | $8,529.56 |
| Unencumbered: | $234.61 |

### Loan Breakdown

| | |
|---|---|
| Late Fee | $0.00 |
| Property Inspection | $135.00 |
| Foreclosure Fees | $0.00 |
| Foreclosure Exp | $0.00 |
| Recording Fees | $63.00 |
| Title Fees | $863.00 |
| Court Costs | $0.00 |
| Oth. Fees/ NSF/POD | $1,758.66 |
| Bankruptcy Fees | $0.00 |
| Bankruptcy Exp. | $0.00 |
| Total Fees | $22,280.63 |
| Partial Fees | $210,000.00 |
| CLRD PARTIAL: | $0.00 |
| Deferred Principal: | $0.00 |
| Bor. Contribution: | $0.00 |
| Total UFFs/Partial | $210,000.00 |

**Fees To Be Paid**

| | |
|---|---|
| P & I Payment | $0.00 |
| Deling. Escrow | $19,460.77 |
| Late Fees | $0.00 |
| Inspection Fees | $135.00 |
| Atty Fees | $926.00 |
| Deling. Int. | $187,719.37 |
| Fees/NSF/POD | $1,758.86 |
| Total | $210,000.00 |

**Escrow Information**

| | |
|---|---|
| New Escrow Pmt: | $712.06 |
| Deling. Escrow: | $19,460.77 |

Principal Forgiveness Amt: $0.00
Tier: No Tier
Forgiveness amount at 12 months $0.00
Forgiveness amount at 24 months $0.00

| | |
|---|---|
| Capitalizing | ($81,887.89) |
| # of payments capped | 53 |
| Months Capping | May-09  To  Sep-13 |
| New Effective Date | 10/1/2013 |
| New UPB | $513,077.11 |
| Capped over Orig. UPB | ($81,887.89) |
| Total Cap Fees | $0.00 |
| Total Cap Escrow | $0.00 |
| Total Fees & Escrow | $0.00 |
| Delinquent Interest | ($81,887.89) |

Cutoff date End of the Month
Use Un-Recorded Documents
Next Arm Change   1/1/2014
2.250%   Ceiling  10.500%

### Modification Financial Analysis

**Capped Only Loan Modification**

| | |
|---|---|
| Modified Rate | 5.500% |
| Modified P&I | $3,329.01 |
| Payment W/ Escrow | $4,041.07 |
| Modified LTV | 74.04% |
| Debt to income: | 53.64% |
| Payment to income: | 41.97% |
| Combine 1st & 2nd PTI: | |
| Post Unencumbered: | ($394.74) Int. |

**Modified Rate Reduction (P&I)**

| | |
|---|---|
| Rate: | 2.000% |
| P&I Payment: | $2,375.32 |
| Total P&I Payment: | $3,087.38 |
| Modified LTV | 74.04% |
| Debt to income: | 44.64% |
| Payment to income: | 32.66% |
| Combine 1st & 2nd PTI: | |
| Post Unencumbered: | $558.95 Int. |

**Qualified for Modification**

**Modified at interest only**

| | |
|---|---|
| Rate: | |
| Interest Payment: | |
| Total P&I Payment: | |
| Modified LTV | |
| Debt to income: | |
| Payment to income: | In |
| Combine 1st & 2nd PTI: | |
| Post Unencumbered: | |

| # | Rate | Payment | Month Int | Running Int | I/O |
|---|---|---|---|---|---|
| 1 | 5.5 | 2726.92 | 2726.92 | 2726.92 | Y |
| 2 | 5.5 | 2726.92 | 2726.92 | 5453.84 | Y |
| 3 | 5.5 | 2726.92 | 2726.92 | 8180.76 | Y |
| 4 | 5.5 | 2726.92 | 2726.92 | 10907.68 | Y |
| 5 | 5.5 | 2726.92 | 2726.92 | 13634.6 | Y |
| 6 | 5.5 | 2726.92 | 2726.92 | 16361.52 | Y |
| 7 | 5.5 | 2726.92 | 2726.92 | 19088.44 | Y |
| 8 | 5.5 | 2726.92 | 2726.92 | 21815.36 | Y |
| 9 | 5.5 | 2726.92 | 2726.92 | 24542.28 | Y |
| 10 | 5.5 | 2726.92 | 2726.92 | 27269.2 | Y |
| 11 | 5.5 | 2726.92 | 2726.92 | 29996.12 | Y |
| 12 | 5.5 | 2726.92 | 2726.92 | 32723.04 | Y |
| 13 | 5.5 | 2726.92 | 2726.92 | 35449.96 | Y |
| 14 | 5.5 | 2726.92 | 2726.92 | 38176.88 | Y |
| 15 | 5.5 | 2726.92 | 2726.92 | 40903.8 | Y |
| 16 | 5.5 | 2726.92 | 2726.92 | 43630.72 | Y |
| 17 | 5.5 | 2726.92 | 2726.92 | 46357.64 | Y |
| 18 | 5.5 | 2726.92 | 2726.92 | 49084.56 | Y |
| 19 | 5.5 | 2726.92 | 2726.92 | 51811.48 | Y |
| 20 | 5.5 | 2726.92 | 2726.92 | 54538.4 | Y |
| 21 | 5.5 | 2726.92 | 2726.92 | 57265.32 | Y |
| 22 | 3.125 | 2860.22 | 1549.39 | 58814.71 | N |
| 23 | 3.125 | 2860.22 | 1545.97 | 60360.68 | N |
| 24 | 3.125 | 2860.22 | 1542.55 | 61903.23 | N |
| 25 | 3.125 | 2860.22 | 1539.12 | 63442.35 | N |
| 26 | 3.125 | 2860.22 | 1535.68 | 64978.03 | N |
| 27 | 3.125 | 2860.22 | 1532.23 | 66510.26 | N |
| 28 | 3.125 | 2860.22 | 1528.77 | 68039.03 | N |
| 29 | 3.125 | 2860.22 | 1525.31 | 69564.34 | N |

**Management Approval Level**

| | | |
|---|---|---|
| Team Leader: | | Date |
| Manager: | | Date |
| AVP: | | Date |
| VP:  g | | Date |
| 1st VP: | | Date |

| | Rate | Step P&I | Total Payment | Effective Date | PTI | I/O |
|---|---|---|---|---|---|---|
| Step 1 | 2.000% | $2,375.32 | $3,087.38 | 10/1/2013 | 32.06% | No |
| Step 2 | 3.000% | $2,596.81 | $3,308.87 | 10/1/2016 | 34.36% | No |
| Step 3 | 3.125% | $2,624.01 | $3,336.07 | 10/1/2017 | 34.65% | No |

JASON S CASTILLO          Account No:  872290897

Castillo 000065

**EXHIBIT PAGE 52**

## MODIFICATION ANALYSIS

| # | Rate | Payment | Month Int | Running Int | IO |
|---|------|---------|-----------|-------------|-----|
| 30 | 3.125 | 2860.22 | 1521.83 | 71086.17 | N |
| 31 | 3.125 | 2860.22 | 1518.34 | 72604.51 | N |
| 32 | 3.125 | 2860.22 | 1514.85 | 74119.36 | N |
| 33 | 3.125 | 2860.22 | 1511.35 | 75630.71 | N |
| 34 | 3.25 | 2898.01 | 1568.15 | 77198.86 | N |
| 35 | 3.25 | 2898.01 | 1564.54 | 78763.4 | N |
| 36 | 3.25 | 2898.01 | 1560.93 | 80324.33 | N |
| 37 | 3.25 | 2898.01 | 1557.31 | 81881.64 | N |
| 38 | 3.25 | 2898.01 | 1553.68 | 83435.32 | N |
| 39 | 3.25 | 2898.01 | 1550.04 | 84985.36 | N |
| 40 | 3.25 | 2898.01 | 1546.39 | 86531.75 | N |
| 41 | 3.25 | 2898.01 | 1542.73 | 88074.48 | N |
| 42 | 3.25 | 2898.01 | 1539.06 | 89613.54 | N |
| 43 | 3.25 | 2898.01 | 1535.38 | 91148.92 | N |
| 44 | 3.25 | 2898.01 | 1531.69 | 92680.61 | N |
| 45 | 3.25 | 2898.01 | 1527.99 | 94208.6 | N |
| 46 | 3.125 | 2861.57 | 1465.65 | 95674.25 | N |
| 47 | 3.125 | 2861.57 | 1462.01 | 97136.26 | N |
| 48 | 3.125 | 2861.57 | 1458.37 | 98594.63 | N |
| 49 | 3.125 | 2861.57 | 1454.72 | 100049.35 | N |
| 50 | 3.125 | 2861.57 | 1451.05 | 101500.4 | N |
| 51 | 3.125 | 2861.57 | 1447.38 | 102947.78 | N |
| 52 | 3.125 | 2861.57 | 1443.7 | 104391.48 | N |
| 53 | 3.125 | 2861.57 | 1440 | 105831.48 | N |

Castillo 000066

**EXHIBIT PAGE 53**

JASON S CASTILLO          Account No:   872290897

https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



Elizabeth Letcher <elizabethathera@gmail.com>

## RE: Castillo - Mods
1 message

**Keller, George** <KellerG@bryancave.com>                                    Wed, Aug 14, 2013 at 3:37 PM
To: Elizabeth Letcher <eletcher@heraca.org>

Elizabeth,

Here is the explanation thus far:

From my review of the file it would appear the figure provided of an escrow shortage is approximately $3700.
Considering the current escrow and the installments to be spread over a five year period to attend to the shortage, it is
estimated that the revised escrow payment is the $712 figure.  These figures typically are cushioned in the anticipation
of an increase in real estate taxes during the year and to avoid further shortage.

Regards, George



**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Tuesday, August 13, 2013 5:47 PM
**To:** Keller, George
**Subject:** RE: Castillo - Mods

George:

I'm just going to ask a few questions now, as they will undoubtedly come up.

11/12/15, 7:08 AM

Castillo 000069

**EXHIBIT PAGE 55**

Does the 700+ escrow payment include an escrow shortage?  If so, how much?  Over how much time is the escrow shortage spread – or, if it's not an escrow shortage, how much is the reserve amount and when would you expect their payments to go to 1/12 of insurance plus taxes?  (In the records, I'm seeing what looks like $583/$684 with reserve for the escrow in recent analyses).

Thanks,

Elizabeth

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Tuesday, August 13, 2013 5:16 PM
**To:** 'Elizabeth Letcher'
**Subject:** Castillo - Mods

Elizabeth – Here are pdfs of the prior mods (re only payment schedule) as well as run-throughs as they are working on proposed calculations for this mod, in these, an application of an amount of $150,000 paid in (in addition to $60,000). Regards for now, George

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

Castillo 000070

**EXHIBIT PAGE 56**

**EXHIBIT PAGE 57**

Gmail - RE: Castillo v. BANA - Stip for Settlement                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...





Elizabeth Letcher <elizabethathera@gmail.com>

## RE: Castillo v. BANA - Stip for Settlement

1 message

**Keller, George** <KellerG@bryancave.com>                          Wed, Aug 21, 2013 at 4:11 PM
To: Elizabeth Letcher <eletcher@heraca.org>

Elizabeth, I did want to at least confirm the settlement in principal while ironing out related details, as the mod group has confirmed that it is already starting on the modification immediately, with an effective date of October 1, 2013. And those terms being, (1) $150,000 principal forgiveness by the bank, (2) in addition to the $60,000 fees & interest forgiveness, an additional $8,695.22 forgiveness for the intended result that fees and interest are forgiven from Sept. 2010 through the month of September 2013, (3) $ redacted payment to the Castillos through counsel, (4) modification as attached, including the previous revisions, with payment schedule terms effective October 1, 2013 (e.g. the attached mock-up did *not* reflect the added 6 mnth fee & interest forgiveness); and (5) general release, and disparagement/confidentiality revision, and remaining provisions (Evid. Code etc.).  The final date for execution may be a few days later than indicated for routing purposes etc. as the mod is put up in place.  Let me end with a thanks for cooperation in handling this, regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Wednesday, August 21, 2013 12:36 PM
**To:** Keller, George
**Subject:** Castillo v. BANA - Stip for Settlement

Here's the word version.

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

Castillo 000072

**EXHIBIT PAGE 58**

Gmail - RE: Castillo v. BANA - Stip for Settlement                https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

 **moc analysis 2.pdf**
25K

11/12/15, 7:07 AM

Castillo 000073

**EXHIBIT PAGE 59**

**Subject:** RE: Castillo v BANA

**From:** Keller, George (KellerG@bryancave.com)

**To:** eletcher@heraca.org;

**Cc:** csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com;

**Date:** Wednesday, September 4, 2013 5:40 PM

And Elizabeth and all, I have been here working on this at the moment (of course) when received your e-mail below – I had just received confirmation a short while ago (4:45) that the permanent loan modification was approved, at BANA, but the permanent modification documents could not then be sent to the borrower because the loan had been service released at the same point (this is now the recap of Friday-Tuesday). As already discussed many times with BANA, BANA has indicated that new servicer Nationstar still has to honor the perm modification given the confirmed approval under BANA, even though the agreement had not/could not then be sent out (as this was the whole point over the last week). What I am doing now is channeling through other contacts at BANA in getting the appropriate contact at Nationstar to issue and forward the mod itself. I have, however, also just forward your statement for an explanation on where it fits in – bear in mind that as a bookloss the bank would indeed be paying itself what might initially appear (depending on the purpose of that statement) as amounts due, but needless to say the numbers do not immediately match up. I will keep you posted of course (I am on my way out shortly as by now I will have to hold on for further responses). Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

From: Elizabeth Letcher [mailto:eletcher@heraca.org]
Sent: Wednesday, September 04, 2013 5:10 PM
To: Keller, George
Cc: csingerman@heraca.org; William Kennedy
Subject: Castillo v BANA

George,

I thought you might be interested to see the statement Ms. Castillo received which was generated Thursday. It looks as though at least something had happened to the loan before transfer, so I'm encouraged.

Elizabeth

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel. (510) 271-8443, ext. 302
fax (650) 392-8255

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any

Castillo 000076

**Subject:**   RE: Castillo v. BANA

**From:**   Keller, George (KellerG@bryancave.com)

**To:**   eletcher@heraca.org;

**Cc:**   csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com;

**Date:**   Tuesday, September 17, 2013 11:18 AM

Greetings Elizabeth,

The below is perfectly fine with me so do let's hold off.  The modification is prepared and, over the last day (yesterday afternoon/this morning) BANA has been routing with Nationstar again in advance for implementation purposes, for BANA to then issue it on out.  That should then be through me, so I am waiting.

Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Monday, September 16, 2013 5:30 PM
**To:** Keller, George
**Cc:** Cynthia Singerman; William Kennedy
**Subject:** Castillo v. BANA

George:

Attached are the endorsed, filed Third Amended Complaint and order granting leave to file.   I'm trying to keep time down at this juncture and so will hold off on filing a notice of entry of order, unless you would specifically like one, for a few days in the hopes that we can move toward resolution.

Any update?

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel.  (510) 271-8443, ext. 302
fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or

**Subject:** RE: Castillo v. BANA

**From:** Keller, George (KellerG@bryancave.com)

**To:** eletcher@heraca.org;

**Cc:** csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com;

**Date:** Monday, September 23, 2013 12:26 PM

Greetings Elizabeth and all,

BANA has been following through with Nationstar closing the loop for processing the modification with Nationstar's loan mod department for ultimate implementation.  As I have been copied on the exchanges, it has been going along in order and aware that it is a.s.a.p., and I am now just waiting for a final go ahead, to then issue the mod out to you and the Castillos.  I do expect the update shortly (within the next day or so).

Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Monday, September 23, 2013 12:15 PM
**To:** Keller, George
**Cc:** Cynthia Singerman; William Kennedy
**Subject:** Castillo v. BANA

George:

This short note is to check in on the status of the modification and settlement.   Please let me know the status of each.  It has now been over a month since we supposedly agreed on settlement terms.  Plaintiffs continue to rely on your assurances that the settlement is in order, and that we have fundamentally agreed on all the issues we identified as crucial settlement terms in August (except, of course, dates), to hold off on further litigation of this matter. I hope that we can resolve it shortly.

Elizabeth S. Letcher

Elizabeth S. Letcher
Director of Litigation
Housing and Economic Rights Advocates
tel.  (510) 271-8443, ext. 302
fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

Castillo 000084

**EXHIBIT PAGE 65**

Gmail - Castillo - Update                                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



Elizabeth Letcher <elizabethathera@gmail.com>

## Castillo - Update
1 message

**Keller, George** <KellerG@bryancave.com>                              Thu, Oct 3, 2013 at 4:50 PM
To: Elizabeth Letcher <eletcher@heraca.org>

Good afternoon Elizabeth – A while ago Nationstar informed BANA that Nationstar is "redrawing the docs under
Nationstar's name for execution.  Once this is done, we can send to you to send to counsel."  I have asked
how long that is expected to take (e.g. tomorrow, etc.) for us to finally get that mod document, but I am still waiting for
any reply.  Regards, George

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this
transmission in error, please reply to the sender to advise of the error and delete this transmission and any
attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S.
federal tax advice contained in this communication (including any attachments) is not intended or written to be used,
and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

Castillo 000088

**EXHIBIT PAGE 66**

| | |
|---|---|
| **Subject:** | RE: Castillo - Update |
| **From:** | Keller, George (KellerG@bryancave.com) |
| **To:** | eletcher@heraca.org; |
| **Cc:** | csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com; |
| **Date:** | Thursday, October 10, 2013 4:42 PM |

Greetings all, I have followed up yet again earlier today with Nationstar - for myself as well as for you all - and continue to wait for a reply, regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Wednesday, October 09, 2013 8:01 PM
**To:** Keller, George
**Cc:** Cynthia Singerman; William Kennedy
**Subject:** RE: Castillo - Update

Can you give us any sense of response time, on either the modification or the settlement agreement?

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

---

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Thursday, October 3, 2013 2:50 PM

Castillo 000089

**EXHIBIT PAGE 68**

**To:** 'Elizabeth Letcher'
**Subject:** Castillo - Update

Good afternoon Elizabeth – A while ago Nationstar informed BANA that Nationstar is "redrawing the docs under Nationstar's name for execution.  Once this is done, we can send to you to send to counsel." I have asked how long that is expected to take (e.g. tomorrow, etc.) for us to finally get that mod document, but I am still waiting for any reply.  Regards, George

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

**EXHIBIT PAGE 69**

**EXHIBIT PAGE 70**

| Subject: | RE: Castillo v. BANA |
|---|---|
| From: | Keller, George (KellerG@bryancave.com) |
| To: | csingerman@heraca.org; |
| Cc: | wkennedy@kennedyconsumerlaw.com; |
| Date: | Wednesday, October 16, 2013 1:00 PM |

Hi Cynthia, no updates – I have been checking on status about twice a week to Nationstar but receive no developments other than, as earlier indicated, it is "in preparation." I will mention that, internally here, others have mentioned that is no surprise as to turn around time, and I will continue to check. Regards for now, George

**George H. Keller**
**Bryan Cave, LLP**

**From:** Cynthia L. Singerman [mailto:csingerman@heraca.org]
**Sent:** Wednesday, October 16, 2013 12:54 PM
**To:** Keller, George
**Cc:** 'William Kennedy'
**Subject:** RE: Castillo v. BANA

Hey George,

I wanted to check in with you before our hearing tomorrow. At this time we have not seen the modification agreement from Nationstar or the finalized proposed settlement agreement. Please let me know by the end of today if there are any updates on the settlement.

Thanks,

Cynthia Singerman
Staff Attorney
Housing and Economic Rights Advocates (HERA)
Phone: (510) 271 8443
Fax: (707) 204 6358

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to csingerman@heraca.org, and delete the message.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

| Subject: | Castillo - Modification |
|---|---|
| From: | Keller, George (KellerG@bryancave.com) |
| To: | eletcher@heraca.org; csingerman@heraca.org; wkennedy@kennedyconsumerlaw.com; |
| Date: | Thursday, October 24, 2013 1:03 PM |

Greetings all,

Attached please find the modification for review and execution by the Castillos.

I am aware that it remains on BANA letterhead as originally prepared by BANA at the end of August/beginning of September, however, Nationstar has just confirmed to BANA and myself that it should be sent over to you *as is* for the Castillos' execution, which Nationstar will then honor and implement.

Thank you all for your patience and, of course, do let me know of any questions.

Best regards, George

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

---

## Attachments

- SF01DOCS-#167577-v1-Castillo_Modification_(872290897-C3_2129_8_281722).pdf (640.32KB)

Castillo 000134

**EXHIBIT 5 PAGE 73**

**Bank of America** 〰 Home Loans

September 6, 2013

Jason S Castillo
Jennifer Castillo
920 Via Vivaldi
Morgan Hill, CA 95037

**Loan Number: 872290897**

Dear Jason S Castillo and Jennifer Castillo:

**Your mortgage is approved for a modification.**

**Please return the Modification Agreement by September 21, 2013.**

**Make your first payment by October 1, 2013.**

We are pleased to inform you that you have been approved for a loan modification. If you accept the modification, your mortgage will soon be permanently modified with a more affordable monthly payment.

The enclosed Modification Agreement includes the new terms of your modified mortgage that will go into effect after we receive your completed documents. Please also carefully read the enclosed Clarity Commitment®, which explains many of your new loan terms. If you have questions, please call me at 1.800.669.6650.

**How to accept this offer**
To accept this modification offer, all borrowers must sign two copies of the Modification Agreement in front of a notary and then return them to us in the enclosed pre-paid envelope by September 21, 2013. Please mail the two signed copies of the Modification Agreement to: Bank of America, N.A., 11802 Ridge Parkway, Ste 100 HRM, Broomfield, CO 80021. Please keep the third copy for your records.

We appreciate your cooperation and look forward to taking the final steps to providing you with affordable mortgage payments.

Sincerely,

Alisha Garcia
Home Loan Team
Bank of America, N.A.

**P.S. For your convenience, we invite you to enroll in our PayPlan services program. Your monthly mortgage payment can be automatically debited from your designated checking or savings account. To learn how to sign up, please review the attached PayPlan Enrollment Form.**

Enclosures: (1) Modification Agreement, (2) Notary Instructions, (3) Clarity Commitment, (4) PayPlan Enrollment Form & Electronic Payment Service Agreement, (5) Pre-Paid Envelope

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. However, the purpose of this communication is to offer you a permanent loan modification that may help you bring or keep your loan current through affordable payments.

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.

Mortgages funded and administered by an 🏠 Equal Housing Lender.
♻ Protect your personal information before recycling this document.

C3_2129-8
Castillo 000094

**EXHIBIT PAGE 74**

RECORDING REQUESTED BY:
Bank of America, N.A.
Attn: Home Retention Division: CA6-919-02-46
400 NATIONAL WAY
Simi Valley, CA 93065

Loan Number: 2129208587229089795037

This document was prepared by _____ Bank of America, N.A. _____

_____ *SPACE ABOVE THIS LINE FOR RECORDER'S USE* _____

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective on the date set forth below, between JASON S CASTILLO AND JENNIFER CASTILLO, (the "Borrower(s)") and Bank of America, N.A. ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 7th of December, 2005 and in the amount of $594,965.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 920 Via Vivaldi, Morgan Hill, CA, 95037. (See Exhibit A for Legal Description if applicable) "Property"

See Exhibit B for assignments of record if applicable

If my representations in Section 1 below continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property and (2) the Note secured by the Mortgage, and any previous modifications to the Mortgage and/or Note. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 1 of 11 pages)

WF-281722                                                          8116 08-09

Castillo 000095

**EXHIBIT PAGE 75**

I have received three copies of this Agreement. After I sign and return two copies of this Agreement to Lender, I will retain the other copy for my records. This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1.  **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:

I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

A.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A Permissible change would be any transfer that the lender is required by law to allow.

B.  I have provided documentation for all income that I receive and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

C.  Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

**MULTISTATE MODIFICATION AGREEMENT --** Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 2 of 11 pages)



WF-281722                                                                 8116 08-09

Castillo 000096

**EXHIBIT PAGE 76**

2.  **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A.  If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents; and

   B.  I understand that the Loan Documents will not be modified unless and until (1) I return signed and notarized copies of this Agreement to Lender, (2) the Lender accepts this Modification by signing it, and (3) the Modification Effective Date (as defined in Section 3 below) has occurred. I further understand and agree that Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

3.  **The Modification**. If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on October 1, 2013 (the "Modification Effective Date"). The Maturity Date will be: January 1, 2036.

   A.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new principal balance of my Note will be $504,309.79 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means that interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   B.  Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of September 1, 2013 and the first new monthly payment on the New Principal Balance will be due on October 1, 2013. My payment schedule for the modified Loan is as follows:

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 3 of 11 pages)



WF-281722                                                                                    8116 08-09

Castillo 000097

**EXHIBIT PAGE 77**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|-----------------------------|
| 1-3 | 2.000% | 09/01/2013 | $2,334.74 | $712.06 May adjust periodically | $3,046.80 May adjust periodically | 10/01/2013 | 36 |
| 4 | 3.000% | 09/01/2016 | $2,552.44 | May adjust periodically | May adjust periodically | 10/01/2016 | 12 |
| 5-23 | 3.125% | 09/01/2017 | $2,579.17 | May adjust periodically | May adjust periodically | 10/01/2017 | 220 |

*If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.B. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

C. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4. **Additional Agreements**. Lender and I agree to the following:

A. All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing.

B. This Agreement supersedes the terms of any modification, forbearance, or loan workout plan that I previously entered into with Lender.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 4 of 11 pages)



WF-281722                                                                          8116 08-09

Castillo 000098

**EXHIBIT PAGE 78**

C.  I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D.  The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.  Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 5 of 11 pages)



WF-281722                                                                        8116.08-09

Castillo 000099

**EXHIBIT PAGE 79**

F.  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F.  I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G.  On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 6 of 11 pages)



WF-281722                                                                                       8116 08-09

Castillo 000100

**EXHIBIT PAGE 80**

interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand.

H.  On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.   Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J.  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification.  Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.  I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement; or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. A corrected Agreement will be provided to me and this

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 7 of 11 pages)



WF-281722                                                                                           8116 08-09

Castillo 000101

**EXHIBIT PAGE 81**

Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign such corrected Agreement, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

L.   OPTIONAL PRODUCTS PURCHASED AFTER CLOSING. Any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment, will (1) remain in force as long as I add the amount due and owing to my Total Monthly Payment each month and (2) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents. If I have questions about any optional product(s) I may have purchased, I should call Bank of America at 1.800.641.5298.

M.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this shall be referred to as the "Documents." I will deliver the Documents within ten (10) days after I receive Lender's written request for such replacement.

If the principal balance of my loan increased as a result of this modification, the mortgage insurance premiums, if any, on my loan may increase. If my mortgage insurance premium increases, my monthly mortgage payment will be higher. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the higher unpaid principal balance.

**MULTISTATE MODIFICATION AGREEMENT** -- Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 8 of 11 pages)



WF-281722                                                                                    8116 06-09

Castillo 000102

**EXHIBIT PAGE 82**

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

_____
Jason S Castillo
(Must Be Signed Exactly As Printed)

_____
Date

_____
Jennifer Castillo
(Must Be Signed Exactly As Printed)

_____
Date

_____[Space below this line for Acknowledgement]_____

STATE OF _____

COUNTY OF _____

On the ___ day of _____ in the year _____ before me, _____
Notary Public, personally appeared Jason S Castillo and Jennifer Castillo, personally
known to me or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is (are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument, the person(s), or entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 9 of 11 pages)

WF-281722                                                                                8116.08-09

Castillo 000103

**EXHIBIT PAGE 83**

**DO NOT WRITE BELOW THIS LINE.**
*******************************************************************************************
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
    By: Urban Settlement Services, LLC, its attorney in fact

By: _____    Dated: _____

Name: _____
Title : _____

_____[Space below this line for Acknowledgement]_____

STATE OF _____
COUNTY OF _____.

On ___ day of _____ in the year _____ before me, _____
Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

**MULTISTATE MODIFICATION AGREEMENT – Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 10 of 11 pages)



WF-261722                                                                    8116 08-09

Castillo 000104

**EXHIBIT PAGE 84**

# CALIFORNIA NOTARY ACKNOWLEDGMENT
## (For use by California Notary, if applicable.)

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before Me,_____ Notary Public, personally
appeared

_____ who proved to me on the basis of satisfactory
evidence to be the person (s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws if the State of California that the
forgoing paragraph is true and correct.

WITNESS my hand and official seal.

_____Signature          NOTARY SEAL

_____

THIS CERTIFICATE MUST BE ATTACHED TO THE
DOCUMENT DESCRIBED AT RIGHT

                                    DOCUMENT: Loan Modification Agreement
                                    Number of Pages:
                                    Data of Document:
                                    Signer(s) Other Than Named
Above: _____

_____

_____

                                                        8192 09/09

**MULTISTATE MODIFICATION AGREEMENT – Single Family –
(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 11 of 11 pages)

WF-281722                                                8116 08-09

Castillo 000105

**EXHIBIT PAGE 85**

RECORDING REQUESTED BY:
Bank of America, N.A.
Attn: Home Retention Division: CA6-919-02-46
400 NATIONAL WAY
Simi Valley, CA 93065

Loan Number: 2129208587229089795037

This document was prepared by _____ Bank of America, N.A. _____

_____ *SPACE ABOVE THIS LINE FOR RECORDER'S USE* _____

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective on the date set forth below, between JASON S CASTILLO AND JENNIFER CASTILLO, (the "Borrower(s)") and Bank of America, N.A. ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 7th of December, 2005 and in the amount of $594,965.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 920 Via Vivaldi, Morgan Hill, CA, 95037. (See Exhibit A for Legal Description if applicable) "Property"

See Exhibit B for assignments of record if applicable

If my representations in Section 1 below continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property and (2) the Note secured by the Mortgage, and any previous modifications to the Mortgage and/or Note. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents.

**MULTISTATE MODIFICATION AGREEMENT** -- Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 1 of 11 pages)

WF-281722                                                                        8116 08-09

Castillo 000106

**EXHIBIT PAGE 86**

I have received three copies of this Agreement. After I sign and return two copies of this Agreement to Lender, I will retain the other copy for my records. This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1.  **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:

    I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    A.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A Permissible change would be any transfer that the lender is required by law to allow.

    B.  I have provided documentation for all income that I receive and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

    C.  Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                     (page 2 of 11 pages)



WF-261722                                                                          8116 08-09

Castillo 000107

**EXHIBIT PAGE 87**

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (1) I return signed and notarized copies of this Agreement to Lender, (2) the Lender accepts this Modification by signing it, and (3) the Modification Effective Date (as defined in Section 3 below) has occurred. I further understand and agree that Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

3. **The Modification**. If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on October 1, 2013 (the "Modification Effective Date"). The Maturity Date will be: January 1, 2036.

   A. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new principal balance of my Note will be $504,309.79 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means that interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   B. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of September 1, 2013 and the first new monthly payment on the New Principal Balance will be due on October 1, 2013. My payment schedule for the modified Loan is as follows:

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                     (page 3 of 11 pages)



WF-281722                                                                                      8116 08-09

Castillo 000108

**EXHIBIT PAGE 88**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-3 | 2.000% | 09/01/2013 | $2,334.74 | $712.06 May adjust periodically | $3,046.80 May adjust periodically | 10/01/2013 | 36 |
| 4 | 3.000% | 09/01/2016 | $2,552.44 | May adjust periodically | May adjust periodically | 10/01/2016 | 12 |
| 5-23 | 3.125% | 09/01/2017 | $2,579.17 | May adjust periodically | May adjust periodically | 10/01/2017 | 220 |

*If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.B. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

   C. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4. **Additional Agreements**. Lender and I agree to the following:

   A. All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing.

   B. This Agreement supersedes the terms of any modification, forbearance, or loan workout plan that I previously entered into with Lender.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**      (page 4 of 11 pages)


WF-261722

Castillo 000109

**EXHIBIT PAGE 89**

C.  I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D.  The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.  Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

**MULTISTATE MODIFICATION AGREEMENT – Single Family –**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 5 of 11 pages)



WF-281722                                                                                             6116-08-09

Castillo 000110

**EXHIBIT PAGE 90**

F.   I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G.   On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any

**MULTISTATE MODIFICATION AGREEMENT** – Single Family –
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 6 of 11 pages)

WF-281722                                                               8116 08-09

Castillo 000111

**EXHIBIT PAGE 91**

interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand.

H.  On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J.  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement; or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. A corrected Agreement will be provided to me and this

**MULTISTATE MODIFICATION AGREEMENT --** Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 7 of 11 pages)

WF-281722                                                          8115 08-09

Castillo 000112

**EXHIBIT PAGE 92**

Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign such corrected Agreement, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

L.   OPTIONAL PRODUCTS PURCHASED AFTER CLOSING. Any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment, will (1) remain in force as long as I add the amount due and owing to my Total Monthly Payment each month and (2) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents. If I have questions about any optional product(s) I may have purchased, I should call Bank of America at 1.800.641.5298.

M.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this shall be referred to as the "Documents." I will deliver the Documents within ten (10) days after I receive Lender's written request for such replacement.

If the principal balance of my loan increased as a result of this modification, the mortgage insurance premiums, if any, on my loan may increase. If my mortgage insurance premium increases, my monthly mortgage payment will be higher. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the higher unpaid principal balance.

**MULTISTATE MODIFICATION AGREEMENT** -- Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 8 of 11 pages)



WF-281722                                                                    8116 08-09

Castillo 000113

**EXHIBIT PAGE 93**

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

_____
Jason S Castillo
(Must Be Signed Exactly As Printed)

_____
Date

_____
Jennifer Castillo
(Must Be Signed Exactly As Printed)

_____
Date

_____[Space below this line for Acknowledgement]_____

STATE OF _____

COUNTY OF _____

On the ____ day of _____ in the year _____ before me, _____
Notary Public, personally appeared <u>Jason S Castillo and Jennifer Castillo</u>, personally
known to me or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is (are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument, the person(s), or entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 9 of 11 pages)

WF-281722                                                                      8116 08-09

Castillo 000114

**EXHIBIT PAGE 94**

**DO NOT WRITE BELOW THIS LINE.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____     Dated: _____

Name: _____
Title : _____

_____[Space below this line for Acknowledgement]_____

STATE OF _____
COUNTY OF _____

On ____ day of _____ in the year _____ before me, _____
Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 10 of 11 pages)


WF-261722                                                              8116 08-09

Castillo 000115

**EXHIBIT PAGE 95**

# CALIFORNIA NOTARY ACKNOWLEDGMENT
## (For use by California Notary, if applicable.)

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before Me,_____ Notary Public, personally
appeared

_____ who proved to me on the basis of satisfactory
evidence to be the person (s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws if the State of California that the
forgoing paragraph is true and correct.

WITNESS my hand and official seal.

_____Signature          NOTARY SEAL

THIS CERTIFICATE MUST BE ATTACHED TO THE
DOCUMENT DESCRIBED AT RIGHT

DOCUMENT: Loan Modification Agreement
Number of Pages:
Data of Document:
Signer(s) Other Than Named

Above: _____

_____

_____

8192 09/09

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 11 of 11 pages)

WF-261722                                                          8116 08-09

Castillo 000116

**EXHIBIT PAGE 96**

RECORDING REQUESTED BY:
Bank of America, N.A.
Attn: Home Retention Division: CA6-919-02-46
400 NATIONAL WAY
Simi Valley, CA 93065

Loan Number: 2129208587229089795037

This document was prepared by _____ Bank of America, N.A. _____

_____*SPACE ABOVE THIS LINE FOR RECORDER'S USE*_____

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective on the date set forth below, between JASON S CASTILLO AND JENNIFER CASTILLO, (the "Borrower(s)") and Bank of America, N.A. ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 7th of December, 2005 and in the amount of $594,965.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 920 Via Vivaldi, Morgan Hill, CA, 95037. (See Exhibit A for Legal Description if applicable) "Property"

See Exhibit B for assignments of record if applicable

If my representations in Section 1 below continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property and (2) the Note secured by the Mortgage, and any previous modifications to the Mortgage and/or Note. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 1 of 11 pages)



WF-281722          8116 08-09

Castillo 000117

**EXHIBIT PAGE 97**

I have received three copies of this Agreement. After I sign and return two copies of this Agreement to Lender, I will retain the other copy for my records. This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1.  **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:

    I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    A.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A Permissible change would be any transfer that the lender is required by law to allow.

    B.  I have provided documentation for all income that I receive and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

    C.  Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**              (page 2 of 11 pages)



WF-281722                                                          8116 08-09

Castillo 000118

**EXHIBIT PAGE 98**

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (1) I return signed and notarized copies of this Agreement to Lender, (2) the Lender accepts this Modification by signing it, and (3) the Modification Effective Date (as defined in Section 3 below) has occurred. I further understand and agree that Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

3. **The Modification**. If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on October 1, 2013 (the "Modification Effective Date"). The Maturity Date will be: January 1, 2036.

A. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new principal balance of my Note will be $504,309.79 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means that interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of September 1, 2013 and the first new monthly payment on the New Principal Balance will be due on October 1, 2013. My payment schedule for the modified Loan is as follows:

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --
(C3_2085 rev. 5/2013 Bank of America, N.A.)**                (page 3 of 11 pages)



WF-281722                                                                    8116 08-09

Castillo 000119

**EXHIBIT PAGE 99**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-3 | 2.000% | 09/01/2013 | $2,334.74 | $712.06 May adjust periodically | $3,046.80 May adjust periodically | 10/01/2013 | 36 |
| 4 | 3.000% | 09/01/2016 | $2,552.44 | May adjust periodically | May adjust periodically | 10/01/2016 | 12 |
| 5-23 | 3.125% | 09/01/2017 | $2,579.17 | May adjust periodically | May adjust periodically | 10/01/2017 | 220 |

*If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.B. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

C.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4.  **Additional Agreements**. Lender and I agree to the following:

A.  All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing.

B.  This Agreement supersedes the terms of any modification, forbearance, or loan workout plan that I previously entered into with Lender.

**MULTISTATE MODIFICATION AGREEMENT** -- Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 4 of 11 pages)



WF-281722                                                                    8116 08-09

Castillo 000120

**EXHIBIT PAGE 100**

C. I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D. The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

**MULTISTATE MODIFICATION AGREEMENT — Single Family —**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**               (page 5 of 11 pages)



WF-281722

8116 08-09

Castillo 000121

**EXHIBIT PAGE 101**

F.  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G.  On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any

**MULTISTATE MODIFICATION AGREEMENT** -- Single Family --
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 6 of 11 pages)



WF-281722                                                                8116 08-09

Castillo 000122

**EXHIBIT PAGE 102**

interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand.

H.   On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J.   I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.   I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement; or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. A corrected Agreement will be provided to me and this

**MULTISTATE MODIFICATION AGREEMENT –** Single Family –
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**      (page 7 of 11 pages)



WF-281722                                                                                        8116 08-09

Castillo 000123

**EXHIBIT PAGE 103**

Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign such corrected Agreement, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will  not be modified by this Agreement.

L.    OPTIONAL PRODUCTS PURCHASED AFTER CLOSING. Any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment, will (1) remain in force as long as I add the amount due and owing to my Total Monthly Payment each month and (2) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents. If I have questions about any optional product(s) I may have purchased, I should call Bank of America at 1.800.641.5298.

M.   If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this shall be referred to as the "Documents." I will deliver the Documents within ten (10) days after I receive Lender's written request for such replacement.

If the principal balance of my loan increased as a result of this modification, the mortgage insurance premiums, if any, on my loan may increase. If my mortgage insurance premium increases, my monthly mortgage payment will be higher. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the higher unpaid principal balance.

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 8 of 11 pages)



WF-281722                                                                          5116 08-09

Castillo 000124

**EXHIBIT PAGE 104**

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

_____

Jason S Castillo
(Must Be Signed Exactly As Printed)

_____

Date

_____

Jennifer Castillo
(Must Be Signed Exactly As Printed)

_____

Date

_____[Space below this line for Acknowledgement]_____

STATE OF _____

COUNTY OF _____

On the ___ day of _____ in the year _____ before me, _____
Notary Public, personally appeared Jason S Castillo and Jennifer Castillo, personally
known to me or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is (are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument, the person(s), or entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ Notary Signature

_____ Notary Public Printed Name Please Seal Here

_____ Notary Public Commission Expiration Date

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --
(C3_2085 rev. 5/2013 Bank of America, N.A.)**                    (page 9 of 11 pages)

WF-281722                                                                    8116 08-09

Castillo 000125

**EXHIBIT PAGE 105**

**DO NOT WRITE BELOW THIS LINE.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP

    By: Urban Settlement Services, LLC, its attorney in fact

By: _____     Dated: _____

Name: 
Title  :

_____[Space below this line for Acknowledgement]_____

STATE OF _____

COUNTY OF _____

On ____ day of _____ in the year _____ before me, _____
Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 10 of 11 pages)



WF-281722                                                                                          B116 08-09

Castillo 000126

**EXHIBIT PAGE 106**

# CALIFORNIA NOTARY ACKNOWLEDGMENT
## (For use by California Notary, if applicable.)

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before Me,_____ Notary Public, personally appeared

_____ who proved to me on the basis of satisfactory evidence to be the person (s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws if the State of California that the forgoing paragraph is true and correct.

WITNESS my hand and official seal.

_____Signature          NOTARY SEAL


THIS CERTIFICATE MUST BE ATTACHED TO THE
DOCUMENT DESCRIBED AT RIGHT

DOCUMENT: Loan Modification Agreement
Number of Pages:
Data of Document:
Signer(s) Other Than Named

Above: _____

_____

_____

8192 09/09

**MULTISTATE MODIFICATION AGREEMENT -- Single Family --**
**(C3_2085 rev. 5/2013 Bank of America, N.A.)**          (page 11 of 11 pages)

WF-281722                                                          8116 08-09

Castillo 000127

**EXHIBIT PAGE 107**

## INSTRUCTIONS FOR NOTARIZING YOUR SIGNATURES

- **When you go before a notary to sign the required documents, please bring this page and the *Sample Signature Section and Notarization* example with you.**

- ***Do not*** **fill out the notary language until you are before the notary.**

- **The notary must complete the notary section correctly so a document can be filed in the public record.**

- **It is your responsibility to make sure that the notary properly notarizes your signatures.**

**DIRECTIONS**

The information by each letter below should assist you and the notary in correctly completing the notarization. The sample notary page that follows shows exactly how to fill out each section.

**A.   "SIGNED AND ACCEPTED THIS _____ DAY OF _____ _____."**

This date must match the date that you visit the notary.  For example, if you went before the notary on August 5, 2012, this line should be completed to read:  "SIGNED AND ACCEPTED THIS 5th DAY OF August 2012."

**B.   Make sure that your printed name is correct.  Sign your name exactly as it is printed.**

For example, if the printed name includes a middle initial, sign with that middle initial.  If the printed name does not include a middle initial, do not sign with a middle initial.  If your name is printed incorrectly, please call **1.800.669.6650**.

**C.   The notary must fill in (1) the names of the correct state and the county, (2) the same date as in Section A above, and (3) his/her full name.**

**D.   The notary must fill in the name or names of the borrower(s) exactly as printed in Section B.**

**E.   The notary must (1) sign and print his/her name, (2) write in the date when his/her commission expires, and (3) stamp/seal the notary page with his/her notary stamp/seal.**

Castillo 000128

**EXHIBIT PAGE 108**

## SAMPLE SIGNATURE SECTION AND NOTARIZATION

SIGNED AND ACCEPTED THIS ____A____ DAY OF _____A_____ .

**Borrower:**

_____B_____        _____B_____ .
JOHN DOE                                    JANE DOE


*STATE OF* _____C_____

*COUNTY OF* _____C_____


On _____C_____, before me, _____C_____, Notary Public, personally appeared _____D_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) , and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____E_____        _____E_____
Notary Signature                   Commission Expiration Date

_____E_____
Printed Name

[Place Notary Seal Here]

**EXHIBIT PAGE 109**

**Bank of America** 〰〰 Home Loans

Jason S Castillo
Jennifer Castillo
920 Via Vivaldi
Morgan Hill, CA 95037

Notice Date: 09/06/2013
Loan No.: 872290897

## Loan Modification
## CLARITY COMMITMENT®

This Clarity Commitment is intended to be a clear and simple summary of the final loan modification that we are pleased to offer you. The loan modification should help put you in a better position to meet your loan obligation. When you sign and return the enclosed loan modification agreement you are agreeing to a new and permanent loan modification. Please thoroughly review all of the enclosed documents to ensure that you understand the details of your loan modification agreement.

### Summary of Your Modified Loan

Your new loan balance is $504,309.79. To calculate this new loan balance, we added past due interest in the amount of $105,831.48 and eligible servicing expenses of $2,834.86 and taxes and insurance of $19,460.77 totaling $128,127.11 to your principal balance. Unpaid late fees are not included in this amount and will be waived when your loan modification is finalized.

The current interest rate of 5.500% is changing to 2.000% for the first 3 years of your modified loan. This rate will increase as shown in the section below.

We have extended the length of your loan by 0 year.

Your final payment date, which is your new maturity date is January 1, 2036.

### Your New Mortgage Payments

Your new total modified monthly mortgage payments of $3,046.80 are made up of principal and interest of $2,334.74 and an initial escrow amount of $712.06. Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will notify you of any adjustments to the total monthly payment.

Your total monthly payments will be due on the 1st of the month starting the 1st of October, 2013.
As shown in the schedule below, your interest rate will increase in steps that will bring final your rate to 3.125% and your total monthly payments to $3,291.23. The amount of these payments will change if your escrow payment amount changes.

- Years 1-3, beginning 10/01/2013, the interest rate will be 2.000%, with a total monthly payment of $3,046.80
- Year 4, beginning 10/01/2016, the interest rate will be 3.000% with a total monthly payment of $3,264.50
- Years 5-23, beginning 10/01/2017, the interest rate will be 3.125% with a total monthly payment of $3,291.23

We recalculated your payments over 22 years and 4 month. If you make all of your payments as scheduled, your estimated final payment will be $3,291.23.

**If you have questions regarding the modification agreement or the steps you must take to complete this process, please contact 1.800.669.6650.**

C3_2129-8
Castillo 000130

**EXHIBIT PAGE 110**

# PAYPLAN ENROLLMENT FORM

## EASY ENROLLMENT

Three easy ways to enroll:
1. Call **1.800.669.6607** with authorization code **"PPSRV"** and one of our Customer Service Associates will assist.
2. Fax this completed and signed enrollment form with a voided check to 1.336.805.8671.
3. Mail this completed and signed enrollment form with a voided check to **Electronic Payment Systems, P.O. Box 21848 Greensboro, NC 27499-2018.**

Please keep a copy for your records.

## AVAILABILITY

Certain loans are not eligible for all PayPlan services. For example, Adjustable Rate Mortgage Loans (ARM) are only eligible for PayPlans 12 and 24. Home Equity Lines of Credit (HELOC), Texas home equity, loans in bankruptcy, but paid current and daily simple interest loans are only eligible for PayPlan 12. Pay Option ARM loans, and loans that are past due or have had multiple returned checks are not eligible for any PayPlan. Your financial institution must be a member of the Federal Reserve System to qualify for any services. These services may not be available to some credit unions, money market or business accounts.

### You Could Build Equity in Your Home, Save Money on Interest and Payoff Your Mortgage Sooner

Save money on your mortgage over time by increasing how quickly you pay down your principal balance with our **biweekly, PayPlan 26,** or **weekly, PayPlan 52,** payment deduction services.

**Here's How it Works**

Rather than making one mortgage payment each month, you pay one half of your mortgage payment biweekly with **PayPlan 26,** or one quarter of your mortgage payment weekly with **PayPlan 52**. With both services, you will have made the equivalent of 13 monthly payments instead of 12 at the end of each year.

The additional 13th payment goes directly toward paying down your principal balance. The average 30-year mortgage can be shortened by several years by enrolling in one of these services.

**Potential Interest Savings Example: PayPlan 26 or PayPlan 52**

| | |
|---|---|
| Current Mortgage Payment: | $528.43 |
| Total Projected Interest Paid with regular mortgage payment plan (268 months remaining): | $40,354.79 |
| | |
| Total Interest Paid with the **PayPlan 26** or **PayPlan 52** programs: | $29,564.05 |
| Your Projected* Interest benefit with **PayPlan 26** or **PayPlan 52**: | **$10,790.74** |

**\* The amount you actually save may vary. You can reduce your mortgage interest expense without enrolling in PayPlan 26 or 52 by making additional principle payments on your mortgage. There is not a fee for making these additional payments; however a fee may be assessed based on the method of your payment. Please refer to your loan documents concerning prepayment penalties or call Customer Service regarding payment options.**

Castillo 000131

872290897+UBC+WF+281722

**EXHIBIT PAGE 111**

| CHOICES | |
|---|---|
| **PayPlan 12 - Monthly Payments**<br>• Full monthly payment is drafted on the date of your choice.<br>• If a date is not selected, Servicer will select the draft date.<br>• The service is free for a draft date selected during the **first one-half** of your grace period. For a draft date selected during the **second one-half** of your grace period, a **$4.00 transaction fee will be applied**. These fees do not apply if your drafting account is a Bank of America Checking or Savings account. | **PayPlan 24 - Semi-Monthly Payments**<br>• One-half of my monthly payment is drafted twice on the dates of your choice.<br>• If both dates are not selected, Servicer will select the draft dates.<br>• Draft dates chosen must be within your Grace Period to pay current months payment. If you choose drafting dates outside of grace, your loan must be paid ahead by one month.<br>• You pay nothing to enroll and only a **$4.00 fee per transaction**. These fees do not apply if your drafting account is a Bank of America Checking or Savings account. |
| **PayPlan 26 - Biweekly Payments**<br>**(Equity Accelerator)**<br>• If a day is not selected, Servicer will select Friday as the draft day.<br>• Servicer requires that my current month's payment be posted before my first scheduled draft.<br>• You pay nothing to enroll and only a $4.00 fee per transaction | **PayPlan 52 - Weekly Payments**<br>**(Equity Accelerator)**<br>• If a day is not selected, Servicer will select Friday as the draft day.<br>• Servicer requires that my current month's payment be posted before my first scheduled draft.<br>• You pay nothing to enroll and a $2.00 fee per transaction. |

## DRAFTING INSTRUCTIONS

1) **Select ONE PayPlan.**
2) Indicate the type of financial account to debit. (Checking or Savings)
3) Indicate any additional amount you would like debited and posted toward additional principal
4) and/or escrow. NOTE: Additional funds specified by you will be drafted in addition to every draft.
5) Include (do not staple or tape) a voided check or savings deposit slip.
6) Sign in the box provided (do not write above the signature box).

Name: _____

Address: _____

City/State/Zip: _____

Loan Number:

872290897

| ☐ **PayPlan 12.** Please choose the draft date on which you would like your payment to be drafted | ☐ **PayPlan 24.** Please choose two draft dates you would like one-half of your payment drafted and | ☐ **PayPlan 26.** Check One<br>Monday ☐<br>Tuesday ☐<br>Wednesday ☐<br>Thursday ☐<br>Friday ☐ | ☐ **PayPlan 52.** Check One<br>Monday ☐<br>Tuesday ☐<br>Wednesday ☐<br>Thursday ☐<br>Friday ☐ |
|---|---|---|---|

Additional Principal Amount: $_____ (These funds will be drafted in addition to your minimum payment due, These funds will be applied toward your principal balance.

Routing No.: _____

I have read, understand, and agree to the Electronic Payment Service Agreement, located on the back of this form, to be kept with my records.

Account No.: _____

**Authorized Signature**

Account Type:
☐ Checking or  ☐ Savings

Date_____

**NOTE: Continue to make payments by check until you are notified in writing when the first electronic draft will begin (approximately one month from receipt of your completed authorization form).**

872290897+USC+WF+281722

Castillo 000132

## ELECTRONIC PAYMENT SERVICE AGREEMENT

**1. Terms and Conditions:** I ("I", "my", "me" and "Borrower" refer to all borrowers) understand that although I am not required to use this service to pay home loan referenced in my authorization (my "Loan"), I request that Bank of America, N.A., including its agents, successors and assigns ("Servicer") enroll me in the automated electronic payment service (the "Service"), as a convenience to me under the terms and conditions set forth in this Electronic Payment Service Agreement (this "Agreement"), and I agree to the following:

**How Long I Must Pay the Current Way and Limiting Conditions:** I authorize Servicer to initiate electronic debits from my financial institution associated with the financial routing number in my authorization (my "Financial Institution") from the referenced financial account number (my "Financial Institution Account"), in order to pay for my scheduled payments under my Loan plus the cost of any goods or services that I request. I will continue to initiate and make my payments with respect to my Loan via other payment methods until I am notified in writing when the first automatic payment begins (approximately 2-3 weeks from my authorization, subject to verification of information). I am responsible for verifying that my Financial Institution is a member of the Federal Reserve System, which is a requirement under this Agreement, and allows Servicer to perform the Service. **I AM RESPONSIBLE FOR MAKING PAYMENTS ON MY LOAN BY OTHER MEANS, IF ANY PAYMENTS ARE NOT DRAFTED ON THE SCHEDULED DRAFT DATE NO MATTER THE CAUSE.** The Servicer's obligations with respect to the Service shall terminate upon payment-in-full of my Loan.

**3. How This Plan Works:** It may be necessary for Servicer to increase my payment to the nearest dollar, so that my total payment (including any amounts for impounded taxes and insurance) can be easily divided by two (2) or four (4), with any overage being credited to my Loan as set forth in my Loan documents. Servicer may send multiple drafts to my Financial Institution during each scheduled withdrawal date: One draft will be for the payment amount I have requested to be drafted, and the other draft will be for fees and charges that correspond to the Service that I have selected, if applicable. If any draft is returned or rejected by my Financial Institution, Servicer will not be responsible for any additional fees assessed to me by my Financial Institution. If my scheduled draft date from my Financial Institution Account falls on a holiday or weekend, my electronic payment may be debited from my Financial Institution Account on the next business day. The electronic payment amount will automatically adjust to any new scheduled payment amount that may result from the terms of my Loan documents. Servicer will give me advance notice of the new payment amount. **Such adjustments may include but are not limited to increases or decreases in the scheduled monthly payment as a result of adjustments to the interest rate or required escrow amount pursuant to the terms of my Loan documents.** I understand that I am responsible for ensuring that there are sufficient funds in my Financial Institution Account to pay the scheduled monthly payment, including any new scheduled monthly payment amount. I understand that transfer of funds will not occur if there are insufficient funds in my Financial Institution Account or my Financial Institution refuses to pay amounts for any reason and that transfer of funds will not **nonpayment as set forth in Section 6.** If there are insufficient funds in my Financial Institution Account or my Financial Institution refuses to pay amounts to Servicer for any reason, Servicer will attempt to cause my Financial Institution to draft from my Financial Institution Account two (2) times. I understand that my Financial Institution may attempt to draw upon my Financial Institution Account more than twice, and that such process is in no way related to Servicer. If the second attempt by Servicer to cause my Financial Institution to draft from my Financial Institution Account fails, I will be responsible for paying the funds owed under this Agreement and my Loan documents immediately, and I may be automatically terminated from the Service. If three (3) separate debit processes are rejected by my Financial Institution on the first attempt by Servicer, I may be automatically terminated from the Service without further notice from Servicer. If I am terminated from the Service, I shall have no further rights under this Agreement, and Servicer shall have no further obligations under this Agreement. I will continue to be responsible for any fees or charges related to this Agreement for services rendered, and the fees or charges owed will be added to my Loan obligation.

**4. How and When My Payments Will be Applied:** Servicer will apply fully scheduled payment amounts to my Loan account based upon the priority of payment/application provisions set forth in my Loan documents. **I understand that, when funds are placed in a partial account, such funds are not being applied to my Loan at that time.** Therefore, interest will accrue under my Loan as if no payment was made, until an amount equal to my full scheduled payment is received and applied to the Loan. I agree that Servicer will not pay me any interest or provide me with any other economic benefit for funds being held in a partial account. I understand that Servicer may derive a benefit as a result of holding partial payments in its accounts during the period of time while a full payment has not yet been made. Any direct or indirect benefit that may be associated with any funds held in a partial account shall accrue to Servicer. I waive any right to these or any other related benefits that Servicer may receive. **I understand that Servicer may, at its option, exercise its right to return partial payments to me if full payment is not received. In order for my PayPlan 26 or PayPlan 52 draft service to begin, Servicer must have received and applied my scheduled monthly payment on its regularly scheduled the date in the same month that my first biweekly payment service will begin (i.e., I must be paid ahead one (1) month).** I understand and agree that, if I fail to make certain that I am paid one (1) month ahead, Servicer may choose not to perform the Service, which may result in me being in default on my Loan. The Service is not available for all loan types and some PayPlans may not be available in all states. The following is a summary of my PayPlan, the payment service chosen by me:

a. **PayPlan 12:** Twelve (12) monthly drafts will occur and will be applied as twelve (12) scheduled payments. My scheduled draft date must be prior to the end of the late payment grace period set forth in my Loan documents. The service is free for a draft date selected during the **first one-half** of my grace period. For a draft date selected during the **second one-half** of my grace period, a **$4.00 transaction fee will be applied.** These fees do not apply if your drafting account is a Bank of America Checking or Savings account.

b. **PayPlan 24:** Twenty-four (24) semimonthly drafts will occur and be applied as twelve (12) regular payments. When the first half of my mortgage payment is drafted, such funds will be placed in a partial account. When the second half of my mortgage payment is drafted, which must occur prior to the end of the payment grace period set forth in my Loan documents, this amount and the funds in the partial account must equal a full month's scheduled payment in order to be applied to my Loan account. Servicer requires that my current month's payment be posted before my first scheduled draft. I pay nothing to enroll and only a **$4.00 fee per transaction.** These fees do not apply if your drafting account is a Bank of America Checking or Savings account.

c. **PayPlan 26:** Twenty-six (26) biweekly drafts will occur, twenty-four (24) of which will be applied as regular scheduled payments and two (2) biweekly drafts equaling a full scheduled payment amount will be applied to reducing the principal balance of my Loan. One half of my scheduled monthly payment will be debited from my Financial Institution Account with each biweekly draft and placed in a partial account. If the funds in my partial account equal a full month's scheduled payment on the scheduled payment due date under my Loan documents, an amount equal to a full month's scheduled payment will be applied to my Loan account. During months in which more than two (2) biweekly drafts occur, the third draft will also be applied to my Loan on my scheduled due date of the following month. Any additional funds from the third draft will be applied toward reducing my principal balance. I agree that Servicer will credit all full payments, including prepayments, on the next regular scheduled due date for periodic payments under my Loan documents. I further agree that my electronic payments may be held in the normal accounts maintained by Servicer for partial payments accepted if unapplied until the next scheduled due date. In addition, I agree to pay a fee of four dollars (**$4.00**) per each biweekly draft.

d. **PayPlan 52:** Fifty-two (52) weekly drafts will occur, forty-eight (48) of which will be applied as regular payments, and four (4) weekly drafts, equaling a full payment amount, will be applied to reducing the principal balance of my Loan. One-fourth of my scheduled monthly payment will be debited with each weekly draft and placed in a partial account. If the funds in my partial account equal a full month's scheduled payment on the scheduled payment due date under my Loan documents, an amount equal to a full month's scheduled payment will be applied to my Loan obligation. During months in which five (5) weekly drafts occur, the fifth draft will also be applied to my home loan on my scheduled due date of the following month. Any additional funds from the fifth draft will be applied toward reducing my principal balance. I agree that Servicer will credit all full payments, including prepayments, on the next scheduled due date for payments under my Loan documents. In addition, I agree to pay a fee of two dollars (**$2.00**) per each weekly draft.

**5. What I Must Do if My Loan Becomes Delinquent:** If my Loan becomes delinquent or I am otherwise in default, I will notify Servicer at the address set forth in Section 6 below and make any payments myself, via check or other method, to bring and keep my Loan current and my payments consistent with the Service's payment schedule. Servicer may attempt to cause my Financial Institution to debit my Financial Institution Account within a reasonable time in order to keep me current with the Service. I further understand and agree that electronic debits from my Financial Institution Account may cause other items submitted for payment, which are not related to the Service or my Loan, not to be paid. I agree that I am solely responsible for items not paid, and that I accept responsibility for maintaining my financial affairs.

**6. Nonpayment by My Financial Institution, Notification and Cancellation by Me:** I understand and agree that I will be charged an insufficient funds fee for each transaction that results in nonpayment from my Financial Institution Account, and that such nonpayment could result in a late payment fee under my Loan documents. The maximum insufficient funds fee amount that I will be charged is the maximum amount allowed by applicable law. I agree that Servicer may draft insufficient funds fees and late payment fees from my Financial Institution Account under this Agreement. If my Loan is delinquent or otherwise in default, automatic payment may not take place unless Servicer, in its sole discretion, allows the automatic payment. The electronic service may be cancelled, in Servicer's sole discretion, at any time, and may not be transferable, if the servicing of my Loan is sold or transferred to another loan servicer. To cancel the Service, I must deliver to Servicer a signed letter (which must include my Loan account number) from me, or on my behalf, stating that I choose to cancel the Service and setting forth the last date for payment under the Service at least five (5) days prior to the next scheduled draft. The letter must be delivered to Servicer at the following address: **Electronic Payment Systems, P.O. Box 21848, Greensboro, NC 27499-2018.** In the event my Financial Institution changes or an update to the current information is required to successfully draft from my Financial Institution Account, I agree to provide this information to Servicer at least ten (10) days in advance of any changes that would interrupt the Service.

**7. My Loan Documents Remain Binding and Enforceable; Non-Assignability:** I understand and agree that the Service does not modify the original terms and conditions of my Loan obligations. If I am planning to pay off my Loan and the draft date is within ten (10) days of my payoff date, I will notify Servicer at least ten (10) days in advance of the payoff date to have the Service cancelled. Failure to provide such notification to Servicer may result in excess funds being drafted from my Financial Institution Account. Payment in full of my Loan will terminate Servicer's, but not my, obligations under the Service. I hereby release and will indemnify Servicer for any and all losses, damages, claims, costs and expenses resulting from any party claiming that Servicer is not authorized to draft my Financial Institution Account as set forth in this Agreement. I understand and agree that I cannot assign this Agreement or my rights under this Agreement to another person or entity. Assignment by me to a third party will automatically terminate my rights, but not my obligations, under this Agreement.

**8. Notice of Grievances; Attorney's Fees; Severability:** I may not commence or join in to any judicial action against Servicer that arises from this Agreement or that alleges that the other party has breached any provision of, or any duty owed by reason of this Agreement, until I have notified Servicer (with such notice given in compliance with the requirements of this Agreement and my Loan documents) of such alleged breach and afforded Servicer a reasonable period after the giving of such notice to take corrective action. If applicable law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for the purposes of this paragraph. Should either party institute any action or proceeding to enforce any provision with respect to this Agreement, or for damages by reason of any alleged breach of any provision in this Agreement, the prevailing party shall recover his or its attorneys' fees, costs and expenses in connection with such action from the non-prevailing party. In the event any part of this Agreement cannot be carried out due to lack of enforceability under the law, all other provisions will remain valid.

**9. Incorporated Documents to this Agreement; Knowledge and Consent:** I understand that a payment schedule with respect to the Service may be sent to me once I am enrolled in the Service. The payment schedule is incorporated into and made a part of this Agreement. Unless provided otherwise by Servicer, the payment schedule is the only incorporated document to this Agreement, unless expressly set forth herein. Each party warrants and covenants that this Agreement constitutes the entire understanding and agreement of the parties with respect to this Service, and any and all prior agreements, understandings or representations, whether oral or written, with respect to this Service, or any other electronic payment services with Servicer or other parties with respect to my Loan, are merged into this Agreement. No representations, oral or otherwise, express or implied, other than those contained in this Agreement have been made by either party. Each party acknowledges that it has read and understands this Agreement. I warrant and represent this Agreement is entered into voluntarily and without duress or undue influence. I acknowledge that I have been provided with a copy of this Agreement for my records. If I provided my authorization via telephone, I agree and acknowledge that this Agreement sets forth the Service terms to which I agree.

**10. Servicer's Right to Modify or Cancel; Fees:** Servicer reserves the right to modify, restrict, waive or terminate this Agreement or any aspect of this Agreement at its sole discretion, including but not limited to fees and charges, at any time upon sending written notice to me at my notice address under my Loan documents. I understand and agree that I may simply reject any offered change, restriction or modification by cancelling the Service as set forth in Section 6 above at least five (5) business days prior to the next scheduled draft date. I further understand and agree that I have agreed to change, restriction or modification, if I fail to timely cancel the Service with respect to the draft. **I understand and agree that no fees or charges will be refunded to me upon termination or cancellation, whether voluntary or involuntary.**

| **Subject:** | RE: Castillo - Modification |
| --- | --- |
| **From:** | Keller, George (KellerG@bryancave.com) |
| **To:** | eletcher@heraca.org; csingerman@heraca.org; |
| **Cc:** | wkennedy@kennedyconsumerlaw.com; |
| **Date:** | Tuesday, October 29, 2013 11:14 AM |

Elizabeth

1) Followed up again and Nationstar just responded: "That's fine. Or just address to Nationstar."

2) Yes, I will get back to you by tomorrow with that.


For now - George


**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Tuesday, October 29, 2013 10:21 AM
**To:** Keller, George; 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'
**Subject:** RE: Castillo - Modification


George:


    1)   Any news on whether this should also be addressed to Duane Fenton?
    2)   Now that we have a modification, can we get moving on the settlement agreement?


Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

Castillo 000141

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Monday, October 28, 2013 3:16 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'
**Subject:** RE: Castillo - Modification

Just sent an e-mail to check – I'll let you know asap

**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Monday, October 28, 2013 3:12 PM
**To:** Keller, George; 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'
**Subject:** RE: Castillo - Modification

Same person, duane Fenton?

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

Castillo 000142

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Monday, October 28, 2013 3:08 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'
**Subject:** RE: Castillo - Modification

Nationstar has responded:

**The fed ex address is 1010 W. Mockingbird Lane Suite 100, Dallas, 75247. Funds have to be certified, cashiers check or money order. No personal checks.**

*(Side note all, I have to leave in a few minutes for the day, but back tomorrow – George)*

**George H. Keller**
**Bryan Cave, LLP**

**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Monday, October 28, 2013 2:37 PM
**To:** Keller, George; 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'
**Subject:** RE: Castillo - Modification

Is this also the address to which payment should be sent?  Is a cashier's check required?

Also, any chance of an address to which delivery is traceable?  (I guess they can send it certified, but we'd be much happier to accomplish it by Fedex)

Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255

Castillo 000143

**EXHIBIT PAGE 117**  https://us-mg5.mail.yahoo.com/neo/launch?rdsc=100&rand=1467231495         11/10/2015

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Monday, October 28, 2013 2:32 PM
**To:** 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'; 'Elizabeth Letcher'
**Subject:** RE: Castillo - Modification
**Importance:** High

Nationstar has responded:

**Duane Fenton, Centralized Mod Group at P. O. Box 650783, Dallas, Texas 75265**

**George H. Keller**
**Bryan Cave, LLP**

**From:** Cynthia L. Singerman [mailto:csingerman@heraca.org]
**Sent:** Monday, October 28, 2013 1:58 PM
**To:** Keller, George
**Cc:** 'William Kennedy'; 'Elizabeth Letcher'
**Subject:** RE: Castillo - Modification

Dear George:

Since we received the modification via email how should the Castillos return the signed notarized copies to Bank of America? There is no pre-paid envelope. Please let us know ASAP so that the Castillos can send the agreement back as soon as possible.

Best,

Cynthia Singerman

Castillo 000144

Staff Attorney
Housing and Economic Rights Advocates (HERA)
Phone: (510) 271 8443
Fax: (707) 204 6358

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to csingerman@heraca.org, and delete the message.

---

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Monday, October 28, 2013 8:37 AM
**To:** 'Cynthia L. Singerman'
**Cc:** 'William Kennedy'; 'Elizabeth Letcher'
**Subject:** RE: Castillo - Modification

Good morning Cynthia. Nationstar has replied: Yes, the borrower will need to make the October and November payments. One for each.

**George H. Keller**
**Bryan Cave, LLP**

---

**From:** Cynthia L. Singerman [mailto:csingerman@heraca.org]
**Sent:** Thursday, October 24, 2013 4:09 PM
**To:** Keller, George; 'Elizabeth Letcher'; 'William Kennedy'
**Subject:** RE: Castillo - Modification

Hi George,

I reviewed the modification and I have a question about the initial payment due date. Is Nationstar/BANA anticipating that the Castillos make their first modification payment in October (this month) and then turn around and make their next payment the first two weeks of November 2013? Or is the first payment due date November 2013? If it is November 1, 2013 will this affect the modified principal balance?

Additionally, what is the status on the proposed settlement agreement from BANA?

Best,

Castillo 000145

**EXHIBIT PAGE 119**

Cynthia Singerman

Staff Attorney
Housing and Economic Rights Advocates (HERA)
Phone: (510) 271 8443
Fax: (707) 204 6358

This message contains information that is confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to csingerman@heraca.org, and delete the message.

**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Thursday, October 24, 2013 1:03 PM
**To:** 'Elizabeth Letcher'; 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** Castillo - Modification
**Importance:** High

Greetings all,

Attached please find the modification for review and execution by the Castillos.

I am aware that it remains on BANA letterhead as originally prepared by BANA at the end of August/beginning of September, however, Nationstar has just confirmed to BANA and myself that it should be sent over to you *as is* for the Castillos' execution, which Nationstar will then honor and implement.

Thank you all for your patience and, of course, do let me know of any questions.

Best regards, George

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

Case 5:15-cv-01743-BLF   Document 78-3   Filed 10/11/16   Page 121 of 125

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2013

Castillo 000147

EXHIBIT PAGE 121

**EXHIBIT PAGE 122**

Gmail - RE: Castillo - Executed Modification Needed                    https://mail.google.com/mail/u/0/?ui=2&ik=80a5977ef9&view...



Elizabeth Letcher <elizabethathera@gmail.com>

## RE: Castillo - Executed Modification Needed
1 message

**Keller, George** <KellerG@bryancave.com>                              Thu, Dec 5, 2013 at 11:30 AM
To: Elizabeth Letcher <eletcher@heraca.org>

Thank you very, very much, it has already just been injected into the discussion.


**George H. Keller**
**Bryan Cave, LLP**


**From:** Elizabeth Letcher [mailto:eletcher@heraca.org]
**Sent:** Thursday, December 05, 2013 9:22 AM
**To:** Keller, George
**Cc:** 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** RE: Castillo - Executed Modification Needed


No comment.


Elizabeth S. Letcher

Director of Litigation

Housing and Economic Rights Advocates

tel.  (510) 271-8443, ext. 302

fax  (650) 392-8255


This message contains information that is confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to eletcher@heraca.org, and delete the message.


**From:** Keller, George [mailto:KellerG@bryancave.com]
**Sent:** Thursday, December 5, 2013 9:14 AM

11/11/15, 7:11 PM

Castillo 000168

**EXHIBIT PAGE 123**

**To:** 'Elizabeth Letcher'
**Cc:** 'Cynthia L. Singerman'; 'William Kennedy'
**Subject:** Castillo - Executed Modification Needed
**Importance:** High

Good morning all,

Can you please forward to me a copy of the modification with the Castillos' signatures on it that was sent in to Nationstar.

Elizabeth, you will recall my mentioning that, after waiting several weeks for Nationstar to issue the modification on "Nationstar paper" for execution, Nationstar finally just forwarded the BANA-issued May 10, 2013 modification and said that it was acceptable as is for the Castillos' execution.  We corrected them that it was the *wrong* mod, forwarded (again) the correct September 2013 modification, Nationstar simply instructed to then have *that* modification on BANA paper executed for them to implement, and thus I finally sent it over to you, etc.  It now appears that the Nationstar mod department system shows only the *unsigned May 10, 2013* modification; while I have a blank copy of the correct one, I want to forward the *actual modification* that the Castillos signed and sent in, so at least we over here are all working off the actual submitted document with them at Nationstar, to keep them moving along asap.

Thank much for your assistance and regards as always, George

_____

George H. Keller
Bryan Cave, LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
t: 415.675.3518 | f: 415.675.3434
e: kellerg@bryancave.com

_____

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

11/11/15, 7:11 PM

Castillo 000169

**EXHIBIT PAGE 124**

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

bcllp2013

11/11/15, 7:11 PM

Castillo 000170

**EXHIBIT PAGE 125**