Case 5:15-cv-01743-BLF   Document 79-14   Filed 10/11/16   Page 1 of 4

JENNIFER CASTILLO VOLUME 1                                February 09, 2016
CASTILLO vs. NATIONSTAR MORTGAGE                                       1–4

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2     NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION
 3   JENNIFER CASTILLO and JASON   )
     CASTILLO,                     )
 4                                 )
                 Plaintiffs,       )
 5                                 ) No.
     vs.                           ) 5:15-cv-01743-BLF
 6                                 )
     NATIONSTAR MORTGAGE, LLC,     )
 7   WELLS FARGO BANK, NATIONAL    )
     ASSOCIATION, AS TRUSTEE FOR   )
 8   BANK OF AMERICA MORTGAGE      )
     SECURITIES, INC. MORTGAGE     )
 9   PASS-THROUGH CERTIFICATES,    )
     SERIES 2006-A and DOES 1      )
10   through 100, inclusive,       )
                                   )
11                 Defendants.     )
     _____)
12
13
14         VIDEOTAPED DEPOSITION OF JENNIFER CASTILLO
15                          Volume 1
16                  San Francisco, California
17                 Tuesday, February 9th, 2016
18
19
20
21   REPORTED BY:
     MONICA LEPE-GEORG
22   CSR No. 11976
23   Job No. J0277100
24
25   PAGES 1 - 368
```

Page 2

```
 1
 2
 3           VIDEOTAPED DEPOSITION OF JENNIFER CASTILLO,
 4   VOLUME NO. 1, taken on behalf of DEFENDANTS, at One
 5   Embarcadero Center, 26th Floor, San Francisco,
 6   California, beginning at 9:36 a.m. and ending at
 7   6:50 p.m., on Tuesday, February 9th, 2016, before
 8   Monica Lepe-Georg, Certified Shorthand Reporter No.
 9   11976.
```

Page 3

```
 1                       APPEARANCES
 2
 3   FOR PLAINTIFFS:
 4        LAW OFFICES OF ELIZABETH S. LETCHER
 5        BY:  ELIZABETH S. LETCHER, ESQ.
 6        60 29th Street
 7        Suite 221
 8        San Francisco, California 94110
 9        Telephone:  415.643.4755
10        Fax:  415.738.5400
11        E-mail:  elizabeth@elizabethletcher.com
12
13   FOR DEFENDANTS:
14        SEVERSON & WERSON
15        BY:  THOMAS N. ABBOTT,  ESQ.
16        One Embarcadero Center
17        Suite 2600
18        San Francisco, California 94111
19        Telephone:  415.398.3344
20        Fax:  415.956.0439
21        E-mail:  tna@severson.com
22   Also Present:
23        Nancy Karp, Videographer
```

Page 4

```
 1                   INDEX OF EXAMINATIONS
 2
 3                                                     PAGE
 4   EXAMINATION BY MR. ABBOTT                            7
 5   EXAMINATION BY MS. LETCHER                         350
 6   EXAMINATION BY MR. ABBOTT                          356
 7
 8
 9
10          INDEX OF EXHIBITS (Continued)
11
12   EXHIBIT NO.         DESCRIPTION             PAGE
13   1          Defendants Nationstar Mortgage      6
14              LLC and Wells Fargo Bank,
15              N.A's Amended Notice of Taking
16              Deposition of Plaintiff
17              Jennifer Castillo
18   2          Adjustable Rate Note                6
19   3          Uniform Residential Loan            6
20              Application
21   4          Correspondence from Bank of         6
22              America Home Loans dated
23              September 6, 2013
24   5          Trustee's Deed Upon Sale            6
25   6          Deed of Trust                       6
```



Case 5:15-cv-01743-BLF   Document 79-14   Filed 10/11/16   Page 2 of 4

JENNIFER CASTILLO VOLUME 1                                February 09, 2016
CASTILLO vs. NATIONSTAR MORTGAGE                                    257–260

Page 257

1  MR. ABBOTT: I don't think you yawned. I
2  think -- I think if you wanted to confer with your
3  client, that's one thing, maybe you can just say
4  that for clarity on the record.
5  MS. LETCHER: No. I'm actually starving,
6  so I wanted to eat a PowerBar that's in my purse.
7  MR. ABBOTT: Okay. That -- that -- that's
8  a reasonable reason for going on a break, as well.
9  All right. We can go off the record.
10  THE VIDEOGRAPHER: Okay. Just one moment
11  everyone.
12  We are going off the record. The time is
13  4:02 p.m.
14  (Short recess was taken from 4:02 p.m.
15  until 4:15 p.m.)
16  THE VIDEOGRAPHER: We're back on the
17  record. The time is 4:15 p.m.
18  BY MR. ABBOTT:
19  Q. Do you think Wells Fargo has harmed you
20  with respect to the -- to this loan?
21  MS. LETCHER: Objection to the -- calls for
22  a legal conclusion.
23  THE WITNESS: I would say no, because I
24  haven't dealt with them, really. It's only the
25  servicer.

Page 258

1  BY MR. ABBOTT:
2  Q. What's your understanding of Wells Fargo's
3  connection to your loan?
4  A. That they own the loan. Like it's -- yeah.
5  Q. So do you believe that you've been harmed
6  by -- when I say "you," I'm talking about you and
7  your husband. Okay?
8  A. Okay.
9  Q. Do you believe that you have been harmed by
10  Nationstar?
11  A. I do.
12  Q. How so?
13  A. Where do I start?
14  Q. If you want to start with high level and I
15  can ask you questions. If there's certain things
16  that you feel that they've harmed you, certain ways.
17  Does that make sense?
18  A. Yes.
19  I would say my first experience was
20  receiving a statement that was grossly exaggerated,
21  with inaccurate accounting. Fees that I had no idea
22  what they were. And over -- but even -- but seeing
23  that and then calling to get an explanation and --
24  and nobody can help you. Nobody can explain what's
25  going on. And you sit there like you're crazy.

Page 259

1  And...
2  Q. I want to get each of the things -- I want
3  you to explain to me just each way you feel that
4  Nationstar has harmed you, and then I -- I want to
5  ask you further about them.
6  Before we move on to anything else, though,
7  what statement are you referring to? Is this the
8  April 2014 statement?
9  A. Yes.
10  Q. Okay.
11  A. Uh-hm.
12  Q. Besides receiving an April 2014 statement
13  that you -- you feel was grossly exaggerated, as you
14  just described --
15  A. Right.
16  Q. -- how else has Nationstar harmed you?
17  A. Well, obviously that put a whole new
18  stress -- that situation put a whole new stress on
19  us because, again, it's -- it's our finances. We're
20  scrambling, trying to figure out what is going on.
21  Are -- are we responsible for this money? How is
22  this going to affect our loan? This isn't what our
23  loan said, what our modification said. This isn't
24  what we signed.
25  Just -- just really powerless. And

Page 260

1  bringing back, too, all the years prior that we have
2  gone through this. And again, it's happening again.
3  And how can this be happening again? This -- this
4  started in 2005.
5  Q. 2005?
6  A. Well, no -- I mean, that's when we
7  purchased our home, but when we -- just through the
8  modification with Bank of America, and then finally
9  getting Nationstar and thinking, yes, it's done.
10  And then four months in, bam, here's this statement
11  that you can't make sense of, that you don't
12  know -- you can't understand what it's saying,
13  making demands for money. That where are you
14  getting this from? This isn't what I signed four
15  months ago, five months ago.
16  So I'm going to call and I'm going to try
17  to figure it out, but nobody can tell me. Nobody
18  can explain to me what's going on. You get this
19  department, but you're getting this letter in the
20  mail, but -- you know, it's -- it's a constant state
21  of confusion. I could not -- you can't figure it
22  out.
23  Q. So the stress that you're referring to,
24  what do you mean by the stress?
25  A. Literal anxiety, stress. Sick to your



Case 5:15-cv-01743-BLF   Document 79-14   Filed 10/11/16   Page 3 of 4

JENNIFER CASTILLO VOLUME 1                                February 09, 2016
CASTILLO vs. NATIONSTAR MORTGAGE                                    265–268

Page 265
1  Q. When you say "misrepresentations," you
2  understand that has a legal meaning?
3  A. No.
4  Q. Okay. You're not --
5  A. I'm just saying, I feel like they are
6  demanding things of us that -- that aren't correct.
7  That they shouldn't be.
8  Q. Is there any other way -- so I understand
9  that the calculation of the amounts due on your
10 loan, starting around April 2014 --
11 A. Uh-hm.
12 Q. -- is the -- is one thing that you -- you
13 believe Nationstar was doing that -- that has caused
14 you harm; is that right?
15 A. That is correct.
16 Q. Okay. And I'd like to know -- I want to
17 get a better understanding of how you were harmed by
18 that. And one thing I understand, so far, is that
19 you feel you've incurred stress or anxiety as a
20 result of that.
21 A. Right.
22 Q. What other things, if there are any other
23 things, do you believe were a resulting harm for
24 you, based on your belief that Nationstar was
25 miscalculating the amounts due on the loan?

Page 266
1  A. So if we're moving forward from that, you
2  know, we have that April, May, June -- you know, all
3  of that time frame, where they're accepting our
4  payments but they're saying we're not applying it --
5  you know, they're not being applied to your full
6  amount, therefore you're -- you're approaching, you
7  know -- it's -- it's the overall feeling of not
8  being in control of -- and -- and -- and feeling the
9  looming -- it's just not being in control of -- of
10 your house, of your -- of what's going on with your
11 loan and stressing out about that.
12        And the fact that, you know, this is
13 prompting -- you know, through that summer, they
14 start rejecting our payments altogether. They're
15 demanding large sums of money in between that
16 they -- oh, I'm going to accept it this time, but
17 then I'm going to deny it this time. We don't know
18 where the accepting ones are being applied. We
19 don't know...
20        All of this uncertainty is just unfair.
21 Like why can nobody explain it? Why can I not pick
22 up a phone? Why do I have to resort to calling my
23 attorneys and saying, "What is going on? Can you
24 make sense of this, because I'm losing my mind?"
25        I'm making phone calls. Nobody -- you

Page 267
1  know, nobody can tell me what -- what's going on.
2  My husband is frustrated. The only thing I can
3  do -- which I don't even know that -- every client
4  of Nationstar, obviously, because of experience, I
5  just -- I knew who -- who to call.
6        I -- I couldn't get an answer from the
7  person who is demanding this from me. So I
8  actually -- I have to go outside and get somebody to
9  help me find these answers. It's ridiculous --
10 Q. So --
11 A. -- that I can't understand -- like --
12 it's -- it's just crazy.
13 Q. Okay. So this started around April 2014.
14 A. Right.
15 Q. And then your earlier testimony was that
16 you reengaged your attorneys from the prior lawsuit
17 around that time, right?
18 A. Shortly thereafter.
19 Q. What does that mean, "shortly thereafter"?
20 A. Well, after attempting to get an answer and
21 not --
22 Q. Just a time period. I mean --
23 A. Oh. Maybe --
24 Q. -- a day? Two days? A week?
25 A. -- maybe a month or --

Page 268
1  Q. Okay.
2  A. -- so -- around a month, maybe.
3  Q. Okay.
4  A. I don't -- I'm not for certain.
5  Q. Sure.
6  A. I know it was shortly thereafter.
7  Q. So around a month?
8  A. Uh-hm.
9  Q. Okay. Is that right?
10 A. Yes.
11 Q. Okay. I'm not belittling the stress or
12 anxiety aspect of this. So I don't want you to
13 misunderstand me. I'm trying to discover facts
14 about this case.
15 A. Right.
16 Q. Because I have a very specific purpose.
17        You've outlined -- what I'm trying to
18 understand is how you believe you've been harmed.
19 And I think I understand the stress and anxiety is a
20 big part of that.
21 A. Yeah.
22 Q. Okay. But I want to find out if there's
23 any other component, okay, without minimizing or
24 belittling at all what you're describing.
25 A. Okay.



Case 5:15-cv-01743-BLF   Document 79-14   Filed 10/11/16   Page 4 of 4

JENNIFER CASTILLO VOLUME 1                                February 09, 2016
CASTILLO vs. NATIONSTAR MORTGAGE                                   269–272

Page 269
1   Q.  And so with respect -- you know,
2  respectfully, I want to -- I want to ask you to kind
3  of put the stress and anxiety piece of it aside for
4  a moment and see -- and describe for me any other
5  ways that you feel you've been harmed by Nationstar
6  as a result of the events that you've been talking
7  about and the events that are at issue in this
8  lawsuit.
9   A.  Complete invasion of our privacy.
10   Q.  How so?
11   A.  The fact that I have -- now I'm
12  fast-forwarding into 2015, when I have faithfully
13  paid my payments, regardless that Nationstar is
14  rejecting them.  I have, you know, paid large lump
15  sums of money, yet come February of the following
16  year -- my -- my attorneys at this point are sending
17  letters to Nationstar, "Explain this, this and
18  this."
19       No response.  Nothing.  Letter after
20  letter, nothing.
21       So fast-forward to 2015, again, always
22  making my payment that I had agreed to make,
23  regardless what Nationstar chose to do with it.
24  Except for that contract.
25       February rolls around, and in that month, a

Page 270
1  Notice of Default is put on my home.
2       Also, in that month, we receive a letter
3  from Nationstar admitting that there's accounting
4  errors, yet you put my home into foreclosure.
5  You've started proceedings to foreclose on me.  But
6  in that same exact month, maybe a week later, or
7  two, you're sending me a letter admitting that
8  there's accounting errors.  How does that -- how
9  does that even -- how does that make sense?
10       So now, fast-forward a little more into
11  2015, I have -- I'm inundated -- I'm put on a public
12  foreclosure list, I'm inundated with mail, realtors
13  knocking on my door, inspections, people taking
14  pictures of my house, people witnessing people
15  taking pictures of my house and saying, "What is
16  that?  What's going on?"
17       My children answering the door when a
18  realtor knocks and says, "Can I talk to your mom?"
19       Now I'm forced to explain this to my
20  children because my son is asking me why is someone
21  asking you if you're interested in selling your
22  home?
23       For what?  Why?  Why?  Why do we deserve to
24  go through this?  It is a complete invasion of
25  painting a picture.  We have done everything that

Page 271
1  we've been asked to do -- I'm sorry.
2   Q.  Do you want a moment?
3   A.  Yeah, I do.
4       THE VIDEOGRAPHER:  I'll get us off the
5  record.
6       MR. ABBOTT:  Yeah.
7       THE VIDEOGRAPHER:  Just a second.  I'll go
8  ahead and change the DVDs.
9       THE WITNESS:  Oh, gosh.
10       THE VIDEOGRAPHER:  This marks the end of
11  Tape No. 3 in the deposition of Jennifer Castillo.
12       We're going off the record and the time is
13  4:33 p.m.
14       (Short recess was taken from until
15       4:33 p.m. until 4:39 p.m.)
16       THE VIDEOGRAPHER:  We're back on the
17  record.  This marks the beginning of Tape No. 4 in
18  the deposition of Jennifer Castillo.
19       On the record at 4:39 p.m.
20  BY MR. ABBOTT:
21   Q.  You mentioned people taking pictures of the
22  property?
23   A.  Yes.
24   Q.  Okay.  Can you explain what you mean by
25  that?

Page 272
1   A.  My husband told me that he was in the
2  garage, and our neighbor was over and our neighbor
3  noticed somebody outside of our house taking a
4  picture of our home.
5   Q.  Okay.  Any other examples of people taking
6  pictures of your home?
7   A.  That was the only one I can think of.
8   Q.  Okay.
9   A.  That I know of, I should say, because I
10  know it happens often -- I mean, I just know it
11  does.  I know that.
12   Q.  Just so the record is clear, though, the
13  only instance that you believe you have knowledge of
14  is this one anecdote that your husband relayed to
15  you from your next-door neighbor?
16   A.  Correct.
17   Q.  Okay.
18   A.  Now -- not from my next-door neighbor.
19  They were together.  My husband was there.  He
20  witnessed the car drive away.  So he was in the
21  situation with my neighbor.  My neighbor was at our
22  house.
23   Q.  Okay.  Where were you when this happened?
24   A.  I don't know.
25   Q.  Were you at the property?