UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER CASTILLO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, et al.,<br><br>    Defendants. | Case No. 15-cv-01743-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: ECF 76] |

Plaintiffs Jennifer and Jason Castillo (the "Castillos") filed the operative complaint on August 12, 2016, alleging eight causes of action against Nationstar Mortgage LLC ("Nationstar") and Wells Fargo Bank, National Association, as trustee for Bank of America ("Wells Fargo"): (1) breach of modification contract; (2) violation of the Rosenthal Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*; (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*; (4) negligence; (5) violation of the Consumer Credit Reporting Act, Cal. Civ. Code § 1785.1 *et seq.*; (6) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (7) breach of contract—third party beneficiary; and (8) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*. Second Am. Compl. ("SAC"), ECF 61. Plaintiffs bring their first and eighth causes of action against all Defendants, and the remainder against only Nationstar.

Now before the Court is Plaintiffs' motion for partial summary judgment as to liability on their first and second causes of action and as to certain defenses to their third cause of action. Mot., ECF 76. For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion.

## I. UNDISPUTED MATERIAL FACTS

In 2009, the Castillos applied for a modification with their then-mortgage servicer, Bank of

1   America, and received a modification one year later. Mot. 1–2. After a dispute over the
2   implementation of the modification with Bank of America, the parties reached a settlement. *Id.* at
3   2; Ex. 38 to Letcher Decl., ECF 81-4 ("Settlement Agreement"). As a part of the settlement, the
4   Castillos were given a loan modification. *Id.*; Ex. 1 to Letcher Decl., ECF 78-1 ("Loan
5   Modification Agreement"). Before the modification was executed, Bank of America transferred
6   the loan to Nationstar. Castillo Decl. ¶ 4, ECF 77. After the transfer, the Castillos received
7   assurances that Nationstar would honor the modification. Ex. 16 to Letcher Decl., at 36, ECF 79-6
8   ("If the modification approval has already been sent to the borrower, we will have to honor."); *id.*
9   at 38 ("Per our loan mod department, we should be able to honor these terms."); *id.* at 41 ("If the
10  borrower signs the attached BANA mod docs, we will honor the mod and book it."); *id.* at 58 ("If
11  borrower executes this one, Nationstar will honor.").

12  The Castillos executed the modification and submitted payment in the amount due each
13  month under the modification. Castillo Decl. ¶ 5; Exs. 1–3 to Castillo Decl., ECF 77-1–77-3.
14  Nationstar rejected many of those payments. Castillo Decl. ¶ 7; Ex. 4 to Castillo Decl., ECF 77-4.
15  The Castillos resubmitted the rejected payments, but Nationstar again rejected the payments. Ex.
16  4 to Castillo Decl. In addition, Nationstar incorrectly claimed that the Castillos were in default,
17  including an escrow deficiency of more than $20,000, as soon as the modification was executed.
18  Ex. 39 to Letcher Decl., at 16:6–10, ECF 81-5 ("Loll Dep. I").

19  In February 2015, Nationstar acknowledged the errors, but failed to correct the Castillos'
20  account and continued to overbill them. Ex. 21 to Letcher Decl., ECF 79-11 (letter from
21  Nationstar to Plaintiff's counsel admitting error); Loll Dep. I, at 87:16–24. That month,
22  Nationstar commenced foreclosure proceedings. Ex. 20 to Letcher Decl., ECF 79-10. As a result,
23  Plaintiffs filed this lawsuit.

24  **II.     LEGAL STANDARD**
25  Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary
26  judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions
27  on file, together with the affidavits, if any, show that there is no genuine issue as to any material
28  fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987). The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

### III.   DISCUSSION[1]

Plaintiffs move for summary judgment on three grounds. The Court addresses each in turn below.

#### A.   Breach of Modification Contract Against All Defendants

Plaintiffs first argue that Nationstar breached the modification contract by charging amounts not due, refusing to apply payments, and starting foreclosure. Mot. 4. Accordingly, they ask the Court to grant partial summary judgment as to liability for breach of contract, their first cause of action. Plaintiffs concede that triable issues of fact remain as to the measure of damages, and thus do not ask the Court for summary judgment on the amount of damages. *Id.* at 8. Defendants, however, contend that the Castillos have not produced sufficient evidence on the final two elements of a breach of contract claim, and argue that summary judgment must be denied.

---

[1] As a threshold matter, the Court addresses Nationstar's objections to evidence introduced by the Castillos. Civil Local Rule 7-3(a) provides that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Nationstar's 15-page "Objection to Evidence Submitted in Support of Plaintiffs' Motion for Summary Adjudication," (ECF 84), filed separately from its opposition and incorporated by reference therein, violates this rule and is accordingly STRICKEN.

3

Opp'n 3, ECF 82.

In California, "[t]he essential elements of a breach of contract claim are '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Hamilton v. Greenwich Invs. XXCI, LLC*, 195 Cal. App. 4th 1602, 1614 (Ct. App. 2011) (citation omitted). As to the first element, Plaintiffs have met their burden in proving the existence of a contract. *See* Loan Modification Agreement, ECF 78-1. Although Plaintiffs dedicate much of their motion to discussing potential defenses to the existence of a valid contract, *see* Mot. 8–17, Nationstar concedes that it does not intend to rely on any of those defenses. Opp'n 3. The Court interprets this as an admission regarding the validity and enforceability of the contract.

There is also no dispute that Plaintiffs made payments as required under the modification. *See* Castillo Decl. ¶ 5 & Exs. 1–3; Loll Dep. I, at 53:14–23 (admitting remittance of funds each month). That Nationstar rejected many of those payments does not change this fact. *See* Castillo Decl. ¶ 7 & Ex. 4. Indeed, Defendants do not challenge Plaintiffs' performance under the modification. *See* Opp'n 3–5 (arguing that a genuine issue of fact remains regarding only cure of the alleged breach and the amount of damage).

The parties do dispute whether Defendants breached the modification agreement and whether the Plaintiffs suffered contract damages. As to breach, the undisputed evidence shows that Nationstar repeatedly disregarded the terms of the modification and mistakenly charged Plaintiffs for escrow deficiency, legal fees, late fees, and foreclosure fees that were not due. Mot. 7; Loll Dep. I, at 16:2–10. Nationstar also began foreclosure without the right to do so, improperly rejected payments, and improperly delayed applying payments to the account after it accepted them. Loll Dep. I, at 153:14–15. Finally, Nationstar performed numerous property inspections despite not being permitted to do so under the loan modification agreement. Ex. 10 to Letcher Decl., at 92, ECF 78-10; Ex. 23 to Letcher Decl., at 3–4, 9, 17, 22–29, 36–43, 45–49, ECF 79-13.

In opposition, Defendants argue that because Nationstar has cured its alleged breaches, the Court must deny summary adjudication on Plaintiffs' breach of contract claim. Opp'n 4.

4

Plaintiffs correctly respond that Defendants have not countered the evidence presented to the Court of the underlying breach, and thus, the Court must find in Plaintiffs' favor on this issue. Reply ISO Mot. 2, ECF 85. Plaintiffs are also correct that Defendants have misapplied the concept of "cure." *See* Reply ISO Mot. 2. In contrast to Defendants' position, the "cure" doctrine is one factor courts consider when determining the materiality of a breach, and refers to a breaching party's ability to correct or remedy a failure of performance—*i.e.*, a breach of a the contract in whole or in part. Restatement (Second) of Contracts §§ 237, 241 (1981). Through their misuse of the concept, Defendants implicitly concede that they were, at least at some point in time, in breach of the agreement.[2]

Defendants argue that there is a dispute as to the final element of a breach of contract claim, the fact of damages. To establish contractual damages, a plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (Ct. App. 1967) ("A breach of contract without damage is not actionable."). Nominal damages, speculative harm, or threats of future harm do not suffice to show a legally cognizable injury. *See Aguilera*, 223 F.3d at 1015; *see also Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009). Additionally, emotional and physical distress damages are not recoverable on a California contract claim. *Gibson v. Office of the Att'y Gen.*, 561 F.3d 920, 929 (9th Cir. 2009); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (Cal. 1994).

Plaintiffs claim that as a result of Defendants' breach they suffered invasions of privacy and were forced to pursue this suit. Ex. 24 to Letcher Decl., at 270:10–22, ECF 79-14 ("Jennifer Castillo Dep."). Defendants contend, however, that Nationstar corrected the Castillos' loan account in August 2016, and as such, the Castillos "cannot show they have suffered any monetary harm from Nationstar's prior errors in implementing the modification agreement." Opp'n 1. Defendants also argue that the evidence Plaintiffs submitted fails to show any actual or

---

[2] The Court notes that there is a dispute as to whether the issue of the correct application of the modification has been resolved in its entirety. *See* Opp'n 4. This does not affect the Court's conclusion.

appreciable damage from the "now-cured breach" and fails to support a finding that the Castillos suffered invasions of privacy due to the recordation of the notice of default. *Id.* at 5. Finally, Defendants correctly state that litigation expenses are not recoverable damages. *Id.* at 6 (citing *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1589 (Ct. App. 1994)).

In reply, Plaintiffs provide evidence demonstrating that Defendants continue to refund Plaintiffs for overcharges and improper application of payments. Mot. 4–5; *see, e.g.*, Ex. 1 to Kennedy Decl., ECF 86-1 (October 17, 2016 email stating that the Castillos are owed another refund). The Castillos thus re-characterize their damages as the time and energy trying to get Defendants to honor the modification, their inability to use their funds when they overpaid the mortgage, inaccurate negative credit reporting, and invasion of privacy. Mot. 5.

While Defendants are correct that emotional distress damages and consequential damages such as litigation expenses are not proper contract damages, the Castillos have met their burden with respect to the fact of contract damages. The undisputed evidence demonstrates that the Castillos overpaid their mortgage and continue to receive refunds from Nationstar, which is sufficient to demonstrate the fact of damages. *See Johnson v. Pac. Lighting Land Co.*, 817 F. 2d 601, 608 (9th Cir. 1987). At the hearing, Defendants argued that the reason for the refunds remains in question, creating a genuine issue of material fact upon which reasonable minds could differ. Defendants further suggested that the refunds could have been caused by other matters unrelated to overpayment, such as a change in taxes or insurance, and the Plaintiffs have not satisfied their burden of showing they were improper. The Court does not find this argument persuasive, as Defendants have offered no evidence to support such a conclusion and because Plaintiffs have provided evidence of the continuing refund payments.

In light of the evidence presented, the Court finds that Plaintiffs have met their burden of proof with regard to breach of contract and GRANTS Plaintiffs' motion for partial summary judgment as to liability on their first cause of action against all Defendants. Plaintiffs do not seek summary adjudication of the amount of damages and that issue remains for trial.

**B.     Violation of the Rosenthal Act Against Nationstar Only**

The Castillos also seek summary judgment as to Nationstar's liability under the Rosenthal

Act. The Rosenthal Act is intended to "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1 (legislative findings and purpose). In addition to setting forth its own standards governing debt-collection practices, the Rosenthal Act also provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17. One of the FDCPA provisions that is incorporated into the Rosenthal Act is the bar prohibiting debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," found in Section 1692e of the federal FDCPA. *See* 15 U.S.C. § 1692e.

Plaintiffs contend that there is no triable issue of fact that Nationstar is liable for violating the Rosenthal Act because the Castillos are covered by the act as debtors owing a consumer debt, Nationstar is a debt collector, and Nationstar's conduct constitutes unfair debt collection practices. Mot. 18–19. Nationstar concedes liability under the Rosenthal Act, but asks the Court to deny summary adjudication as to this claim because a genuine issue of fact remains as to Nationstar's bona fide error defense. Opp'n 8.

### i. Liability Under the Rosenthal Act

The Rosenthal Act requires Plaintiffs to prove four elements: "(1) the plaintiff is a 'debtor,' (2) the debt at issue is a 'consumer debt,' (3) the defendant is a 'debt collector,' and (4) that the defendant violated one of the liability provisions of the RFDCPA." *Long v. Nationwide Legal File & Serve, Inc.*, No. 12-cv-3578, 2013 WL 5219053, at*17 (N.D. Cal. Sept. 17, 2013).

A "debtor" under the Rosenthal Act is "a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person." Cal. Civ. Code § 1788.2(h). The Rosenthal Act defines "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f).

A mortgage on a single family home, which is at issue in this case, is a consumer debt, and the Castillos are debtors on that mortgage. *See* Loan Modification Agreement, ECF 78-1.

Although some courts have held that the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act, *see Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases), where the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, a remedy may be available under the Rosenthal Act. *Id.* (finding that allegedly deceptive statements in an offer letter related to a forbearance agreement were sufficient to state a claim under the Rosenthal Act). Here, the claim under the Rosenthal Act plainly arises out of debt collection activities beyond the scope of the ordinary foreclosure process—Plaintiffs have provided evidence of false, deceptive, or misleading statements to collect the debt and misrepresentations of the nature, character, and amount of the debt, among other conduct. *See, e.g.*, Ex. 5 to Letcher Decl., at 13–14, ECF 78-5 (Defendants' response to Plaintiffs' Interrogatory No. 7); Loll Dep. I, 24:22–25, 27:1–28:2; 87:16–24. Thus, Plaintiffs have satisfied their burden as to the first two elements of a claim under the Rosenthal Act.

As to the third element, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). The definition of "debt collector" is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts. *See Herrera v. LCS Fin. Servs. Corp.*, No. C09-2843, 2009 WL 5062192, at *2 (N.D. Cal. Dec. 22, 2009); *Izenberg v. ETS Servs., LLC,* 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008) ("The definition of 'debt collector' in the state statute is broader than that contained in the FDCPA, however"). Here, Plaintiffs provide evidence that Nationstar regularly billed them and collected payments on their mortgage loan debt from 2013 to present. *See* Ex. 10 to Letcher Decl. Thus, Plaintiffs have proven that Nationstar is a "debt collector" under the RFDCPA. *See Walters v. Fidelity Mortg. of Cal., Inc.*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (holding that mortgage servicer that regularly billed plaintiff and collected payments on her mortgage debt was a "debt collector" under the Rosenthal Act).

Turning to the substance of their claim, Plaintiffs assert that Nationstar violated the Rosenthal Act by sending multiple communications misrepresenting the amount of the debt and

1  threatening foreclosure when Nationstar was not entitled to foreclose or when it had no intent to
2  foreclose. Mot. 19 (citing Cal. Civ. Code § 1788.17). Pursuant to RFDCPA, a debt collector may
3  not falsely represent the amount of any debt. Cal. Civ. Code § 1788.13(e) ("No debt collector
4  shall...false[ly] represent[ ] that the consumer debt may be increased by the addition of attorney's
5  fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or
6  charges may not legally be added to the existing obligation."). Here, Plaintiffs have provided
7  ample evidence to support their claim that Nationstar sent multiple communications
8  misrepresenting the amount of debt and threatened foreclosure when it was not entitled to
9  foreclose. *See, e.g.*, Ex. 5 to Letcher Decl., at 13–14; Loll Dep. I, 24:22–25, 27:1–28:2; 87:16–24,
10 153:11–13; Exs. 41, 42 to Letcher Decl., ECF 81-7, 81-8.

11 Accordingly, Plaintiffs have met their burden of establishing a prima facie violation of the
12 Rosenthal Act. The Court now determines whether Nationstar may be able to rebut this finding
13 through the bona fide error defense.

        **ii.  Bona Fide Error Defense**

15 Under the Rosenthal Act, "[a] debt collector shall have no civil liability to which such debt
16 collector might otherwise be subject for a violation of this title, if the debt collector shows by a
17 preponderance of evidence that the violation was not intentional and resulted notwithstanding the
18 maintenance of procedures reasonably adapted to avoid any such violation." Cal. Civ. Code
19 § 1788.30(e). "To qualify for the bona fide error defense . . . the debt collector has an affirmative
20 obligation to maintain procedures designed to avoid discoverable errors. . . . The procedures [ ]
21 must be explained, along with the manner in which they were adapted to avoid the error."
22 *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008). "Thus, to qualify for the
23 bona fide error defense, the defendant must prove that (1) it violated the [Rosenthal Act]
24 unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures
25 reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger,*
26 *LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

27 In their motion, Plaintiffs seek to preclude Nationstar from claiming that it is not liable
28 under the Rosenthal Act because it made a bona fide error. Mot. 21. Plaintiffs seek to limit

Nationstar to the error identified in its response to a Request for Production ("RFP")—that the Castillos failed to notify Nationstar that the modification was being negotiated, or to notify Bank of America that the modification was improperly implemented. *See* Mot. 21–22; Exs. A & B to Gruber Decl., ECF 83-1, 83-2 (response to RFP 8). Nationstar objects to Plaintiffs using its response to an RFP for three reasons: First, Plaintiffs did not provide a copy of the discovery response on which they relied. Second, the argument treats a response to an RFP as a response to an interrogatory. Third, the response does not support Plaintiffs' argument. Opp'n 10. Nationstar appears to argue that it need not limit its bona fide error defense to a single error. *Id.* at 9 (identifying "several errors"). In their reply, Plaintiffs provide a copy of Nationstar's response to Plaintiffs' Interrogatory No. 5, in which Plaintiffs asked Nationstar to state all facts in support of its bona fide error defense. Ex. 5 to Letcher Decl., at 10–12, ECF 78-5. The response mirrors Nationstar's response to the RFP cited by Plaintiffs. *Id.* at 11–12. The Court need not decide this issue, however, because in reply, Plaintiffs address the five errors Nationstar identifies in its opposition and because consideration of the many errors identified by Nationstar does not change the result.

Plaintiffs argue that the alleged error identified in Nationstar's response to RFP 8 is a "gross misstatement of fact," and they cite a series of communications, including between counsel, Bank of America, and Nationstar, and between the Castillos and Nationstar. *See, e.g.*, Ex. 16 to Letcher Decl. (compilation of email communications); Ex. 35 to Letcher Decl., ECF 81-2 (email from Plaintiffs' counsel to Nationstar); Ex. 36 to Letcher Decl., ECF 81-3 (letter from Nationstar to Plaintiffs' counsel). The Court agrees, but as discussed above, also addresses the other errors identified.

As to the other five identified errors, *see* Opp'n 9, Nationstar attempts to satisfy its burden of proof by pointing to policies and procedures reasonably adapted to avoiding the errors that occurred. Opp'n 9. In his deposition, Andrew J. Loll, testifying as Nationstar's corporate representative, identified these procedures. According to Mr. Loll, Nationstar employs a research group that handles claims of error and, if the problem is not resolved, a "different reviewer" is brought in to assess the problem. Loll Dep. I, at 105:5–21, 116:3–117:9, 118:3–20. Mr. Loll

testified that the Castillos experienced the "rare" case in which the research group and second reviewer made "a volume of errors." *Id.* at 118:3–20.

Plaintiffs make two main arguments in their reply: Nationstar must fail on the defense because it was on notice of its errors and continued to violate the Rosenthal Act and because Nationstar has not carried its burden of showing procedures that qualify for the bona fide error defense because the procedures identified are not designed to avoid the specific errors identified.[3] Reply ISO Mot. 9–15. The Court agrees with Plaintiffs on both accounts.

First, an error does not qualify for the bona fide error defense if the collector is on notice of the error but continues the wrongful debt collection anyway. *McCollough*, 637 F.3d 939. In *McCollough*, the Ninth Circuit held that in the face of multiple notices of error, a defendant's continued reliance and collection on the basis of erroneous information was "unreasonable as a matter of law." *Id.* at 949; *see also Christopher v. RJM Acquisitions LLC*, No. CV-13-02274, 2015 WL 437541, at *6 (D. Ariz. Feb. 3, 2015). Here, the undisputed evidence shows that Plaintiffs repeatedly notified Nationstar of its error to no avail. *See* Exs. 5–20 to Kennedy Decl., ECF 86-5–86-2. Nationstar, through Mr. Loll, admitted as much. Loll Dep. I, at 76:19–23. Pursuant to *McCollough*, Nationstar's continued reliance and attempted collection on the basis of erroneous information was "unreasonable as a matter of law." Because Nationstar was made aware of its error, but failed to take corrective actions, its violation of the Rosenthal Act was not unintentional as required to qualify for the defense. Thus, Nationstar cannot meet its burden on the first element of the defense.

Second, the procedures that support a valid bona fide error defense must be "reasonably adapted to avoid the specific error at issue." *Reichert*, 531 F.3d at 1006. Nationstar offer no evidence that the procedures identified were adapted to avoid the specific errors at issue. *See* Mot. 12–14. At the hearing, Nationstar argued that this was a unique situation in which a modification

---

[3] Nationstar identifies the following specific errors: (1) when the loan was transferred to Nationstar, the legal litigation code was erroneously removed; (2) Nationstar did not correctly set up the escrow account in accordance with the terms of Plaintiffs' loan modification and settlement agreement; and (3) when Nationstar attempted to correct its second mistake, it made further coding errors leading to more mistaken monthly statements. Opp'n 9.

resulting from a legal settlement was not executed until after the loan was already transferred. Nationstar further argued that it should not be required to create a procedure for a rare situation. But Nationstar seeks to hide behind a smokescreen of complexity. At the end of the day, there was a loan modification of which Nationstar was put on notice several times, but failed to correct the errors. What's more, these errors were directly attributable to a loan transfer, which Nationstar admitted was a common occurrence at the hearing.

For the foregoing reasons, the Court finds that Nationstar has not raised a triable issue showing that it maintained procedures "reasonably adapted" to avoid the errors it identifies as having caused the wrongful collection. Because Nationstar cannot satisfy its burden under the bona fide error defense, the only defense it raises to liability under the Rosenthal Act, and because Plaintiffs have satisfied their burden of proving a prima facie violation of the Rosenthal Act, the Court GRANTS Plaintiffs' motion as to liability on its second cause of action.

### C. Nationstar's Defense Under RESPA

Finally, the Castillos seek to preclude Nationstar from arguing that it was not required to respond to the notices of error under RESPA because they were "repetitive." Mot. 22. Plaintiffs are not seeking summary judgment on their affirmative case under RESPA, but only as to a theory that Nationstar might use to defeat Plaintiffs' affirmative case.

Under RESPA, a loan servicer must acknowledge receipt of a notice of error from a borrower within five days (excluding weekends and legal public holidays). 12 C.F.R. § 1024.35(d). In the absence of several exceptions, the servicer must respond to the notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024(e)(1)(i). Under section 1024.35(g), a servicer need not respond to a notice of error if "[t]he asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond . . ., unless the borrower provides new and material information to support the asserted error." *Id.* § 1024.35(g)(1)(i). If the servicer determines that it is not required to respond to the notice of error because it is "substantially the same" as an error previously reported, it must "notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination." *Id.* 1024.35(g)(2).

Plaintiffs contend that although they sent multiple notices of errors to Nationstar, *see* Exs. 5–20 to Kennedy Decl., and although the parties may disagree about whether Nationstar's responses to the Castillos' notices complied with its obligation to respond, Nationstar never sent the Castillos any notice that it did not intend to respond to the notices of error because the request was duplicative. Mot. 23–24. Nationstar argues that the Court need not address this part of Plaintiffs' motion because doing so would serve no useful purpose. Opp'n 12. The Court agrees with Nationstar. The operative answer does not pose this issue as an affirmative defense. *See* ECF 64. As such, rather than seeking to preclude Nationstar from raising an affirmative defense, Plaintiffs appear to be trying to block a theory that Nationstar may develop at trial. This is not the purpose of summary judgment. Accordingly, the Court DENIES Plaintiffs' motion on this ground.

## IV. ORDER

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion is GRANTED as to liability on their first and second causes of action and DENIED as to the issue of whether Nationstar may argue that it is not required to respond to "repetitive" notices of error under RESPA.

**IT IS SO ORDERED.**

Dated: November 22, 2016

_____
BETH LABSON FREEMAN
United States District Judge